# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARS 4 KIDS INC., <br><br> *Plaintiff,* <br><br> v. <br><br> AMERICA CAN!, <br><br> *Defendant.* | Civil Action No.: <br> 14-cv-7770 (PGS)(LHG) <br><br> **MEMORANDUM <br> AND <br> ORDER** |

SHERIDAN, U.S.D.J.

This matter comes before the Court on Defendant American Can!'s ("AC!" or "Defendant") motion for summary judgment (ECF No. 117), and a motion for partial summary judgment filed by Plaintiff Kars 4 Kids ("K4K" or "Plaintiff") (ECF No. 115). Plaintiff asserts various claims against Defendant arising out of a trademark infringement dispute. Defendant had also previously filed suit against Plaintiff (Docket Number 16-4232) which was consolidated with this instant matter. (ECF No. 49). For the reasons discussed herein, Plaintiff's motion for partial summary judgment is denied and Defendant's motion for summary judgment is denied.

I.

K4K filed the present action on December 12, 2014 (ECF No. 1) and asserted claims for (1) Trademark Infringement (16 U.S.C. § 1114); (2) Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a)); (3) Trademark Dilution Statute (N.J.S.A. § 56:3-13, *et seq.*); (4) Violation of New Jersey's Unfair Competition Statute (N.J.S.A. § 56:4-1); and (5) Common Law Trademark Infringement, Unfair Competition and Dilution. (ECF No. 16). AC! Filed

counterclaims for (1) Cancellation of the "1-877-KARS-4-KIDS" trademark, Reg. No 4,130,622 (15 U.S.C. § 1119); (2) Declaratory judgment of fraud on the USPTO and cancellation of the "1-877-KARS-4-KIDS" trademark, Reg. No. 4,130,622 (15 U.S.C. § 1119); (3) Declaratory judgment of no protectable trademark; (4) Declaratory judgment of no trademark infringement; (5) Unfair Competition under federal law (15 U.S.C. § 1125(a)); (6) Trademark dilution under federal law (15 U.S.C. § 1125(c)); (7) Trademark dilution under New Jersey law (N.J.S.A. § 56:3-13); (8) Unfair competition under New Jersey law (N.J.S.A. § 56:4-1); and (9) Common law trademark infringement and unfair competition. *Id.*

AC! also filed a law suit in the United States District Court for the Northern District of Texas on November 12, 2015 alleging injury to business reputation and trademark dilution. ("Texas Complaint"). After the Northern District Court of Texas denied K4K's motion to dismiss, AC!'s case was transferred to New Jersey and consolidated with the instant matter on March 2, 2017.

Defendant, originally incorporated as Texas Can!, amended its name to American Can! in 1988. (K4K Response to AC! Statement of Material Facts (K4K's Answer to AC!'s SMF) ¶ 1, ECF No. 122-1). AC! raises money for its educational programs by collecting and reselling used automobiles and watercraft at auction. (*Id.* ¶ 3). The educational programs support at risk youth at the high school level in order for those children to obtain high school diplomas, and provides skills to achieve economic independence. (*Id.* ¶ 4). AC!'s activities were originally concentrated in Texas, where the charity was founded. (*Id.* ¶ 17). AC!'s "Cars for Kids" campaign has dated back to at least 1993. (*Id.* ¶ 10). The campaign also appeared in the magazine "Park Cities People" in the March 10, 1994 issue. (*Id.* ¶ 11). On June 16, 1994, "The Shopping News" ran an article discussing AC!'s program, using the phrase "Cars for Kids." (*Id.* ¶ 15). AC! began advertising on

Fox News, Fox 24/7, CNN and POTUS/the Patriot on Sirius in 2013. (*Id.* ¶ 16). AC!'s first interaction with Plaintiff was August 7, 2003 by way of mail ("Cease and Desist Letter") asserting AC!'s rights to "Cars for Kids" in the State of Texas. (*Id.* ¶ 19).

