**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KARS 4 KIDS INC.,<br>Plaintiff,<br>v.<br>AMERICA CAN!,<br>Defendant. | Civil Action No. 14-7770 (PGS/LHG)<br>*Electronically Filed*<br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF KARS 4 KIDS INC.'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE THE ENTIRETY OF BRYCE R. COOK'S OPINIONS**

Liza M. Walsh
Marc D. Haefner
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, New Jersey 07102
(973) 757-1100

Peter D. Vogl
David Litterine-Kaufman
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019-6142
(212) 506-5000

*Attorneys for Plaintiff*
*KARS 4 KIDS INC.*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1
II. LEGAL STANDARD ........ 2
III. ARGUMENT ........ 4
A. Mr. Cook's Proffered Testimony Regarding Disgorgement of Profits Is Speculative ........ 4
B. Mr. Cook's Proffered Testimony Regarding Corrective Advertising Is Speculative ........ 5
C. Mr. Cook's Proffered Testimony Is Unreliable Under *Schiff* ........ 5
IV. CONCLUSION ........ 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
350 F.3d 316 (3d Cir. 2003)....................3

*Citizen Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*,
No. CIV.A. 01-1524, 2003 WL 24010950, at *17 (W.D. Pa. Apr. 23, 2003),
*aff'd sub nom. Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*,
383 F.3d 110 (3d Cir. 2004)....................8

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995)....................2, 3

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................2, 3

*Elcock v. K-Mart Corp.*,
233 F.3d 734....................7

*Schneider ex rel. Estate of Schnieder v. Fried*,
320 F.3d 396 (3d Cir. 2003)....................3

*Israel v. Smith*,
No. 13CV0097PGSLHG, 2018 WL 1832990 (D.N.J. Apr. 16, 2018)....................3

*JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.*,
No. CIV. A. 97-CV-0652, 1998 WL 175888 (E.D. Pa. Apr. 15, 1998), aff'd,
178 F.3d 1279 (3d Cir. 1999)....................8

*Kuhar v. Petzl Co.*, No. CV 16-0395 (JBS/JS), 2018 WL 6331682 (D.N.J. Dec. 4,
2018)....................8

*Mercedes-Benz, U.S.A. LLC v. Coast Auto. Grp., Ltd.*,
No. CIV A 99-3121 WHW, 2006 WL 2830962 (D.N.J. Sept. 29, 2006)....................7

*Oddi v. Ford Motor Co.*,
234 F.3d 136 (3d Cir. 2000)....................2

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994)....................3

*Sold v. Sandoz Pharms. Corp.*,
244 F. Supp. 2d 434 (W.D. Pa. 2003)....................3

*United States v. Mitchell*,
365 F.3d 215, 235 (3d Cir. 2004)....................3

*United States v. Schiff*,
538 F. Supp. 2d 818 (D.N.J. 2008)....................3, 4, 7

**Other Authorities**

Fed. R. Evid. 702....................2, 3, 7

## I. INTRODUCTION

Plaintiff Kars 4 Kids, Inc. ("Kars 4 Kids") respectfully submits this memorandum of law in support of its motion *in limine* to exclude the proffered opinions of Bryce R. Cook on the amount of America Can!'s ("America Can") alleged damages.

Mr. Cook's proffered opinions are purely speculative. For instance, Mr. Cook attributes—without any explanation or justification—a years-long decline in vehicle donations experienced by America Can to Kars 4 Kids' use of the marks KARS 4 KIDS and 1-877-KARS-4-KIDS (the "KARS 4 KIDS Marks").[1] Mr. Cook goes on to assert that the appropriate measure of damages from Kars 4 Kids' use of the KARS 4 KIDS Marks is disgorgement of ***all of Kars 4 Kids' profits*** (measured as revenue less related expenses) from 2008 through 2017. In other words, Mr. Cook offers nothing more than his subjective belief that, absent Kars 4 Kids' use of the KARS 4 KIDS Marks, ***every single donation*** Kars 4 Kids received over a ***nine-year period*** would have gone to America Can. But Mr. Cook conceded at his deposition that there are numerous other factors that could explain the decrease in donations to America Can, and that he could not (and did not) eliminate these other factors as the reason(s) for the decline. Significantly, Mr. Cook even admitted that he could not identify a ***single instance*** in which consumer confusion resulted in Kars 4 Kids receiving a donation instead of America Can. In Mr. Cook's own words, he was "unable to quantify a claim for lost donations and profits solely attributable to [Kars 4 Kids'] actions." Declaration of Briggs M. Wright ("Wright Decl.") Ex. 2 at 3.

