## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARS 4 KIDS INC., | Civil Action No. 3:14-cv-7770 (PGS/LHG) |
|     Plaintiff, | |
| v. | |
| AMERICA CAN!, | |
|     Defendant. | |
| AMERICA CAN! CARS FOR KIDS, | Civil Action No. 3:16-cv-4232 (PGS/LHG) |
|     Plaintiff, | |
| v. | |
| KARS 4 KIDS, INC., | |
|     Defendant. | |

## KARS 4 KIDS INC.'S PRE-TRIAL BRIEF

Liza M. Walsh
Marc D. Haefner
Eleonore Ofosu-Antwi
WALSH PIZZI O'REILLY
FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, New Jersey 07102
(973) 757-1100

Peter D. Vogl
David Litterine-Kaufman
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019-6142
(212) 506-5000

*Attorneys for*
*KARS 4 KIDS INC.*

# TABLE OF CONTENTS

**Page**

I.    Introduction and Relevant Background ........................................................... 1

    A.    The Parties ............................................................................................. 2

    B.    Procedural History ................................................................................. 4

II.   Kars 4 Kids' Claims ...................................................................................... 4

    A.    The KARS 4 KIDS Marks Are Valid and Legally Protectable ........... 5

        1.    The KARS 4 KIDS Marks Are Legally Protectable
             Because They Are Suggestive ................................................... 6

        2.    Alternatively, the KARS 4 KIDS Marks Are Legally
             Protectable Because They Are Distinctive and Have
             Acquired a Secondary Meaning .................................................. 7

    B.    Kars 4 Kids Owns the KARS 4 KIDS Marks .................................... 10

    C.    America Can's Use of the "Cars for Kids" Designation Is
        Likely to Create Consumer Confusion ............................................... 17

III.  Kars 4 Kids' Defenses to America Can's Counterclaims and Later-
    Filed Claims .............................................................................................. 18

    A.    America Can's Use of "Cars for Kids" Is Not Legally
        Protectable Because It Is Being Used Descriptively and
        America Can Has No Evidence of Secondary Meaning ................... 19

    B.    America Can Acquiesced to Kars 4 Kids' Use of the KARS 4
        KIDS Marks Outside of Texas ........................................................... 22

    C.    Evidence Concerning America Can's Claim for an Accounting
        of Kars 4 Kids' Profits Should Be Presented to the Court
        Outside the Presence of the Jury ....................................................... 24

    D.    America Can Is Not Entitled to Corrective Advertising or
        Disgorgement of Kars 4 Kids' Profits ............................................... 30

i

# TABLE OF CONTENTS
(continued)

                                                                        **Page**

    1.    America Can Cannot Meet Its Burden of Showing Harm From Any Alleged Infringement ..............................................30

    2.    America Can Cannot Prove That It Is Entitled to Corrective Advertising Damages............................................32

    3.    America Can Cannot Satisfy the Test for Disgorgement Under *Banjo Buddies* ...............................................33

IV.   Conclusion .......................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
166 F.3d 197 (3d Cir. 1999) ................................................................26

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
237 F.3d 198 (3d Cir. 2000) ........................................................*passim*

*A.J. Canfield Co. v. Honickman*,
808 F.2d 291 (3d Cir. 1986) ..........................................................20, 21

*American Cyanamid Co. v. Sterling Drug, Inc.*,
649 F. Supp. 784 (D.N.J. 1986) .........................................................26

*Banjo Buddies, Inc. v. Renosky*,
399 F.3d 168 (3d Cir. 2005) ..........................................................26, 33

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
627 F. Supp. 2d 384 (D.N.J. 2009) ..................................................30, 31

*Castrol, Inc. v. Pennzoil Quaker State Co.*,
169 F. Supp. 2d 332 (D.N.J. 2001) .....................................................26

*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*,
269 F.3d 270 (3d Cir. 2001) ..........................................................33, 34

*Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp.*,
No. 3:10-CV-01559, 2016 WL 1728381 (M.D. Pa. Apr. 29, 2016) .................28

*Co-Rect Prods., Inc. v. Marvy! Advert. Photography, Inc.*,
780 F.2d 1324 (8th Cir. 1985) .............................................................8

*Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*,
214 F.3d 432 (3d Cir. 2000) .............................................................8, 9

*Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*,
855 F.3d 163 (3d Cir. 2017) ..........................................................22, 29

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) ........................................................................35

*Dranoff-Perlstein Assocs. v. Sklar*,
   967 F.2d 852 (3d Cir. 1992) ................................................................7

*Figueroa v. City of Chicago*,
   No. 97 C 8861, 2000 WL 520926 (N.D. Ill. Apr. 24, 2000) ..............28

*FM 103.1, Inc. v. Universal Broad. of N.Y., Inc.*,
   929 F. Supp. 187 (D.N.J. 1996) .........................................................19

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
   930 F.2d 277 (3d Cir. 1991) ..............................................................10

*Ginger Root Office Assocs., LLC v. Advanced Packaging & Prods. Co.*,
   No. CV 07-05568 MMM, 2009 WL 10672775 (C.D. Cal. Feb. 18, 2009)........28

*Hana Fin., Inc. v. Hana Bank*,
   135 S. Ct. 907 (2015).........................................................................10

*J & J Snack Foods, Corp. v. Earthgrains Co.*,
   220 F. Supp. 2d 358 (D.N.J. 2002).........................................5, 20, 22

*J & J Snack Foods Corp. v. Nestle USA, Inc.*,
   149 F. Supp. 2d 136 (D.N.J. 2001)................................................6, 20

*Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*,
   Civ. Act. No. 11-3684 (SRC)(CLW), 2016 WL 3545529
   (D.N.J. June 29, 2016) ................................................................*passim*

*McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*,
   511 F.3d 350 (3d Cir. 2007) ..............................................................34

*Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*,
   292 F. Supp. 2d 594 (D.N.J. 2003).....................................................29

*Univ. of Pittsburgh v. Champion Prods. Inc.*,
   686 F.2d 1040 (3d Cir. 1982) ............................................................29

*Vision Sports, Inc. v. Melville Corp.*,
   888 F.2d 609 (9th Cir. 1989) ...............................................................8

**Statutes**

15 U.S.C. § 1115 ...................................................................................5

15 U.S.C. § 1117 ..................................................................................................30

**Other Authorities**

McCarthy on Trademarks and Unfair Competition ................................8, 11, 27, 31

## I.   **Introduction and Relevant Background**

This is a trademark infringement and unfair competition action brought by Kars 4 Kids Inc. ("Kars 4 Kids") against America Can! ("America Can").  Kars 4 Kids is the nationwide senior user of the trademarks KARS 4 KIDS and 1-877-KARS-4-KIDS (the "KARS 4 KIDS Marks") in connection with charitable fundraising by means of collecting and reselling used automobiles and other property.  America Can also operates a vehicle donation program for the purposes of charitable fundraising, primarily in the State of Texas, and from time to time has used the designation "Cars for Kids" in connection with that program.  America Can asserts counterclaims, and claims in its later-filed action, against Kars 4 Kids that are essentially mirror images of Kars 4 Kids' claims or raise the same factual questions as Kars 4 Kids' claims.