Plaintiff has a long history of names. On November 12, 1986, the Kiruv Rechokim Fund Inc. ("KR") was incorporated with the State of New York. (*Id.* ¶ 36). KR was replaced by the Oorah Kiruv Rechokim Fund, Inc. ("OKR Fund"), a New York Company registered to do business in New Jersey. (*Id.* ¶ 24). The OKR Fund had a car donation business where the proceeds supported themselves and their mission. (*Id.* ¶ 24). Sometime during 2000, the OKR Fund registered "Kars 4 Kids" ("K4K Program") as an alternate name for the OKR Fund in New Jersey. (*Id.*) Thereafter, on July 31, 2000, OKR Fund was replaced when Oorah, Inc. ("Oorah") was incorporated. (*Id.* ¶ 27).

Rabbi Eliyohu Mintz, President of OKR Fund, Oorah and K4K, then decided to create a second entity to operate the K4K Program. *Id.* ¶ 22, 24, 26, 29. On August 3, 2000, the second entity was incorporated under the name Joy for Our Youth, Inc. ("Joy"). (*Id.* ¶ 22). In 2014, Plaintiff amended the documents filed with the IRS and the State of New Jersey from Joy to Kars 4 Kids. (*Id.* ¶ 23).

Since undertaking the car donation business, Plaintiff's proceeds have supported the missions of Oorah and OKR, until the dissolution of OKR Fund. (*Id.* ¶ 39). Rabbi Eliyohu Mintz has described Oorah as a sister company to K4K. (*Id.* ¶ 27). Oorah and K4K share office space and administrative personnel. (*Id.*) However, Oorah and K4K's are separate and distinct entities. (*Id.* ¶ 48). K4K and Oorah do not control each other, nor does one direct the other's activities or advertising. (*Id.* ¶ 40-47). The last four digits of both Oorah's and OKR Fund's Employee Identification Number ("EIN") are 6051. (*Id.* ¶ 33-34). OKR Fund's predecessor, KR, had a

different EIN, ending in 3307. (*Id.* ¶ 35). Further, K4K's EIN's last four digits are 6050. (*Id.* ¶ 25).

K4K began advertising on billboards in New Jersey using the "KARS 4 KIDS" marks in 2004. (AC! Counterclaim/Response to K4K Statement of Material Facts (AC!'s Answer to K4K's SMF) ¶ 10, ECF No. 124-1). K4K's jingle has appeared on shows such as "Saturday Night Live," "Family Guy," "The Daily Show," "Last Week Tonight with John Oliver" and was referred to in Billboard magazine as "the jingle you can't get out of your head." (*Id.* ¶ 15-16). By 2009, K4K was spending $500,000.00 per month on advertising expenditures. (*Id.* ¶ 19). K4K also has protocol in place during the donation process to inform callers that K4K and AC! are different organizations. (*Id.* ¶ 23).

K4K filed an application to register the mark "Kars-4-Kids" with the United States Patent and Trademark Office ("USPTO") on March 26, 2002 (U.S. Trademark Application Serial No. 76/387,564 or the "'564 Application"). (K4K's Answer to AC!'s SMF ¶ 49). The USPTO rejected the '564 application because of the likelihood of confusion with a registration "CARS FOR KIDS' SAKE," owned by Big Brothers/Big Sisters of America Corporation ("Big Brothers/Big Sisters"). *Id.* ¶ 51. K4K abandoned the '564 application on August 10, 2004. (*Id.* ¶ 52). On February 19, 2009, K4K filed a digital graphic appearance of "Kars 4 Kids" with the USPTO (U.S. Trademark Application Serial No. 77/673,523 or the "'523 Application"). (*Id.* ¶ 53). Again, the USTPO denied K4K's application because of the Big Brothers/Big Sisters registration, and the '523 application was abandoned by July 1, 2010. (*Id.* ¶ 55).

On February 23, 2011, K4K filed a mark for 1-877-KARS-4-KIDS (U.S. Trademark Application Ser. No. 85/250,329 or the "'329 Application") with the USTPO. The USTPO initially refused because of potential confusion with the Big Brothers/Big Sisters CARS FOR

4

KIDS' SAKE registration No. 2,171,415. (*Id.* ¶ 62). However, K4K argued that the "1-877" was the dominant mark and that the "K" and "4" made it unique. (*Id.* ¶ 64). K4K also claimed that the words "cars" and "kids" are descriptive, so there is a smaller likelihood of confusion. (*Id.* ¶ 65). The USPTO issued a Notice of Publication on January 18, 2012 and the "1-877-KARS-4-KIDS" mark, Registration No. 4,130,622 on April 24, 2012. (*Id.* ¶ 67-68).