---

[1] Mr. Cook's analysis assumes that America Can has prior rights in its "Cars for Kids" designation. However, as the evidence will bear out, this assumption is unfounded as Kars 4 Kids enjoys priority in the KARS 4 KIDS Marks.

America Can also proposes to have Mr. Cook testify, as an alternative measure of damages, about the amount of corrective advertising America Can would need to perform to correct alleged (and unsubstantiated) consumer confusion. But Mr. Cook's corrective advertising opinion also rests on nothing more than his own *ipse dixit*. Rather than conduct an analysis of how much corrective advertising would be needed, Mr. Cook merely "***assume[s]*** that America Can would be required to spend the same amount on fundraising advertising" that Kars 4 Kids spent between 2008 and 2016. Wright Decl. Ex. 2 at 18 (emphasis added). As with his lost profits opinion, Mr. Cook merely proposes to the jury to take his word for it.

Mr. Cook's opinions about the causes of the downward trend in donations to America Can and amounts of corrective advertising are not based on any methodology whatsoever—much less reliable ones. These are exactly the kind of unsubstantiated assertions that should be kept from the jury under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Mr. Cook's proffered opinions must therefore be excluded.

## II. LEGAL STANDARD

America Can bears the burden of establishing "by a preponderance of proof" that Mr. Cook's opinions meet the requirements of Federal Rule of Evidence 702. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000) (quoting *Daubert*, 509 U.S. at 593 n.10). Rule 702, which reflects the reasoning of the Supreme Court in *Daubert*, requires purported expert testimony to satisfy several conditions before it can be presented to the jury, including: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

The Third Circuit recognizes that Rule 702 codifies a "trilogy of restrictions on expert testimony: qualification, reliability and fit." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (internal quotations omitted). Under this Rule, the district court must serve "as a gatekeeper to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Israel v. Smith*, No. 13CV0097PGSLHG, 2018 WL 1832990, at *1 (D.N.J. Apr. 16, 2018) (Sheridan, J.) (internal quotation marks omitted); *see also Schneider ex rel. Estate of Schnieder v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).

Under *Daubert* and Rule 702, certain requirements must be met before a putative expert's testimony can be presented to the jury. The reliability restriction requires "that the expert's opinion be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (quoting *Daubert*, 509 U.S. at 590). A court need not "simply 'take the expert's word for it.'" *Sold v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 563 (W.D. Pa. 2003) (quoting Fed. R. Evid. 702 advisory committee's note (2000)); *see also Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995). Accordingly, the Third Circuit has developed an eight-part test for evaluating the reliability of proffered expert testimony:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*United States v. Schiff*, 538 F. Supp. 2d 818, 833 (D.N.J. 2008) (quoting *United States v. Mitchell*, 365 F.3d 215, 235 (3d Cir. 2004)).

Mr. Cook's conjecture about the supposed effect Kars 4 Kids' use of the KARS 4 KIDS Marks had on America Can's donations and the need for corrective advertising, which are the ***sole grounds*** for his calculation of alleged damages, must be excluded because it is based on pure speculation and thus cannot satisfy the *Schiff* test.