The evidence will show that: (i) Kars 4 Kids has legal rights in, and is the owner of, the KARS 4 KIDS Marks because Kars 4 Kids offered its services in interstate commerce and circulated advertising with the marks nationwide before America Can began advertising outside of Texas; (ii) America Can's use of the "Cars for Kids" designation has and continues to infringe intentionally on the KARS 4 KIDS Marks; (iii) to the extent America Can used the designation "Cars for Kids" before Kars 4 Kids used the KARS 4 KIDS Marks, any such use was not use as a trademark; (iv) America Can does not have legal rights in "Cars for Kids" because

1

it has used that designation descriptively and the designation has not acquired a secondary meaning; (v) America Can acquiesced in Kars 4 Kids use of the KARS 4 KIDS Marks outside of Texas since at least as early as 2003; and (vi) in any event, America Can is not entitled to damages or an accounting of Kars 4 Kids' profits because America Can does not have superior rights, and has no evidence of whether it was or the extent to which it may have been harmed by any alleged infringement by Kars 4 Kids. America Can's request for an accounting of Kars 4 Kids' profits seeks an equitable remedy that must be decided by the Court and for which the evidence should be presented separately, outside the presence of the jury.

### A. <u>The Parties</u>

Kars 4 Kids has offered its services in interstate commerce and advertised its well-known charitable fundraising services by means of collecting and reselling used automobiles and other property under the KARS 4 KIDS Marks since at least as early as 1995, when its advertisements extended to New York, New Jersey, and Maryland. By 1998, Kars 4 Kids was advertising its services on an even broader scale, using the KARS 4 KIDS Marks nationally, and in 2012, the United States Patent and Trademark Office (the "USPTO") granted Kars 4 Kids a federal registration for the trademark 1-877-KARS-4-KIDS, Registration Number 4,130,622, for "charitable fund raising services by means of collecting and reselling used automobiles."

Kars 4 Kids invested heavily in the KARS 4 KIDS Marks over two decades. Kars 4 Kids leveraged that investment to develop a revenue stream that allows it and its affiliated charities to help thousands of children every year. Kars 4 Kids has made significant and effective use of print publications, the Internet, billboards, radio, and television to promote and advertise its charitable donation services, and as a result, consumers have come to associate Kars 4 Kids as the source of services provided under the KARS 4 KIDS Marks. This consumer awareness garnered through Kars 4 Kids' extensive advertising and use of the KARS 4 KIDS Marks has created national recognition of Kars 4 Kids.

America Can also offers charitable fundraising services by means of collecting and reselling used automobiles and other property. Unlike Kars 4 Kids, America Can has focused its advertising efforts within the State of Texas. America Can will not present any direct evidence that it advertised with its designation "Cars for Kids" outside of Texas prior to 2013—over 15 years after Kars 4 Kids began advertising nationally with the KARS 4 KIDS Marks—and its witnesses lack personal knowledge of when America Can began using the phrase "Cars for Kids" to advertise its car donation program or when America Can began advertising outside of Texas.

B.    **Procedural History**

Kars 4 Kids filed the instant action in the District of New Jersey in December 2014. *See* Dkt. 1 (Dec. 12, 2014). America Can filed its Answer and Counterclaims in February 2015, *see* Dkt. 16 (Feb. 5, 2015), and then in November 2015 filed an action in the U.S. District Court for the Northern District of Texas, asserting substantially the same claims as in the instant action, *see America Can! Cars for Kids v. Kars 4 Kids Inc.*, No. 3:15-cv-03648-B, Dkt. 1 (N.D. Tex. Nov. 12, 2015). In July 2016, the Texas court transferred that action to the District of New Jersey, *see America Can! Cars for Kids v. Kars 4 Kids, Inc.*, No 3:15-cv-03648-B, Dkt. 27 (N.D. Tex. July 11, 2016), where it was docketed as *America Can! Cars for Kids v. Kars 4 Kids Inc.*, No. 3:16-cv-042320-PGS-LHG. In March 2017 that action was consolidated into the instant action with Kars 4 Kids' earlier filed action as the lead docket. *See* Dkt. 90 (Mar. 2, 2017). On April 10, 2019, the Court ordered that the case caption be amended to reflect the consolidation. *See* Dkt. 185 (Apr. 10, 2019).

II.   **Kars 4 Kids' Claims**

Kars 4 Kids asserts claims against America Can for: trademark infringement under 15 U.S.C. § 1114 (Count I); unfair competition and false designation of origin under 15 U.S.C. § 1125(a) (Count II); trademark dilution under N.J.S.A. §§ 56:3-13, *et seq.* (Count III); unfair competition under N.J.S.A. § 56:4-1 (Count IV); and

trademark infringement, unfair competition, and dilution under the common law of the State of New Jersey (Count V).

"[T]he elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law . . . ." *J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002).  To succeed on such claims, a plaintiff must demonstrate that: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion."  *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (citations omitted).[1]  Kars 4 Kids will show at trial that the KARS 4 KIDS Marks are valid and legally protectable and are owned by Kars 4 Kids nationwide, and that America Can's use of the designation "Cars for Kids" presents a likelihood of confusion.

### A.    The KARS 4 KIDS Marks Are Valid and Legally Protectable

To qualify for trademark protection, a mark "must either be suggestive, arbitrary, or fanciful, or must be descriptive with a demonstration of secondary

---

[1] Because Kars 4 Kids has registered 1-877-KARS-4-KIDS on the principal register there is a presumption that the mark is valid and owned by Kars 4 Kids, and that Kars 4 Kids has the exclusive right to use the mark in commerce.  15 U.S.C. § 1115(a).

meaning." *A & H Sportswear*, 237 F.3d at 222.  Here, the KARS 4 KIDS Marks are protectable because they are suggestive—which makes them protectable even absent evidence of secondary meaning—and because, if the jury were to conclude that they are descriptive, the evidence will show they have attained secondary meaning.