Shortly thereafter, on December 6, 2012, AC! filed an application with the USPTO for the "CARS FOR KIDS" registration (U.S. Application Serial No. 85/796,733, or the '733 Application). *Id.* ¶ 70. The USPTO approved the '733 application on November 13, 2013. (*Id.* ¶ 71). K4K filed an opposition to the '733 application on May 30, 2014 alleging that there was a likelihood of confusion, and that K4K had priority over AC!'s application because KARS 4 KIDS was used in commerce prior to AC's use of CARS FOR KIDS. (*Id.* ¶ 72). AC! responded to K4K '733 opposition on August 7, 2014 by seeking cancellation of the 1-877-KARS-4-KIDS Registration, to which K4K answered on September 8, 2014. (*Id.* ¶ 73-74). The Complaint in this instant action was thereafter initiated by K4K on December 12, 2014.

AC! claims that they have been in operation since 1985, but K4K only acknowledges the 1988 incorporation date as AC!'s inception. (*Id.* ¶ 2). K4K states that AC!'s predecessor, Texas Can!, filed an assumed name with the State of Texas for "Dallas Can! Cars For Kids!" in December 1991. (AC!'s Answer to K4K's SMF *Id.* ¶ 31). AC! also contends that they have used the "Cars for Kids" designation as a trademark since 1994, and that they have operated under "Cars for Kids" since 1989 and "Kars for Kids" during that same year. (K4K's Answer to AC!'s SMF ¶ 6-7). AC! further argues that they ran a "Cars for Kids" advertisement on October 24, 1993, but K4K points out that Malcom Wentworth's testimony claims this was actually in 1994. (*Id.* ¶ 12). K4K pointed to Richard Marquez's testimony (AC!'s CEO), to prove that he did not recall when AC! began

using "Cars for Kids" in advertising, in distribution or online, yet AC! responds that this is a mischaracterization of testimony and that Marquez did point to the one of the exhibits in use in 1993. (AC!'s Answer to K4K's SMF *Id.* ¶ 33). AC! also contends that they have solicited and received donations in all 50 states, which K4K disputes. (K4K's Answer to AC!'s SMF ¶ 18).

K4K avers that their car donation business has been in operation since 1995. *Id.* ¶ 24. AC! disputes this fact repeatedly by using the testimony of Esti Landau, who said that K4K was not "around in 1996," in response to a receipt request for a donation, and said it may have been for "the other cars for kids in TX." (*Id.* ¶ 24). However, K4K discredits this by responding that Landau did not join K4K until 2002 and would not have first-hand knowledge of K4K's business activities prior to that time. (*Id.* ¶ 24). K4K contends that their car donation business first began with OKR Fund and then to K4K's after their 2000 incorporation. (*Id.* ¶ 39). The car donations were first used for OKR Fund and then for Oorah following OKR Fund's dissolution. (*Id.* ¶ 39).

K4K affirms that they began advertising from the beginning in New York, New Jersey and Maryland, featuring the KARS 4 KIDS mark in 1995, but AC! does not accept this fact, since Joy was not incorporated until 2000. (AC!'s Answer to K4K's SMF ¶ 3). AC! disputes that KARS 4 KIDS or 1-877-KARS-4-KIDS marks were in commercial use in 1995, because there is no documentary evidence proving otherwise. (*Id.* ¶ 3). K4K states that they increased advertising on a national scale around that time, including an advertisement in *The Jewish Press*, which was distributed in 46 different states. (*Id.* ¶ 5). According to K4K, it had a nationwide mailing list by the 1990s which included postcards that displayed the KARS 4 KIDS mark and their fundraising efforts. This is disputed by AC! Since Joy and K4K did not technically exist in the 1990s. (*Id.* ¶ 6). AC! disputes K4K's assertion that it has been using the mark 1-877-KARS-4-KIDS since at least as early as October 3, 2003. (K4K's Answer to AC!'s SMF ¶ 58).