## III. ARGUMENT

### A. Mr. Cook's Proffered Testimony Regarding Disgorgement of Profits Is Speculative

Mr. Cook's expert report observes that America Can's donations "declined sharply in 2005, partially rebounded in 2006 through 2009, and then sharply declined again in 2010 . . . ." Wright Decl. Ex. 1 at 2. Mr. Cook attributes this decline to Kars 4 Kids' "market entry and growth in each of [America Can's] markets, along with its high advertising spend . . . ." *Id.* at 2-3. However, Mr. Cook cites no evidence that Kars 4 Kids' activities were directly or even indirectly responsible for the decline in America Can's donations, and identifies no studies, tests, or analyses of any data that could support such a conclusion. He does not take into account that such a decline could be attributed to America Can's low advertising spend, or Kars 4 Kids' prior use of its KARS 4 KIDS Marks across the country, or other third party charities, or changes to tax laws that led to a decrease in donations. Nevertheless, Mr. Cook would opine that America Can's damages should be measured as Kars 4 Kids' ***total profits from all car donations*** between 2008 and 2017.[2] *Id.* at 9. Clearly, Mr. Cook's opinions are not the result of *any* methodology, much less a reliable methodology appropriately applied.

---

[2] In his opening report, Mr. Cook asserted that America Can's damages should be measured as Kars 4 Kids' ***total revenue*** during that time period. Wright Decl. Ex. 1 at 9. Mr. Cook only deducted Kars 4 Kids' related expenses from this figure in his reply report in response to criticisms from Kars 4 Kids' expert. Wright Decl. Ex. 2 at 8-9.

**B. <u>Mr. Cook's Proffered Testimony Regarding Corrective Advertising Is Speculative</u>**

In his reply report, Mr. Cook also suggests an alternative measure of damages in the form of corrective advertising to correct alleged (and unsubstantiated) consumer confusion, which he "assume[s]" would be in the amount of ***all of Kars 4 Kids' advertising expenditures*** between 2008 and 2017. Wright Decl. Ex. 2 at 18. Here too, Mr. Cook assumes that ***each and every advertisement*** purchased by Kars 4 Kids caused consumer confusion. However, Mr. Cook identifies no specific advertisement that allegedly would cause such confusion, nor does he identify any studies, tests, or analyses of data that underlie this conclusion. Yet, America Can would have Mr. Cook testify that under a corrective advertising measure, each and every penny that Kars 4 Kids spent on advertising must go to America Can in order to correct consumer confusion. These are mere assumptions, as with Mr. Cook's testimony regarding disgorgement of profits, and not the product of a reliable methodology reliably applied.

**C. <u>Mr. Cook's Proffered Testimony Is Unreliable Under *Schiff*</u>**

The basis for Mr. Cook's testimony with regard to damages – under both the disgorgement of profits and corrective advertising measures – is pure speculation and assumes that Kars 4 Kids' use of the KARS 4 KIDS Marks caused a decline in America Can's donations. But Mr. Cook admitted in his deposition that other factors—including (i) changes in the tax law in 2005 that impacted the deductibility of vehicle donations; (ii) the increase in demand for used cars caused by the 2007-2009 economic recession in the United States; and (iii) a crowded field with other organizations competing with both Kars 4 Kids and America Can for vehicle donations—could be responsible for any decline in America Can's donations. Wright Decl. Ex. 3 at 45:15-25. Yet, without any explanation, Mr. Cook simply ignored these other likely causal factors. Mr. Cook testified that he did not perform any analysis whatsoever to determine how much any alternative factor may have contributed to the decline in America Can's donations,

which he simply assumes is only attributable to Kars 4 Kids' use of the KARS 4 KIDS Marks. *Id.* at 46:2-9. Nor does he have any opinion about, or methodology for determining, how much these alternative factors contributed in whole or in part to any decrease in donations to America Can. *Id.*

Mr. Cook also fails to propose a methodology that could determine whether Kars 4 Kids' use of the KARS 4 KIDS Marks had any impact on donations to America Can, and if so how much of one. Indeed, Mr. Cook ultimately conceded that because of "other factors (e.g., the economy, the existence of other vehicle-donation charities, America Can's own advertising spend)," he was "unable to quantify a claim for lost donations and profits solely attributable to [Kars 4 Kids'] actions." Wright Decl. Ex. 2 at 3.