### 1.   The KARS 4 KIDS Marks Are Legally Protectable Because They Are Suggestive

A mark is suggestive if it "require[s] consumer imagination, thought, or perception to determine what the product is." *Id.* at 221-22 (internal quotation marks and citation omitted).  The factors to be considered in determining whether a mark is suggestive include:

> (1) the level of imagination, thought or perception required to reach a conclusion as to the nature of the goods; . . . (2) the likelihood that competitors will need to use the term in connection with their goods; . . . (3) the extent to which other sellers have used the mark on similar merchandise . . . ; . . . (4) the likelihood that the mark will conjure up other purely arbitrary connotations separate from what the mark conveys about the product; . . . [and] (5) probability consumers will regard the mark as a symbol of origin or as self-laudatory . . . .

*J & J Snack Foods Corp. v. Nestle USA, Inc.*, 149 F. Supp. 2d 136, 147 (D.N.J. 2001).

Each of these factors supports a finding that the KARS 4 KIDS Marks are suggestive.  The KARS 4 KIDS Marks both require consumer imagination to understand the nature of the services provided by Kars 4 Kids.  Both use whimsical spellings of the words "cars" and "for"— consumers must think about the meanings

of the made-up words "kars" and "4" and perceive the phonetic similarity between those words and the English words they reference.  Because the words "kars" and "4" are not real words, there is no likelihood that competitors will need to use the KARS 4 KIDS Marks in connection with advertising their services.  There is no evidence of other service providers using the KARS 4 KIDS Marks to promote similar services.  And there is nothing self-laudatory about the KARS 4 KIDS Marks—their only purpose is as symbols of origin.  Because the KARS 4 KIDS Marks are suggestive, they are automatically protectable.  *See, e.g.*, *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 857 (3d Cir. 1992) ("Suggestive marks . . . are 'protected without any necessity for proving secondary meaning.'" (quoting 1 McCarthy on Trademarks and Unfair Competition § 11:20 (2d ed. 1984)).

    2.    **Alternatively, the KARS 4 KIDS Marks Are Legally Protectable Because They Are Distinctive and Have Acquired a Secondary Meaning**

A mark is descriptive if it "forthwith convey[s] an immediate idea of the ingredients, qualities or characteristics of the goods."  *A & H Sportswear*, 237 F.3d at 222 (internal quotation marks and citation omitted).  While the whimsical spelling of "kars" and "4" in the KARS 4 KIDS Marks makes them suggestive, if they instead used the regular English spelling of "cars" and "for" their use becomes descriptive.  *See infra* pt. III.A.

7

The validity of a descriptive mark depends on the existence of secondary meaning. *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000).  In general, secondary meaning "is established through extensive advertising which creates in the minds of consumers an association between the mark and the provider of the services advertised under the mark." *Id.* "One of the most scientific methods of determining the mental associations of the relevant purchaser class is to conduct a survey of the purchasers themselves."  2 McCarthy on Trademarks and Unfair Competition § 15:42 (5th ed. 2017) (hereinafter "McCarthy on Trademarks"); *see also Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989) ("An expert survey of purchasers can provide the most persuasive evidence of secondary meaning."); *Co-Rect Prods., Inc. v. Marvy! Advert. Photography, Inc.*, 780 F.2d 1324, 1333 n.9 (8th Cir. 1985) ("Consumer surveys are recognized by several circuits as the most direct and persuasive evidence of secondary meaning.") (collecting cases).

The Third Circuit has set forth 11 non-exclusive factors that may be considered when assessing secondary meaning:

> (1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion.

8

*Commerce Nat'l Ins. Servs.*, 214 F.3d at 438.  Each of these factors—including consumer survey evidence—shows that the KARS 4 KIDS Marks have acquired a secondary meaning and are associated with Kars 4 Kids in the minds of consumers.

Kars 4 Kids' records of advertising expenses show that, when America Can began advertising outside of Texas in 2013, Kars 4 Kids had already spent ***over $50 million*** on advertising; indeed, America Can's damages expert observed that "K4K appears to have significantly outspent CFK in advertising in every year since at least 2008."  Kars 4 Kids' substantial advertising expenditures have led to nationwide recognition of the KARS 4 KIDS Mark as a designation of Kars 4 Kids' charitable fundraising services, as evidenced by, among other things, the fact that Kars 4 Kids' jingle has been featured on a variety of popular nationally broadcast television shows. *See infra* pt. II.B.  Kars 4 Kids also has priority of use nationwide. *See infra* pt. II.B.  America Can emails will demonstrate that America Can knowingly and intentionally used its "Cars for Kids" designation to try to take donations intended for Kars 4 Kids and to piggyback on Kars 4 Kids' extensive advertising. *See, e.g.*, PX-47 (America Can's former head of marketing recommending advertising strategy because "[w]e can . . . steal all of Kars 4 Kids as people will think we are them and they are already advertising there"); PX-48 (America Can's CEO stating that "Cars for Kids" designation means "[w]e can actually take advantage of what they built.  Kar [sic] for Kids."); PX-61 (America Can's COO instructing customer

representative to accept donation where "[t]hey are hearing our competition, Kars 4 Kids but they are going to the internet to find them.  They are finding us on the internet."); PX-65 (America Can COO observing that donation was "[p]robably Kars 4 Kids.  Jump on it and we might have another one.").  Kars 4 Kids' survey expert will testify that the KARS 4 KIDS Marks have attained a level of secondary meaning of 41% to 42% among the general population.  Kars 4 Kids is a larger organization than America Can, with substantially more donations, revenue, and market share than America Can; indeed, America Can's damages expert described Kars 4 Kids as "the dominant player in the vehicle-donation market."  Expert Report of Bryce R. Cook dated Mar. 1, 2018, Dkt. 150-2, Ex. 2 at 13 (Feb. 14, 2019).  Finally, America Can's emails show that consumers confused America Can for Kars 4 Kids.  *See, e.g.*, PX-60 (potential donor contacting America Can about Kars 4 Kids jingle); PX-61 (America Can COO acknowledging that donor intended to contact Kars 4 Kids).

Th evidence will establish that, even if the KARS 4 KIDS Marks were deemed descriptive, they have attained secondary meaning entitling both marks to protection.

**B.**   **Kars 4 Kids Owns the KARS 4 KIDS Marks**

"With respect to ownership of unregistered marks, the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991); *see also Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 909 (2015)

("Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users."). "Whether or not a company name is being used as a service mark . . . can be determined only by careful scrutiny of the exact manner in which the term is used by the applicant *in its advertising media*." 3 McCarthy on Trademarks § 19:88 (emphasis added). The evidence will show that Kars 4 Kids has advertised continuously using the KARS 4 KIDS Marks since 1995—when advertisements using the marks were distributed in at least New Jersey, New York, and Maryland—and on an even broader scale, nationally since at least as early as 1998. The earliest direct evidence of America Can advertising outside of Texas is from 2013, and none of America Can's witnesses will be able to testify when it began advertising with the designation "Cars for Kids." Because Kars 4 Kids is the senior user of the KARS 4 KIDS Marks nationally, Kars 4 Kids can assert ownership rights in the marks nationally.