6

K4K also claims that they began advertising on billboards in the New Jersey area using the KARS 4 KIDS marks in 2004, but AC! disputes the substance of the advertisements and the extent of the advertisements being located outside of New Jersey. (AC!'s Answer to K4K's SMF ¶ 10). Further, AC! disputes that K4K advertised in *Reader's Digest* in 2004, because the supporting documents show a document from 2005 that is not a clear visual display of the advertisement. *Id.* ¶ 9. K4K and AC! agree that K4K purchased advertising on billboards in Chicago in 2006 and Los Angeles in 2007, but the substance of the advertisements is disputed. (*Id.* ¶ 11). Similarly, the substance and dates of when K4K began advertising in New York are disputed between the years 2006 and 2007. (*Id.* ¶ 11). K4K and AC! acknowledge that K4K currently has billboard advertising in use today in major metropolitan areas, but AC! disputes the actual substance of the billboards and if they are the same content from 2006 and 2007. (*Id.* ¶ 12).

One of AC!'s concerns with the K4K jingle is that it is heard and not seen, so the two phrases "Kars 4 Kids" and "Cars for Kids" are not distinguishable when played. (*Id.* ¶ 14). K4K's expert Dr. Alex Simonson, agreed that if the two marks are pronounced only, they sound the same and that his research is insufficient to show that the Kars 4 Kids mark is "famous". (*Id.* ¶ 14-15). However, the expert Dr. Simonson did conclude that consumers have associated Kars 4 Kids as the source of services provided under the mark KARS 4 KIDS, nationally. (*Id.* ¶ 21). Further, AC! disputed Dr. Simonson's report and testimony to that he did not test for confusion, only secondary meaning and acquired distinctiveness in the aural phrase "Cars for Kids", which is the same audible mark. (*Id.* ¶ 30).

Similar to AC!'s concerns with K4K's billboards, AC! also disputes who is responsible for the jingle. (*Id.* ¶ 17). K4K contends that the jingle first aired on New York tri-state area radio in

1999, New Jersey in 2001, Chicago in 2004, California in 2005, and nationwide since 2008. (*Id.* ¶ 17-18). However, AC! disputes this since K4K and Joy did not exist in 1999. (*Id.* ¶ 17-18).

AC! claims that K4K has received multiple inquires of donors attempting to contact AC!. (*Id.* ¶ 86). However, K4K discredits this as immaterial because only three donors have inquired to them about previous donations they successfully made to AC!. (K4K's Answer to AC!'s SMF ¶ 86). It is not clear how many instances, if any, there are with callers have contacted either organization with the *intent* to donate to the other. AC! also disputes K4K's claim that "Cars for Kids" describes the purpose of AC!'s program. (AC!'s Answer to K4K's SMF ¶ 27). AC! claims that their expert, Bryce R. Cook, shows their damages due to customer confusion and diverted donations due to K4K's use of KARS 4 KIDS, which K4K disputes. (*Id.* ¶ 39). K4K points to the fact that AC!'s expert admitted other factors such as recession and economic factors that contributed to a decline in donations and that there were no identified specific instances of diverted sales. (*Id.* ¶ 40-41).

K4K also claims that AC! has long considered its trademark to be "Write Off the Car, Not the Kid" because AC! has featured advertisements with the trademark symbol next to that line. (*Id.* ¶ 28). However, AC! says this is not their *only* trademark and that they have been using Cars for Kids since 1994. (*Id.* ¶ 28).

Finally, AC! and K4K dispute the significance of the Cease and Desist letter. (*Id.* ¶ 36). K4K points to AC! not challenging the KARS 4 KIDS mark outside of Texas until March 2013 as compliance, but AC! says the letter specifically sought resolution by geography and challenged their use generally. (*Id.*) Further, the Cease and Desist letter expressly claims AC! was using the mark, "Cars For Kids" throughout Texas since 1992, not 1989. (*Id.* ¶ 35). AC! says that this does

8

not mean they did not have rights outside of Texas, just because the Cease and Desist letter did not assert nationwide rights. (*Id.*)

At present, Defendant moves for summary judgment and Plaintiff moves for partial summary judgment.