Indeed, Mr. Cook admitted that his damages opinion rests on nothing more than an assumption that Kars 4 Kids is responsible for the decline in America Can's donations, and not on any quantifiable measure or substantive analysis:

> Q. So you . . . believe that Kars 4 Kids' growth did cause a decline in America Can!'s donations, but you have no ability to quantify the amount of that decline in America Can!'s donations?
>
> A. Yes. I've said that many times throughout the deposition.
>
> Q. And so it could be one donation, for all you know?
>
> A. I'm sure it's more than one.
>
> Q. What makes you sure of that?
>
> A. Because they're – they're getting millions of donations – or I'm sorry, thousands of donations. ***So I would assume it's more than one.***
>
> Q. Okay. But you're assuming that. You've done no –

A. Right.

Wright Decl. Ex. 3 at 79:11-80:2 (emphasis added).

As Mr. Cook conceded, his proffered testimony is nothing more than assumption and speculation, plain and simple. Since his opinions are not derived from any testable method or hypothesis which could potentially be subject to peer review, they run afoul of the first and second *Schiff* factors. With no testable method, Mr. Cook's "methodology" has no known or potential rate of error under the third *Schiff* factor, no standards governing it under the fourth *Schiff* factor, no general acceptance under the fifth *Schiff* factor, no establishment of reliability under the sixth *Schiff* factor, and no non-judicial uses under the eighth *Schiff* factor. Mr. Cook has provided no evidence for or genuine methodology supporting his assumption that any of the decline in America Can's donations is attributable to Kars 4 Kids' use of the KARS 4 KIDS Marks—much less all of it.

Mr. Cook's subjective beliefs are exactly the kind of testimony that the Third Circuit considers unreliable and inadmissible under Federal Rule of Evidence 702. *Elcock v. K-Mart Corp.*, 233 F.3d 734, 756 (holding trial court abused its discretion in allowing an expert's damages testimony which "relied on several empirical assumptions that were not supported by the record"). Courts in this District and Circuit recognize the unreliability—and inadmissibility—of putative expert testimony based on unsupported factual assumptions. *See Mercedes-Benz, U.S.A. LLC v. Coast Auto. Grp.*, Ltd., No. CIV A 99-3121 WHW, 2006 WL 2830962, at *13 (D.N.J. Sept. 29, 2006) (excluding putative expert testimony "based on nothing more than speculation and subjective belief"); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 444 (D.N.J. 2009) (excluding putative expert's testimony on lost profits where the expert avoided "having to apportion any amount of damage" which was "fatal

to the validity of his calculations" on the issue of damages); *Citizen Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*, No. CIV.A. 01-1524, 2003 WL 24010950, at *17 (W.D. Pa. Apr. 23, 2003), *aff'd sub nom. Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110 (3d Cir. 2004) (excluding putative damages expert assumed that alleged infringer's use of mark caused the proffered damages); *JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.*, No. CIV. A. 97-CV-0652, 1998 WL 175888, at *11 (E.D. Pa. Apr. 15, 1998), *aff'd*, 178 F.3d 1279 (3d Cir. 1999) (excluding putative expert who "did not point to reliable evidence that would bridge the gap between the facts and his conclusion").

Mr. Cook cites no facts that could support an opinion on the impact of Kars 4 Kids' use of the KARS 4 KIDS Marks on donations to America Can, and offers no methodology for assessing any such impact in light of other factors that he admits could have caused the decline. Speculative opinions are not helpful to the jury. *Kuhar v. Petzl Co.*, No. CV 16-0395 (JBS/JS), 2018 WL 6331682, at *5 (D.N.J. Dec. 4, 2018) (excluding speculative opinion as "of no assistance to the jury"). The Court should respectfully prevent such rank speculation from reaching the jury.

## IV. CONCLUSION

For the reasons set forth above, Kars 4 Kids respectfully requests that the Court exclude the proffered opinions from Mr. Cook in their entirety.

Dated: February 14, 2019

By: *s/Liza M. Walsh*

Liza M. Walsh
Marc D. Haefner
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, New Jersey 07102
(973) 757-1100

Peter D. Vogl
David Litterine-Kaufman
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019-6142
(212) 506-5000

*Attorneys for Plaintiff*
*KARS 4 KIDS INC.*