Kars 4 Kids began its program of charitable fundraising services by means of collecting and reselling used automobiles in 1995. Rabbi Eliyohu Mintz will testify that, in the beginning, he spearheaded the advertising and marketing of Kars 4 Kids' donation services, supported by a network of volunteers. Kars 4 Kids' advertising during this time appeared in New York, New Jersey, and Maryland, and featured the KARS 4 KIDS Marks to solicit vehicle donations in support of the charitable

services provided by Kars 4 Kids.  Kars 4 Kids grew its mission[2] over time and expanded both its advertising and its volunteer and employee base.

As Kars 4 Kids' charitable fundraising services grew in popularity, Kars 4 Kids began soliciting donations using its KARS 4 KIDS Marks on a broader national scale.  By 1998, Kars 4 Kids had dramatically increased the scope of its advertising using the KARS 4 KIDS Marks.  At that time the KARS 4 KIDS Marks were featured in advertisements in the publication *The Jewish Press*, which was distributed in 46 states.  By at least the late 1990's, Kars 4 Kids also used a nationwide mailing list to send mailers and postcards that displayed the KARS 4 KIDS Marks and advertised its charitable fundraising services directly to households across the country.  Some examples of Kars 4 Kids' use of the KARS 4 KIDS Marks as it appeared in these nationwide mailings are below:

---

[2] Kars 4 Kids' mission is to foster a generation of well-balanced, productive adults, which it accomplishes by providing children and their families with a strong network of personal guidance and educational resources, individualized to their needs.  Kars 4 Kids' overall areas of activity consist of educational programming, school placement, tuition assistance, mentorship programs, cultural activities, weekend retreats, religious instruction, summer camps, recreation, and guidance counseling.



**Kars 4 Kids Mailer (PX-115)**



**Kars 4 Kids Postcard (PX-183)**

In 2003, Kars 4 Kids expanded its presence into online advertising, with national advertisements using its KARS 4 KIDS Marks appearing through such outlets as Yahoo! and Google. Kars 4 Kids has continued to advertise through such online channels ever since. Kars 4 Kids devotes tremendous resources to online advertising, with approximately 44% of its advertising appearing online.

By 2004, the KARS 4 KIDS Marks were prominently displayed in advertisements in well-known nationally circulated publications such as *Reader's Digest*. In 2004, Kars 4 Kids also began advertising on billboards in the New Jersey area using the KARS 4 KIDS Marks. Kars 4 Kids expanded its billboard presence to other major metropolitan areas such as New York and Chicago in 2006, and Los Angeles in 2007. These billboards are still on display in major metropolitan areas today. Examples of Kars 4 Kids billboard advertisements are below:





**Kars 4 Kids Billboard Advertising (PX-94)**

The watershed moment in Kars 4 Kids' journey to solidifying its status as a nationally recognized brand—one that generates millions of vehicle donations per year across the country—was the introduction of the well-known Kars 4 Kids jingle

in its radio and television advertising.  The jingle prominently uses the KARS 4 KIDS Marks.[3]  Today, because of its use in Kars 4 Kids' advertisements, the catchy jingle has become a major source of Kars 4 Kids' recognition—so much so that its infectious and memorable nature is the subject of humorous references on nationally broadcast television shows such as "Saturday Night Live," "Family Guy," "The Daily Show," and "Last Week Tonight with John Oliver."[4]  Billboard Magazine has referred to it as "the jingle you can't get out of your head."  The jingle first aired on New York tri-state area radio in 1999, spreading to New Jersey's airwaves in 2001, Chicago's in 2004, and California's in 2005.  By 2008 (and continuing to date), the jingle aired nationwide on major radio broadcast networks such as Clear Channel and CBS.  By 2012, Kars 4 Kids was advertising on the online internet radio and music streaming site Pandora, prominently featuring the KARS 4 KIDS Marks.  The success of Kars 4 Kids' charitable fundraising services has allowed it to grow its advertising expenditures from *$500,000 per month* in 2009 on nationwide advertising featuring the KARS 4 KIDS Marks to *over $1 million per month* in 2017.

---

[3] The lyrics for the Kars 4 Kids jingle are:  1-877-kars-4-kids / k-a-r-s kars for kids / 1-877-kars-4-kids / donate your car today.

[4] The fact that the Kars 4 Kids jingle has been the subject of late-night entertainment confirms that it is so well known that viewers will get the joke.

While the evidence will show that Kars 4 Kids was advertising nationally with the KARS 4 KIDS Marks by 1998, ***America Can's earliest evidence of advertising outside of Texas comes from 2013***, when America Can began advertising on Sirius Satellite Radio.  While America Can's predecessor, Texans Can!, filed an assumed name certificate with the Secretary of State of the State of Texas for "Dallas Can! Cars For Kids" on December 17, 1991, America Can did not produce any evidence that it began using the designation "Cars for Kids" in commerce outside of Texas before Kars 4 Kids' use of the KARS 4 KIDS Marks.  America Can did not produce any evidence of use of the "Cars for Kids" designation in advertising outside of Texas ***before 1998***—when Kars 4 Kids was advertising with the KARS 4 KIDS Marks in 46 states—***or even before 2005***—when Kars 4 Kids' advertisements using the KARS 4 KIDS Marks were already circulated nationally in print in *Reader's Digest* and online through Yahoo! and Google.  Nor could America Can's witnesses identify:  when America Can first began using the designation "Cars for Kids" in advertising within Texas or outside of Texas; when America Can first distributed an advertisement using the designation "Cars for Kids" within Texas or outside of Texas; or when America Can began advertising online via Google.

In short, the evidence will show that KARS 4 KIDS has ownership rights in the KARS 4 KIDS Marks because Kars 4 Kids was advertising nationally with the marks long before America Can began advertising outside of Texas.

## C.   America Can's Use of the "Cars for Kids" Designation Is Likely to Create Consumer Confusion

America Can does not dispute that there is a likelihood of confusion between the KARS 4 KIDS Marks and America Can's "Cars for Kids" designation.  America Can's Answer in this action admits that:

- "There is a likelihood of confusion between America Can!'s [designation] and Plaintiff's alleged KARS 4 KIDS mark," America Can!'s Answer and Counterclaims, Dkt. 16, ¶ 24;

- "[The 'Cars for Kids' designation] is likely to be confused with Plaintiff's alleged KARS 4 KIDS marks, because the Plaintiff's alleged KARS 4 Kids marks are similar in appearance, sound, pronunciation, meaning, and overall commercial impression to America Can!'s [designation]," *id.* ¶ 25; and

- "To the extent Plaintiff purports to offer charitable fundraising services by means of collecting and reselling used automobiles, America Can!'s and Kars 4 Kids' concurrent use of their respective marks . . . is likely to cause consumer confusion," *id.* ¶ 26.