II.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985)*. The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v First Fid. Bancorp.*, 912 F.2d 654, 657 (3d

Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor...that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007)

III.

Plaintiff asserts five claims against Defendant. While Plaintiff moves for summary judgment only on Counts II and IV, Defendant moves to dismiss all five claims. Each of Plaintiff's claims is in the order they are presented in the Complaint.

- Trademark Infringement (Count I)
- Unfair Competition and Federal False Designation of Origin (Count II)
- Trademark Dilution under New Jersey Statute (Count III)
- Violation of New Jersey's Unfair Competition Statute (N.J.S.A. 56:4-1) (Count IV)
- Common Law Trademark Infringement, Unfair Competition and Dilution (Count V)

*1.    Count I - Trademark Infringement*

Plaintiff first alleges Defendant violated their "1-877-KARS-4-KIDS" mark, Registration No. 4,130,622 through Trademark Infringement, 15 U.S.C. § 1114, by filing the '733 Application for "CARS FOR KIDS". (K4K's Answer to AC!'s SMF ¶ 67-74).

Under 15 U.S.C. § 1114(1)(a), a claim of trademark infringement may prevail if the party (1) has a valid and legally protectable mark, (2) is the owner of the mark and (3) that the defendant's use of the mark is likely to cause consumer confusion. *A & H Sportswear, Inc v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

Ultimately, Defendant and Plaintiff disagree as to whether the "1-877-KARS-4-KIDS" is a valid mark or not. Defendant disputes that K4K made no fraudulent statement in their application for the "1-877-KARS-4-KIDS" mark. (K4K's Answer to AC!'s SMF ¶ 73). The disagreement is to when the "KARS 4 KIDS marks", KARS 4 KIDS and 1-877-KARS-4-KIDS were first in circulation. Plaintiff contends that they were circulated in interstate commerce in 1995. (Mintz Opp'n Decl. ¶ 9). However, Defendant does not believe the KARS 4 KIDS Marks could have been circulated in interstate commerce before 2000, since that is before Joy's incorporation. (K4K's Answer to AC!'s SMF ¶ 73).

Therefore, there is a genuine issue of material fact precluding summary judgment as to Count I.

2. *Count II - Unfair Competition and Federal False Designation of Origin*

15 U.S.C. § 1125(a) "proscribes not only acts that would technically qualify as trademark infringement, but also unfair competitive practices involving actual or potential deception." *Apex Fountain Sales, Inc. v. Kleinfeld,* 818 F.2d 1089, 1091 (3d Circ. 1987).

The elements of are:

> (1) that the defendant uses a false designation of origin; (2) that such use of a false designation of origin occurs in interstate commerce in connection with goods or services; (3) that such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of the plaintiffs goods and services by another person; and (4) that the plaintiff has been or is likely to be damaged.

*Parker v. Google, Inc.,* 242 F. App'x 833, 838 (3d Circ. 2007) (*citing AT&T Co. v. Winback & Converse Program, Inc.,* 42 F. 3d 1421, 1428 (3d Circ. 1994)).

A federal registration is *prima facie* evidence of validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to the mark in commerce. 15 U.S.C. §

1115 (a). "When a plaintiff sues for infringement of its registered mark, the defendant bears the burden to rebut the presumption of [the] mark's protect-ability ability by a preponderance of the evidence. *K2 Advisors, LLC v. K2 Volatility Fund, LP* Civ. No. 02-cv-2984 (AGS), 2002 WL 31235701, at *8 (S.D.N.Y. Oct. 4, 2002) (citations omitted). If the mark is unregistered, there is no presumption of validity or ownership. 15 U.S.C. § 1115 (a).

Competing claims of ownership of a mark are determined by priority of use and market penetration. *MNI Mgmt. Inc. v. Wine King, LLC*, 542 F. Supp. 2d 389, 405 (D.N.J. 2008). Further, the "party who first uses a mark in commerce is said to have priority over others." *Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 909 (2015). To do so, the mark must be used "in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Lucent Info. Mgmt., Inc, v. Lucent Techs., Inc.*, 186 F. 3d 311, 315 (3d Cir. 1999) (internal quotation marks omitted).