Many of the factors established by the Third Circuit as relevant to a finding of likelihood of confusion also support such a finding here.  *See A & H Sportswear*, 237 F.3d at 215.  There is a large degree of similarity between the KARS 4 KIDS Marks and the "Cars for Kids" designation—as America Can has pointed out, the

17

two are phonetically identical—a particularly important factor when the parties are competitors. *Id.* at 214-15. There is evidence of actual confusion, including emails and telephone calls received by both organizations in which donors and potential donors mistakenly contact one while intending to contact the other. *Id.* at 215. Kars 4 Kids and America Can both advertise through the same channels of trade, including radio and pay-per-click providers such as Google. *Id.* And both parties' sales efforts target people with used cars they wish to donate for a tax deduction. *Id.*

Both America Can's admissions in its pleading and the evidence show that there is a significant likelihood of confusion between the KARS 4 KIDS Marks and America Can's "Cars for Kids" designation.

## III.  Kars 4 Kids' Defenses to America Can's Counterclaims and Later-Filed Claims

America Can's counterclaims and later-filed claims are essentially mirror images of the claims asserted by Kars 4 Kids. America Can asserts claims and counterclaims for: declaratory judgments that the KARS 4 KIDS Marks are not protectable (Third Counterclaim; Claim 3) and of noninfringement (Fourth Counterclaim; Claim 4); unfair competition and false designation of origin under 15 U.S.C. § 1125(a) (Fifth Counterclaim; Claim 5); trademark dilution under 15 U.S.C. § 1125(c) (Sixth Counterclaim; Claim 6); trademark dilution under state statutory law (Seventh Counterclaim; Claim 7); unfair competition under N.J.S.A. § 56:4-1 (Eighth Counterclaim); and common law trademark infringement and unfair

competition (Seventh Counterclaim [sic]; Claim 8). America Can also asserts claims and counterclaims for cancellation of 1-877-KARS-4-KIDS (First Counterclaim; Claim 1); and a declaratory judgment of fraud on the USPTO and cancellation of 1-877-KARS-4-KIDS (Second Counterclaim; Claim 2). America Can's claims and counterclaims for cancellation and fraud on the USPTO, like its other claims and counterclaims, turn on the incorrect assertion that America Can has legal rights in the "Cars for Kids" designation superior to Kars 4 Kids' rights in the KARS 4 KIDS Marks. America Can seeks an accounting of Kars 4 Kids' profits and damages in the form of the cost of corrective advertising. The evidence will show that the "Cars for Kids" designation is not protectable, that America Can acquiesced to Kars 4 Kids' use of the KARS 4 KIDS Marks outside of Texas, and that America Can is not entitled to damages or an accounting of Kars 4 Kids' profits.[5]

### A.   **America Can's Use of "Cars for Kids" Is Not Legally Protectable Because It Is Being Used Descriptively and America Can Has No Evidence of Secondary Meaning**

Service marks which are "merely descriptive of a service are not inherently distinctive, and when used to describe a service, cannot be protected" unless "the marks acquire a secondary meaning." *FM 103.1, Inc. v. Universal Broad. of N.Y., Inc.*, 929 F. Supp. 187, 194 (D.N.J. 1996) (internal quotation marks, alterations, and

---

[5] For the reasons discussed above, America Can also is not the owner of any legal rights in the "Cars for Kids" designation because Kars 4 Kids has priority of use. *See supra* pt. II.B.

19

citation omitted).  Unlike the KARS 4 KIDS Marks and their whimsical spelling, it requires no imagination, thought, or perception to connect the "Cars for Kids" designation as used by America Can to the service provided by America Can.  *See A & H Sportswear*, 237 F.3d at 221-22.  America Can provides charitable fundraising services by means of collecting and reselling used automobiles to support the operation of high schools for nontraditional students known as "Can Academies."  The funds America Can generates from collecting and reselling cars allegedly support the kids who attend the Can Academies.  America Can uses the designation "Cars for Kids" to describe the purpose of America Can's vehicle donation program.  Indeed, both America Can's COO and its former head of marketing testified that the term "Cars for Kids" describes the vehicle donation program.

When a designation is used descriptively, like America Can's use of "Cars for Kids," "a claimant can still establish trademark rights, but only if it proves that consumers identify the term with the claimant, for that identification proves secondary meaning."  *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 297 (3d Cir. 1986); *see also Earthgrains Co.*, 220 F. Supp. 2d at 375 ("Descriptive terms only enjoy trademark protection if they have acquired a secondary meaning in the minds of the consuming public." (citations omitted)); *Nestle USA*, 149 F. Supp. 2d at 151 ("A descriptive mark that has not achieved incontestability and which is not

'inherently distinctive' may only be found to be valid and protectable if there is proof of secondary meaning.").  The burden of proving secondary meaning falls on the party asserting trademark rights in the designation.  *A.J. Canfield Co.*, 808 F.2d at 297.

America Can has not submitted any evidence to show that consumers have come to associate the term "Cars for Kids" with America Can.  In fact, America Can has long considered its trademark to be "Write Off the Car, Not the Kid," as evidenced from advertisements featuring the TM symbol next to that phrase—and not next to the designation "Cars for Kids."  America Can's fact witnesses also testified that America Can considers its trademarked tagline to be "Write Off the Car, Not the Kid."  *See also* PX-34 (America Can Branding Guidelines describing "Write Off the Car, Not the Kid" as "our primary marketing message" and requiring that "[t]he tagline should be used on all marketing communications, including print collateral, advertising and websites"); PX-35 (America Can webpage featuring "Write off the Car, Not the Kid" in large lettering followed by the TM symbol). Unlike Kars 4 Kids, America Can did not adduce any consumer survey evidence purporting to show that consumers perceive the "Cars for Kids" designation as a trademark or that consumers exclusively associate America Can with that designation.  Although America Can has proffered an expert witness to challenge the testimony of Kars 4 Kids' survey expert, the lack of any affirmative evidence

that the "Cars for Kids" designation has achieved a secondary meaning is fatal to America Can's assertion of trademark rights. *See Earthgrains Co.*, 220 F. Supp. 2d at 381 ("[I]t is not enough to contest the [survey expert] findings . . . ; J & J still needs independent proof of secondary meaning to sustain its claim.").

Because America Can cannot establish that the "Cars for Kids" designation is legally protectable, it cannot assert trademark rights in that designation anywhere in the United States.