However, similar to Count I, both parties disagree as to whether the KARS 4 KIDS Marks are valid and when they were put in interstate commerce. (K4K's Answer to AC!'s SMF ¶ 73). Additionally, the parties dispute as to Defendants circulation of "Cars for Kids", and when the mark began use in interstate commerce, outside of Texas. (AC!'s Answer to K4K's SMF ¶ 5-7).

Therefore, there is a genuine issue of material fact precluding summary judgment as to Count II.

3.  *Count III - Trademark Dilution under New Jersey Statute*

Under N.J.S.A. § 56:3-13, a party may establish a cause of action by showing that the other party uses the mark, the mark is famous and that the other party's use causes dilution of the distinctive quality of the mark. *Platypus Wear, Inc. v. Bad Boy Club, Inc.*, Civ. No. 08-02662 NLH-

AMD, 2009 WL 2147843 at *3 (D.N.J. July 15, 2009). N.J.S.A. § 56:3-13.20 gives the following factors to determine whether a mark is famous:

(a) The degree of inherent or acquired distinctiveness of the mark in this State;

(b) The duration and extent of use of the mark in connection with the goods and services;

(c) The duration and extent of advertising and publicity of the mark in this State;

(d) The geographical extent of the trading area in which the mark is used;

(e) The channels of the trade for the goods or services with which the registrant's mark is used;

(f) The degree of recognition of the registrant's mark in its and in the other's trading areas and channels of trade in the state; and

(g) The nature and extent of use of the same or similar mark by third parties.

Plaintiff and Defendant argue over if the KARS 4 KIDS Marks are famous and if Defendant's activities cause dilution to Plaintiff's mark.

Therefore, there is a genuine issue of material fact precluding summary judgment as to Count III.

4. *Count IV - Violation of New Jersey's Unfair Competition Statute*

N.J.S.A. § 56:4-1 restricts any merchant, firm or corporation from appropriating "for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals."

There is a dispute genuine as to whether either company has received the others' goodwill. This is evident through parties' dispute over how many callers have intended to call or donate to either one. (K4K's Answer to AC!'s SMF ¶ 86).

Therefore, there is a genuine issue of material fact precluding summary judgment as to Count IV.

*5.*     *Count V - Common Law Trademark Infringement, Unfair Competition and Dilution*

For all of the foregoing reasons, the parties disagree about for trademark infringement, unfair competition and dilution, under common law.

Therefore, there is a genuine issue of material fact precluding summary judgment as to Count V.

Counterclaims

Next, Defendant asserts nine counterclaims against Plaintiff. While Plaintiff moves to dismiss all nine claims, Defendant moves for summary judgment in their favor on Counterclaims I, II, III, IV, V, VIII and IX. Each claim is in the order they are presented.

> In the Counter-Complaint, AC! brought the following claims against K4K:
> - Cancellation of the "1-877-KARS-4-KIDS" trademark, Reg. No 4,130,622 (16 U.S.C. § 1119) (Counterclaim I)
> - Declaratory Judgment of Fraud on the USPTO and Cancellation of the 1-877-KARS-4-KIDS Trademark Reg. No. 4,130,622 (15 U.S.C. § 1119) (Counterclaim II)
> - Declaratory Judgment of no protectable trademark (Counterclaim III)
> - Declaratory judgment of no trademark infringement (Counterclaim IV)
> - Unfair Competition under Federal law (15 U.S.C. § 1125(a)) (Counterclaim V)
> - Trademark dilution under Federal law (Counterclaim VI)
> - Trademark dilution under New Jersey law (Counterclaim VII)
> - Unfair competition under New Jersey law (Counterclaim VIII)
> - Common law trademark infringement and unfair competition (Counterclaim IX)

*1.*     *Counterclaim I - Cancellation of the "1-877-KARS-4-KIDS" trademark*

Defendant wishes to cancel Plaintiff's "1-877-KARS-4-KIDS" trademark, Reg. No. 4,130,622 under 15 U.S.C. § 1119. This allows the "court [to] determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and

otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S. § 1119.

Due to the disputed facts with regard to the trademark in this matter, the motions for summary judgment on Counterclaim I are denied.