**B.      America Can Acquiesced to Kars 4 Kids' Use of the KARS 4 KIDS Marks Outside of Texas**

America Can is precluded from asserting any trademark claims against Kars 4 Kids for advertising outside of Texas because America Can acquiesced to Kars 4 Kids use of the KARS 4 KIDS Marks in the rest of the country.  An alleged infringer may assert the equitable defense of acquiescence "when the trademark owner, by affirmative word or deed, conveys its implied consent to the use of a mark." *Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*, 855 F.3d 163, 175 (3d Cir. 2017) (internal quotation marks and citation omitted).  "Relevant considerations . . . may include whether (1) the senior user actively represented that it would not assert a right or a claim; (2) the senior user's delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Id.*  (internal quotation marks, modification, and citation omitted).

On August 7, 2003, attorneys for America Can sent Kars 4 Kids a cease and desist letter regarding use of the KARS 4 KIDS Marks. *See* PX-25. The letter expressly claims America Can's use of the designation "Cars for Kids" *in Texas* (and not outside of Texas) *since 1992* (and not since 1989, as America Can alleges in its Counterclaims). America Can asked only that Kars 4 Kids cease use of the KARS 4 KIDS Marks *in Texas*. *Id.* Moreover, America Can's former head of marketing testified that America Can was aware that Kars 4 Kids resumed advertising with the KARS 4 KIDS Marks *in Texas* as early as 2007. Despite being aware of Kars 4 Kids' use of the KARS 4 KIDS Marks as early as 2003, and of Kars 4 Kids' continued use of the KARS 4 KIDS Marks within Texas since at least as early as 2007, America Can did not challenge Kars 4 Kids' use of the KARS 4 KIDS Marks outside of Texas until ten years later, in March 2013. *See* PX-107. During that time, Kars 4 Kids invested significant resources in expanding its support of those who benefit from its charitable services. Kars 4 Kids also incurred substantial expenses in cultivating goodwill through nationwide advertisements featuring the KARS 4 KIDS Marks, which totaled over $60 million.

Having knowingly allowed Kars 4 Kids to spend millions of dollars cultivating goodwill in the KARS 4 KIDS Marks over at least a decade, America Can has acquiesced to Kars 4 Kids use of the marks, and cannot now preclude Kars 4 Kids from reaping the benefits of that investment.

23

**C.**   **Evidence Concerning America Can's Claim for an Accounting of Kars 4 Kids' Profits Should Be Presented to the Court Outside the Presence of the Jury**

America Can has effectively abandoned its claim for its own lost profits by failing to adduce any relevant evidence and acknowledging that it cannot determine the amount of any lost profits.  The appropriateness and amount of any disgorgement of Kars 4 Kids' profits is an issue for determination by the Court because no jury trial right attaches to a request for the equitable remedy of disgorgement.  Any evidence concerning Kars 4 Kids' profits should be presented to the Court outside the presence of the jury to avoid wasting the jury's time and prejudice to Kars 4 Kids.  America Can's only remaining remedy to which a jury trial right attaches is its request for corrective advertising damages.

America Can has made clear that it has abandoned its request for an award of its own lost profits as damages.  In its opposition to Kars 4 Kids' motion for summary judgment, America Can stated that "AC! is under no obligation to provide specific identification and quantification of lost donations; ***this would only be required if AC! was seeking lost profits as its actual damages***."  Mem. of Law in Opp'n to Pl. Kars 4 Kids' Mot. for Part. Summ. J, Dkt. 136, at 23 (June 19, 2018) (emphasis added).  Counsel for America Can further confirmed that America Can is seeking disgorgement of Kars 4 Kids' profits—and that America Can is not seeking an award

of its own lost profits as damages—during the April 2, 2019 hearing on the parties'

motions *in limine*:

> THE COURT: Well, wait a second.  So if I understood this right, you have an option in looking at your damage claim, and one is whether or not you're going to disgorge all profits from your adversary; or whether you say our trademark has been injured, and you come up with a number for damages.  But I don't think you're allowed both. So you've got to make that decision.
>
> MR. PITTMAN: Correct.

Apr. 2, 2019 Hr'g Tr. at 32:12-19.

Indeed, America Can has been adamant that its putative damages expert,

Bryce Cook, will only present evidence on disgorgement—not lost profits.   In

opposing Kars 4 Kids' motion *in limine* to exclude Mr. Cook's testimony, America

Can insisted that "Mr. Cook's opinion is based on the Lanham Act's express

provision of disgorgement of K4K's profits as a measure of CFK's damages" and

accused Kars 4 Kids of conflating "the alternative remedies of lost profits, which

Mr. Cook *is not* opining on, and disgorgement of profits, which Mr. Cook *is* opining

on."  Def. America Can!'s Br. in Opp'n to Pl. Kars 4 Kids Inc.'s Mot. *in Limine* No.

1, Dkt. 163, at 1 (Mar. 1, 2019) (emphasis in original); *see also id.* at 14 ("Mr. Cook's

opinion is *not* based on CFK's lost profits . . . .  Mr. Cook's opinion is based on

disgorgement of K4K's 'profits' . . . .  The calculation of K4K's 'profits' for

purposes of the remedy of disgorgement is entirely independent of CFK's own

donations." (emphasis in original)).  Mr. Cook himself admitted that he is "***unable***

***to quantify a claim for lost donations and profits*** solely attributable to K4K's

actions."  Expert Report of Bryce R. Cook dated Mar. 1, 2018, Dkt. 150-2, Ex. 2 at

3 (Feb. 14, 2019) (emphasis added).  America Can has made abundantly clear that

its case for monetary relief will consist of an accounting of Kars 4 Kids' profits and

corrective advertising, nothing more.

There is no dispute that an accounting under the Lanham Act of an alleged

infringer's profits is an equitable remedy.  *See, e.g.*, *Banjo Buddies, Inc. v. Renosky*,

399 F.3d 168, 172 (3d Cir. 2005) ("[S]ection 35(a) of the Lanham Act, 15 U.S.C. §

1117(a), . . . provides for such accountings as an equitable remedy for Lanham Act

violations."); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197,

209 (3d Cir. 1999) ("[A]n accounting for profits is a form of equitable relief . . . ."

(quoting *Williamson-Dickie Mfg. v. Davis Mfg.*, 215 F.2d 924, 927 (3d Cir. 1958)).

Courts in this District recognize that, as a result, no jury trial right attaches to a claim

for an accounting of an alleged infringer's profits.  *See Castrol, Inc. v. Pennzoil

Quaker State Co.*, 169 F. Supp. 2d 332, 344 (D.N.J. 2001) ("A plain reading of the

Lanham Act remedy section unqualifiedly weighs against Pennzoil's interpretation

that they are entitled to a jury trial on the disgorgement of profits issue."); *American

Cyanamid Co. v. Sterling Drug, Inc.*, 649 F. Supp. 784, 789 (D.N.J. 1986) (noting

that a "purely equitable claim for profits" "seeks relief recognized by the Seventh

Amendment as fundamentally different from a claim for damages" and holding that

26

"[b]ecause American Cyanamid's claims in this action seek purely equitable relief, its demand for a jury trial must fall"); *see also* 6 McCarthy on Trademarks § 32:124 ("[I]n a trademark infringement suit, the claim for a recovery of the infringer's profits is an equitable claim for the judge, not a jury.").