2. *Counterclaim II - Declaratory Judgment of Fraud on the USPTO and Cancellation of the 1-877-KARS-4-KIDS Trademark*

Defendant wishes the Court to issue a Judgment of Fraud for Plaintiff's "1-877-KARS-4-KIDS" trademark, Reg. No. 4,130,622 under 15 U.S.C. § 1119. This allows the "court [to] determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S. § 1119.

Defendant and Plaintiff disagree as to whether the "1-877-KARS-4-KIDS" is a valid mark or not. Defendant disputes that K4K did not make fraudulent statement in their application for the "1-877-KARS-4-KIDS" mark. (K4K's Answer to AC!'s SMF ¶ 73). The disagreement is to when the "KARS 4 KIDS marks", KARS 4 KIDS and 1-877-KARS-4-KIDS were first in circulation. Plaintiff contends that they were circulated in interstate commerce in 1995. (Mintz Opp'n Decl. ¶ 9). However, Defendant does not believe the KARS 4 KIDS Marks could have been circulated in interstate commerce before 2000, since that is before Joy's incorporation. (K4K's Answer to AC!'s SMF ¶ 73). Therefore, the motions for summary judgment on Counterclaim II are denied.

3. *Counterclaim III - Declaratory Judgment of no protectable trademark*

Plaintiff and Defendant disagree about the facts regarding the protectable trademark. Therefore, Defendant's motion for summary judgment on Counterclaim III is denied.

4. *Counterclaim IV - Declaratory judgment of no trademark infringement*

With respect to Counterclaim IV, the same analysis for Count I applies. Therefore, the motions for summary judgment on Counterclaim IV are denied.

5. *Counterclaim V - Unfair Competition under Federal law (Counterclaim V)*

With respect to Counterclaim V, the same analysis for Count II applies. Therefore, the motions for summary judgment on Counterclaim V are denied.

6. *Counterclaim VI - Trademark dilution under Federal law (Counterclaim VI)*

Defendant alleges that there is a Trademark dilution claim under Federal law. The appropriate code, 15 U.S.C. § 1125(c), states

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

To properly plead a claim for trademark dilution, the owner of the mark must first show that the mark is famous and widely recognized. 15 U.S.C. § 1125(c)(2)(A). To qualify a mark as "famous" the owner of the mark may use a survey or expert testimony to prove nationwide recognition by the general consumer. *TCPIP Holding Co. v. Haar Commc;ns, Inc.*, 244 F.3d 88, 99 (2d. Cir. 2001).

In the instant litigation, K4K and AC! disagree over whether the KARS 4 KIDS marks are famous. (AC!'s Answer to K4K's SMF ¶ 14). Although K4K's expert Dr. Alex Simonson concluded that consumers have associated Kars 4 Kids as the source of services provided under the KARS 4 KIDS Marks, his research insufficient to show that the mark is "famous" under AC!'s standards. *Id.* ¶ 14-15, 21. Therefore, there is sufficient evidence to show that there is a genuine

issue of material fact as to this Count. Plaintiff's motion for summary judgment on Counterclaim VI is denied.

7. *Counterclaim VII - Trademark dilution under New Jersey law*

With respect to Counterclaim VII, the same analysis for Count III applies. Therefore, there is sufficient evidence to show that there is a genuine issue of material fact as to this Count. Defendant's motion for summary judgment on Counterclaim VII is denied.

8. *Counterclaim VIII - Unfair competition under New Jersey law*

With respect to Counterclaim VIII, the same analysis for Count IV applies. The motions for summary judgment on Counterclaim VIII are denied.

*Counterclaim IX - Common law trademark infringement and unfair competition*

With respect to Counterclaim IX, the same analysis for Count V applies. Therefore, the motions for summary judgment on Counterclaim IX are denied.

### ORDER

This matter, having come before the Court on Plaintiff Kars 4 Kids motion for partial summary judgment (ECF No. 115) and Defendant American Can! motion for summary judgment (ECF No. 117), and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented and for good cause shown, and for all of the foregoing reasons,

IT IS on this 25th day of October 2018,

**ORDERED** that the Plaintiff's Motion for Partial Summary Judgment is **DENIED**, and

**ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.

_____
PETER G. SHERIDAN, U.S.D.J.