Indeed, America Can agrees that an accounting of Kars 4 Kids' profits is an issue to be decided by the Court, not the jury. In opposing Kars 4 Kids' motion *in limine* to exclude the testimony of America Can's putative damages expert, America Can admitted that "[t]o the extent K4K argues that full disgorgement would be inequitable, that is irrelevant to Mr. Cook's opinions, ***since equitable remedies are assessed by the Court, not the jury*** . . . ." Def. America Can!'s Br. in Opp'n to Pl. Kars 4 Kids Inc.'s Mot. in Limine No. 1, Dkt. 163, at 14 (Mar. 1, 2019) (emphasis added).

Because disgorgement is not an issue that will be decided by the jury, evidence related to disgorgement should be presented to the Court alone, outside the presence of the jury, both to avoid wasting the jury's time and to avoid prejudice to Kars 4 Kids. Kars 4 Kids and America Can both proposed one trial-day to present damages evidence. *See* Final Pretrial Order, Dkt. 187, at 66-67 (Apr. 18, 2019). The damages portion of the case will consist of at least two direct examinations and two cross examinations, each of which is likely to last several hours. It would be a pure waste

of the jurors' time to make them sit through this testimony when it has no bearing on any issue that they will have to decide.

Presentation of evidence about Kars 4 Kids profits also poses a substantial risk of undue prejudice by encouraging the jury to find Kars 4 Kids liable based solely on the perception that it has "deep pockets." *See Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp.*, No. 3:10-CV-01559, 2016 WL 1728381, at *10 (M.D. Pa. Apr. 29, 2016) (excluding evidence that defendant had liability insurance because "such testimony may induce a jury to impose liability . . . based on an improper inference that Association Defendants have 'deep pockets'"); *Ginger Root Office Assocs., LLC v. Advanced Packaging & Prods. Co.*, No. CV 07-05568 MMM (PJWx), 2009 WL 10672775, at *3 (C.D. Cal. Feb. 18, 2009) ("[E]vidence of [party's] finances is irrelevant, as it has no bearing on the liability of any party on the claims or counterclaims asserted in this action.  Because the evidence would also invite the jury improperly to consider [the party's] ability to pay for remediation in determining defendants' liability, it is inadmissible under Rule 403 as well."); *Figueroa v. City of Chicago*, No. 97 C 8861, 2000 WL 520926, at *1 (N.D. Ill. Apr. 24, 2000) ("The City contends reference to its 'deep pockets' is highly prejudicial under Fed.R.Evid. 403. . . . Accordingly, the court grants this motion because evidence of indemnification would be unfairly prejudicial under the balancing test of Fed.R.Evid. 403." (citation omitted)).

There is no justification for wasting the jury's time and risking such substantial prejudice to Kars 4 Kids.  Kars 4 Kids proposes that the most efficient way to present disgorgement evidence is for the parties to present their respective cases, and obtain a jury verdict, on liability, at which point the jury would be dismissed.  If the jury renders a verdict on liability against Kars 4 Kids, the parties can present disgorgement evidence to the Court after dismissal of the jury.  Alternatively, the Court could permit the jury to arrive late or leave early one day during trial and the parties could present their disgorgement evidence at that time.[6]

---

[6] The Court also must decide the parties' respective affirmative defenses of laches and acquiescence, and America Can's affirmative defenses of unclean hands and inequitable conduct.  *See Univ. of Pittsburgh v. Champion Prods. Inc.*, 686 F.2d 1040, 1045 (3d Cir. 1982) ("[L]aches is an equitable doctrine addressed to the sound discretion of the district judge . . . ."); *Covertech Fabricating*, 855 F.3d at 175 ("An alleged infringer may assert the equitable defense of acquiescence . . . ."); *Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp. 2d 594, 610 (D.N.J. 2003) ("The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." (quoting *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir.2001)).  Kars 4 Kids does not propose that evidence concerning these affirmative defenses be presented outside the presence of the jury because it is inextricably intertwined with the liability evidence and it is not likely to prejudice either party.

### D. America Can Is Not Entitled to Corrective Advertising or Disgorgement of Kars 4 Kids' Profits

#### 1. America Can Cannot Meet Its Burden of Showing Harm From Any Alleged Infringement

America Can is not entitled to corrective advertising damages or disgorgement under the Lanham Act because it cannot adduce any reliable evidence of harm as a result of any alleged infringement. The Lanham Act expressly provides that an award of damages in the form of a disgorgement of the alleged infringer's profits is intended to "constitute compensation and not a penalty." 15 U.S.C. § 1117(a). Similarly, "[c]orrective advertising damages are not awarded where the trademark holder has not demonstrated actual damages and where the alleged infringer has not acted in bad faith." *Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*, Civ. Act. No. 11-3684 (SRC)(CLW), 2016 WL 3545529, at *30 (D.N.J. June 29, 2016). Accordingly, allegations of infringement unsupported by "at least some evidence of harm" arising out of the alleged infringer's conduct "may not receive an award of profits or damages." *Id.*at *23 (citing *Caesars World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 274 (3d Cir. 1975)).

Furthermore, "[i]n Lanham Act cases, the causation standard for an award of damages is higher than the general standard for injunctive relief," and the alleged infringer "must link the deception with actual harm to its business." *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 480, 481 (D.N.J.

2009) (dismissing claim for damages under the Lanham Act on summary judgment) (emphasis added).

An award of the defendant's profits is intended to be a "rough, but reasonable measure of plaintiff's loss in competitive relationships." 5 McCarthy on Trademarks § 30:59. As a result, damages should not be awarded that would constitute a windfall to the plaintiff. *See Bracco*, 627 F. Supp. 2d at 485 n. 259 ("[T]he court has held that disgorgement is not an appropriate remedy, let alone considered enhancement of it. Such a result would constitute a windfall . . . .); *Koninkijke Philips Elecs. N.V.*, 2016 WL 3545529, at *23 ("[L]itigants must not be permitted to make excessive demands for profits.").

America Can has not adduced any evidence of any donations diverted from America Can to Kars 4 Kids, or any other harm to America Can, on the basis of Kars 4 Kids' use of the KARS 4 KIDS Marks. Indeed, America Can's damages expert admitted that numerous other factors (including the recession and other economic factors such as an increase in the value of used cars) could have contributed to any decline in donations to America Can. America Can's damages expert also admitted that he could not identify any specific instances of diverted sales as a result of consumers allegedly confusing Kars 4 Kids and America Can. And he does not even purport to offer an opinion about the amount of corrective advertising that would be necessary to offset any alleged harmed to America Can. America Can is not entitled

to any monetary award—corrective advertising or disgorgement—because there is no evidence of any harm to America Can from Kars 4 Kids' use of the KARS 4 KIDS Marks.

### 2.   **America Can Cannot Prove That It Is Entitled to Corrective Advertising Damages**

"The purpose of corrective advertising is to repair any damage the infringer may have caused to the mark." *Koninkijke Philips Elecs. N.V.*, 2016 WL 3545529, at *30. "Corrective advertising damages are not awarded where the trademark holder has not demonstrated actual damages and where the alleged infringer has not acted in bad faith." *Id.* A plaintiff "is precluded from receiving a corrective advertising award" when it "has not supported its claims to lost profits, lost sales, or any damage to [the plaintiff's] reputation" from the alleged infringement. *Id.*

America Can offers no evidence of lost profits, lost sales, or any damage to its reputation. As discussed above, *see supra* pt. III.C, America Can's damages expert Mr. Cook admitted that he is unable to quantify a claim for lost donations and profits solely attributable to K4K's actions. Nor is there evidence that America Can has undertaken any corrective advertising. *Id.* at *30 ("Hunt has not attempted to combat any effects it perceives from Philips's alleged infringement with its own corrective advertising campaign, which is telling."). And Mr. Cook cannot say how much corrective advertising would be needed to correct any confusion in the marketplace, admitting that "I do not have an estimate of what amount of corrective

advertising would be necessary to correct the confusion that has resulted in the marketplace . . . ." Expert Report of Bryce R. Cook dated Jan. 16, 2018, Dkt. 150-2, Ex. 1 at 10 (Feb. 14, 2019).

America Can cannot establish that it is entitled to corrective advertising because it has no evidence that corrective advertising is necessary to make up for any harm it has suffered.

### 3.   America Can Cannot Satisfy the Test for Disgorgement Under *Banjo Buddies*

The Third Circuit weighs the following factors in determining whether a plaintiff is entitled to a disgorgement of the defendant's profits:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Banjo Buddies*, 399 F.3d at 175.  All of these factors weigh against an award of disgorgement.

Kars 4 Kids first became aware of America Can upon receipt of the August 2003 cease and desist letter—a full eight years after Kars 4 Kids initiated operations and began advertising using the KARS 4 KIDS Marks in 1995.  Where, as here, "there is no evidence or even inference that [defendant] chose its name with [the plaintiff] in mind," there is no intent to deceive. *Checkpoint Sys., Inc. v. Check Point*

*Software Techs., Inc.*, 269 F.3d 270, 286 (3d Cir. 2001) (finding no intent to deceive) (citation omitted).

As discussed above, America Can has no evidence that any donation was diverted from America Can to Kars 4 Kids as a result of Kars 4 Kids' advertising using the KARS 4 KIDS Marks. To the extent America Can comes forward with isolated examples of consumer confusion, evidence of a *de minimis* amount of consumer confusion cannot support an award of disgorgement. *See McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 366 (3d Cir. 2007) ("Many courts of appeals have endorsed the view that '[e]vidence of only a small number of instances of actual confusion can be dismissed as inconsequential or *de minimis*.'" (quoting 4 McCarthy on Trademarks and Unfair Competition § 23:14 (4th ed. 2007)); *Checkpoint Sys.*, 269 F.3d at 298-99 (affirming District Court finding of no Lanham Act violation in part because evidence of "limited initial interest confusion (i.e., the handful of e-mails and other anecdotal evidence of mistaken consumer inquiries) was de minimis when viewed in light of the length of time the parties operated together in the United States without significant evidence of confusion.").

"Absent proof of 'actual harm' such as lost sales or other financial damage, an injunction is an adequate remedy for trademark infringement." *Koninkijke Philips Elecs. N.V.*, 2016 WL 3545529, at *28 (granting summary judgment in favor

of alleged infringer on issue of damages).  As discussed above, America Can cannot present any proof of actual harm.

America Can knew of Kars 4 Kids' use of the KARS 4 KIDS Marks at least as early as August 2003, when it sent a cease and desist letter asserting its purported rights in its "Cars for Kids" designation in Texas.  America Can also knew that Kars 4 Kids was continuing to advertise in Texas at least as early as 2007.  Yet America Can waited until 2013, a delay of 10 years, to assert any rights in its alleged mark outside of Texas.  Delays almost half as long as America Can's have been held unreasonable.  *Id.* at *28 (finding delay unreasonable where defendant was "asking for disgorgement of profits that accumulated during the six-year period" between when it learned of the alleged infringement and first asserted rights).

Where there is no demonstration of an intent to confuse or deceive, and no palming off, "the public interest may be served adequately . . . with injunctive relief."  *Id.*  As discussed above and below, America Can cannot demonstrate an intent to confuse or deceive, nor can it demonstrate palming off.

"Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's."  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003).  Kars 4 Kids has expended significant resources developing its brand and cultivating goodwill among the consumer public, as evidenced by the scope and volume of its advertising efforts

and the extensive secondary meaning it enjoys.  It is clear that Kars 4 Kids is not "palming off" its services as those of America Can.  Kars 4 Kids has a protocol in place specifically designed to avoid confusion with other entities, and advises potentially misinformed callers of the other organizations they may wish to contact instead.  Kars 4 Kids will present multiple examples of Kars 4 Kids correcting donors who contacted Kars 4 Kids by mistake.

## IV.   <u>Conclusion</u>

As discussed above, Kars 4 Kids will prove that it is the owner of the KARS 4 KIDS Marks, that they are legally protectable, and that America Can's use of the "Cars for Kids" designation creates a likelihood of confusion.  America Can will be unable to prove that it advertised using its "Cars for Kids" designation outside of Texas before Kars 4 Kids was advertising nationally with the KARS 4 KIDS Marks, that the "Cars for Kids" designation is legally protectable, or that America Can is entitled to a monetary award.  Kars 4 Kids also will prove that America Can acquiesced to Kars 4 Kids' use of the KARS 4 KIDS Marks outside of Texas and that the doctrine of laches bars America Can from asserting trademark rights against Kars 4 Kids.

Dated: April 18, 2019

By: *s/ Liza M. Walsh*

Liza M. Walsh
Marc D. Haefner
Eleonore Ofosu-Antwi
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, New Jersey 07102
(973) 757-1100


Peter D. Vogl
David Litterine-Kaufman
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019-6142
(212) 506-5000


*Attorneys for*
*KARS 4 KIDS INC.*