

**WALSH**
**PIZZI**
**O'REILLY**
**FALANGA**

One Riverfront Plaza

1037 Raymond Blvd, Suite 600
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Marc D. Haefner
Direct Dial: (973) 757-1013
mhaefner@walsh.law

April 18, 2019

**VIA ECF AND FEDERAL EXPRESS**
Honorable Peter G. Sheridan, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Bldg. & U.S. Courthouse
402 East State
Trenton, New Jersey 08608

> Re:   **Kars 4 Kids Inc. v. America Can!,**
> **Civil Action No. 14-cv-7770 (PGS)(LHG)**

Dear Judge Sheridan:

This firm, along with Orrick, Herrington & Sutcliffe LLP, represents Plaintiff Kars 4 Kids Inc. ("Kars 4 Kids") in the above-referenced matter. Pursuant to Your Honor's Order, dated April 10, 2019 at DE No. 185, attached please find the following:

- Kars 4 Kids' Statement of the Case, attached hereto as Exhibit A;

- Kars 4 Kids' proposed Verdict Form, attached hereto as Exhibit B;

- Kars 4 Kids' proposed *Voir Dire* Questions, attached hereto as Exhibit C; and

- Kars 4 Kids' proposed Jury Charge, attached hereto as Exhibit D.

We thank the Court for its continued attention to this matter. Should Your Honor or Your Honor's staff have any questions or need anything further, we are available.

Respectfully submitted,

Marc D. Haefner

cc:   All Counsel of Record (*via ECF and email*)

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARS 4 KIDS INC., | Civil Action No. |
| *Plaintiff,* | 3:14-cv-7770 (PGS)(LHG) |
| v. | |
| AMERICA CAN!, | |
| *Defendant.* | |
| | |
| AMERICA CAN! CARS FOR KIDS, | Civil Action No. |
| *Plaintiff,* | 3:16-cv-4232 (PGS)(LHG) |
| v. | |
| KARS 4 KIDS, INC., | |
| *Defendant.* | |

## KARS 4 KIDS INC.'S PROPOSED STATEMENT OF THE CASE

Kars 4 Kids, Inc. respectfully submits the following proposed Statement of the Case:

## PROPOSAL

During the parties' Opening Statements and the course of the trial, you will hear more about the parties and their claims, but the Court would like to provide you with a brief overview of this case.  It is a trademark infringement, trademark dilution and unfair competition case.  A trademark is a term that signifies to the consumer the source of a product or the source of services.  A trademark owner

may exclude others from using its trademark or words that are so similar to its trademark that those marks are likely to cause confusion in the marketplace, or dilute the distinctiveness of the owner's trademark.  When a trademark is offered in the context of services, as is the case here, it is also referred to as a service mark.

The parties have asserted claims in two different actions against one another relating to their alleged trademarks.  That is, each party is a plaintiff in their own case against the other and each party is a defendant in the other's case.  Kars 4 Kids, spelled "K-A-R-S-4-K-I-D-S," was the plaintiff in one action and the defendant in the other action, and America Can! Cars for Kids, spelled "C-A-R-S-F-O-R-K-I-D-S," was the plaintiff in one action and the defendant in the other action.  These two respective actions have been combined into one for purposes of trial and so you will be deciding each party's claims against the other.  As you will hear Kars 4 Kids asserts trademark rights in the term "KARS 4 KIDS" – spelled with a "K" and a number 4, and in "1-877-KARS-4-KIDS."  America Can! Cars for Kids asserts trademark rights in the term "CARS FOR KIDS" spelled with a "C".  Each party also asserts various defenses to the claims against them.

Each organization, as part of its fundraising activities, solicits and receives used automobile donations, and resells those vehicles as part of its fundraising activities.  Kars 4 Kids, Inc. alleges that it uses the revenue generated from those donations to fund educational, developmental, and recreational programs for

Jewish youth and their families.  America Can! Cars for Kids alleges that it uses

the funds it receives to create and support educational programs for at risk youth,

funding charter schools at the high school level in order to help those children

obtain a high school diploma and to give them the tools needed to achieve

economic independence.

The purpose of this trial is to resolve whether one party or the other has a

superior right to use the marks in question, and, if so, whether the use of marks by

the party with inferior rights has caused harm to the other party.

Dated: April 18, 2019                By: *s/ Liza M. Walsh*
                                     Liza M. Walsh
                                     Marc D. Haefner
                                     Eleonore Ofosu-Antwi
                                     WALSH PIZZI O'REILLY FALANGA
                                     LLP
                                     One Riverfront Plaza
                                     1037 Raymond Blvd., Suite 600
                                     Newark, New Jersey 07102
                                     (973) 757-1100


                                     Peter D. Vogl
                                     David Litterine-Kaufman
                                     ORRICK, HERRINGTON &
                                     SUTCLIFFE LLP
                                     51 West 52nd Street
                                     New York, New York 10019-6142
                                     (212) 506-5000


                                     *Attorneys for*
                                     *KARS 4 KIDS INC.*

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KARS 4 KIDS INC., | : | Civil Action No. 3:14-cv-7770 |
|       Plaintiff, | : | (PGS/LHG) |
| | : | |
| v. | : | |
| | : | |
| AMERICA CAN!, | : | |
|       Defendant. | : | |
| | : | |
| AMERICA CAN! CARS FOR KIDS, | : | Civil Action No. 3:16-cv-4232 |
|       Plaintiff, | : | (PGS/LHG) |
| | : | |
| v. | : | |
| | : | |
| KARS 4 KIDS, INC., | : | |
|       Defendant. | : | |

## KARS 4 KIDS INC.'S PROPOSED VERDICT FORM

Kars 4 Kids Inc. respectfully submits the following Proposed Verdict Form to be presented to the jury.

## SECTION I

## Kars 4 Kids' Trademark Infringement, Dilution, and Unfair Competition Claims

1.     **Has Kars 4 Kids established by a preponderance of the evidence that it owns the exclusive rights to use KARS 4 KIDS in the United States?**

Yes _____          No_____

*If you answered "Yes" to Question 1, proceed to Question 2.*

*If you answered "No" to Question 1, proceed to Question 8.*

2.     **Is there any geographic market in the United States where Kars 4 Kids does not have an exclusive right to use KARS 4 KIDS?**

Yes _____          No_____

*If you answered "Yes" to Question 2, proceed to Question 2(a).*

*If you answered "No" to Question 2, proceed to Question 3.*

> **2(a).  If you answered "Yes" to Question 2, please identify this geographic market below:**
>
>
> *Proceed to Question 2(b).*
>
> **2(b).  If you identified a geographic market in Question 2(a), has America Can! Cars for Kids proven by a preponderance of the evidence that CARS FOR KIDS is valid and legally protectable and that it owns the exclusive rights to use CARS FOR KIDS in the geographic market you identified in Question 2(a)?**
>
> Yes _____          No_____
>
> *Proceed to Question 3.*

2

3. **Has Kars 4 Kids established by a preponderance of the evidence that America Can! Cars for Kids' use of CARS OF KIDS creates a likelihood of confusion with the mark KARS 4 KIDS?**

   Yes _____            No_____

   *If you answered "Yes" to Question 3, proceed to Question 4.*

   *If you answered "No" to Question 3, proceed to Question 5.*

4. **Has Kars 4 Kids established by a preponderance of the evidence that America Can! Cars for Kids, in using CARS FOR KIDS, willfully used a mark confusingly similar to the mark KARS 4 KIDS?**

   Yes _____            No_____

   *Proceed to Question 5.*

5. **Has Kars 4 Kids established by a preponderance of the evidence that its KARS 4 KIDS mark is famous?**

   Yes _____            No_____

   *If you answered "Yes" to Question 5, proceed to Question 6.*

   *If you answered "No" to Question 5, proceed to Question 8.*

6. **Has Kars 4 Kids established by a preponderance of the evidence that America Can! Cars for Kids' use of CARS FOR KIDS dilutes the distinctive quality of the KARS 4 KIDS mark by diminishing the capacity of the mark to be identified with only one source?**

   Yes _____            No_____

   *If you answer "Yes" to Question 6, proceed to Question 7.*

   *If you answer "No" to Question 6, proceed to Question 8.*

3

7. **Has Kars 4 Kids established by a preponderance of the evidence that America Can! Cars for Kids, in using CARS FOR KIDS, willfully traded on Kars 4 Kids' reputation or willfully diluted the KARS 4 KIDS mark?**

   Yes _____            No_____

   *Proceed to Question 8.*

8. **Has Kars 4 Kids established by a preponderance of the evidence that it owns the exclusive rights to use 1-877-KARS-4-KIDS in the United States?**

   Yes _____            No_____

   *If you answered "Yes" to Question 8, proceed to Question 9.*

   *If you answered "No" to Question 8, proceed to the instruction at the end of Section I.*

9. **Is there any geographic market in the United States where Kars 4 Kids does not have an exclusive right to use 1-877-KARS-4-KIDS?**

   Yes _____            No_____

   *If you answered "Yes" to Question 9, proceed to Question 9(a).*

   *If you answered "No" to Question 9, proceed to Question 10.*

   > **9(a).  If you answered "Yes" to Question 9, please identify this geographic market below:**
   >
   > *Proceed to Question 9(b).*
   >
   > **9(b).  If you identified a geographic market in Question 9(a), has America Can! Cars for Kids proven by a preponderance of the evidence that CARS FOR KIDS is valid and legally protectable**

**and that it owns the exclusive rights to use CARS FOR KIDS in the geographic market you identified in Question 9(a)?**

Yes ـــــــ          No ـــــــ

*Proceed to Question 10.*

10.  **Has Kars 4 Kids established by a preponderance of the evidence that America Can! Cars for Kids' use of CARS OF KIDS creates a likelihood of confusion with the mark 1-877-KARS-4-KIDS?**

Yes ـــــــ          No ـــــــ

*If you answered "Yes" to Question 10, proceed to Question 11.*

*If you answered "No" to Question 10, proceed to Question 12.*

11.  **Has Kars 4 Kids established by a preponderance of the evidence that America Can! Cars for Kids, in using CARS FOR KIDS, willfully used a mark confusingly similar to the mark 1-877-KARS-4-KIDS?**

Yes ـــــــ          No ـــــــ

*Proceed to Question 12.*

12.  **Has Kars 4 Kids established by a preponderance of the evidence that its 1-877-KARS-4-KIDS mark is famous?**

Yes ـــــــ          No ـــــــ

*If you answered "Yes" to Question 12, proceed to Question 13.*

*If you answered "No" to Question 12, proceed to the instruction at the end of Section I.*

5

13.   **Has Kars 4 Kids established by a preponderance of the evidence that America Can! Cars for Kids' use of CARS FOR KIDS dilutes the distinctive quality of the 1-877-KARS-4-KIDS mark by diminishing the capacity of the mark to be identified with only one source?**

Yes _____            No_____

*If you answered "Yes" to Question 13, proceed to Question 14.*

*If you answered "No" to Question 13, proceed to the instruction at the end of Section I.*

14.   **Has Kars 4 Kids established by a preponderance of the evidence that America Can! Cars for Kids, in using CARS FOR KIDS, willfully traded on Kars 4 Kids' reputation or willfully diluted the 1-877-KARS-4-KIDS mark?**

Yes _____            No_____

**END OF SECTION I**

*IF YOU ANSWERED "YES" TO QUESTIONS 1, 7, 8, OR 14, PROCEED TO SECTION IV.  OTHERWISE, PROCEED TO SECTION II.*

## SECTION II

## America Can's Trademark Infringement, Dilution, and Unfair Competition Claims

15. **Has America Can! Cars for Kids established by a preponderance of the evidence that it owns the exclusive rights to use CARS FOR KIDS in the United States?**

    Yes _____          No_____

    *If you answered "Yes" to Question 15, proceed to Question 16.*

    *If you answered "No" to Question 15, proceed to Section IV.*

16. **Is there any geographic market in the United States where America Can! Cars for Kids does not have an exclusive right to use CARS FOR KIDS?**

    Yes _____          No_____

    *If you answered "Yes" to Question 16, proceed to Question 16(a).*

    *If you answered "No" to Question 16, proceed to Question 17.*

    > **16(a).  If you answered "Yes" to Question 16, please identify this geographic market below:**
    >
    >
    > *Proceed to Question 16(b).*
    >
    > **16(b).  If you identified a geographic market in Question 16(a), has Kars 4 Kids proven by a preponderance of the evidence that either or both of KARS FOR KIDS and 1-877-KARS-4-KIDS is/are valid and legally protectable and that it owns the exclusive rights to use either or both of KARS FOR KIDS and 1-877-**

7

KARS-4-KIDS in the geographic market you identified in Question 16(a)?

Yes _____          No_____

*Proceed to Question 17.*

17.   **Has America Can! Cars for Kids established by a preponderance of the evidence that Kars 4 Kids' use of KARS 4 KIDS and/or 1-877-KARS-4-KIDS creates a likelihood of confusion with the mark CARS FOR KIDS?**

Yes _____          No_____

*If you answered "Yes" to Question 17, proceed to Question 18.*

*If you answered "No" to Question 17, proceed to Question 19.*

18.   **Has America Can! Cars for Kids established by a preponderance of the evidence that Kars 4 Kids, in using KARS 4 KIDS and/or 1-877-KARS-4-KIDS, willfully used a mark confusingly similar to the mark CARS FOR KIDS?**

Yes _____          No_____

*Proceed to Question 19.*

19.   **Has America Can! Cars for Kids established by a preponderance of the evidence that its CARS FOR KIDS mark is famous?**

Yes _____          No_____

*If you answered "Yes" to Question 19, proceed to Question 20.*

*If you answered "No" to Question 19, proceed to the instruction at the end of Section II.*

20.   **Has America Can! Cars for Kids established by a preponderance of the evidence that Kars 4 Kids' use of KARS 4 KIDS and/or 1-877-KARS-4-**

**KIDS dilutes the distinctive quality of the CARS FOR KIDS mark by diminishing the capacity of the mark to be identified with only one source?**

Yes _____            No_____

*If you answered "Yes" to Question 20, proceed to Question 21.*

*If you answered "No" to Question 20, proceed to the instruction at the end of Section II.*

21.    **Has America Can! Cars for Kids established by a preponderance of the evidence that Kars 4 Kids, in using KARS 4 KIDS and/or 1-877-KARS-4-KIDS, willfully traded on America Can! Cars for Kids' reputation or willfully diluted the CARS FOR KIDS mark?**

Yes _____            No_____

## END OF SECTION II

*IF YOU ANSWERED "YES" TO EITHER QUESTIONS 17 or 21, PROCEED TO SECTION III.  OTHERWISE, PROCEED TO SECTION IV.*

## SECTION III

## Damages Claim:  Corrective Advertising

22.   **Has America Can! Cars for Kids proven by a preponderance of the evidence that an advertising campaign is necessary to eliminate or undo any confusion that has resulted or will result in the marketplace as a result of the Kars 4 Kids' use of KARS 4 KIDS and/or 1-877-KARS-4-KIDS?**

Yes _____          No_____

*If you answered "Yes" to Question 22, then proceed to Question 23.*

*If you answered "No" to Question 22, then proceed to Section IV.*

23.   **State the dollar amount that fairness requires you award to America Can! Cars for Kids to compensate for the cost of any such advertising campaign:**


_____

*Proceed to Section IV.*

10

## <u>SECTION IV</u>

### <u>America Can! Cars for Kids' Claim for Cancellation of 1-877-KARS-4-KIDS</u>

**24.    Has America Can! Cars for Kids shown by clear and convincing evidence that Kars 4 Kids knowingly made false or fraudulent representations to the United States Patent and Trademark Office in connection with its application to register 1-877-KARS-4-KIDS, and that the United States Patent and Trademark Office relied on those false or fraudulent representations in registering 1-877-KARS-4-KIDS?**

Yes _____          No_____

**SIGN AND DATE THE VERDICT:**

SO SAY WE ALL, this _____ day of _____, 2019.

_____
(Print Jury Foreperson's Name)

_____
(Jury Foreperson's Signature)

11

Dated: April 18, 2019           By: *s/ Liza M. Walsh*
                                      Liza M. Walsh
                                      Marc D. Haefner
                                      Eleonore Ofosu-Antwi
                                      WALSH PIZZI O'REILLY FALANGA LLP
                                      One Riverfront Plaza
                                      1037 Raymond Blvd., Suite 600
                                      Newark, New Jersey 07102
                                      (973) 757-1100

                                      Peter D. Vogl
                                      David Litterine-Kaufman
                                      ORRICK, HERRINGTON & SUTCLIFFE LLP
                                      51 West 52nd Street
                                      New York, New York 10019-6142
                                      (212) 506-5000

                                      *Attorneys for*
                                      *KARS 4 KIDS INC.*

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KARS 4 KIDS INC., | Civil Action No. 3:14-cv-7770 (PGS/LHG) |
|      Plaintiff, | |
| v. | |
| AMERICA CAN!, | |
|      Defendant. | |
| AMERICA CAN! CARS FOR KIDS, | Civil Action No. 3:16-cv-4232 (PGS/LHG) |
|      Plaintiff, | |
| v. | |
| KARS 4 KIDS, INC., | |
|      Defendant. | |

## KARS 4 KIDS INC.'S PROPOSED *VOIR DIRE*

Kars 4 Kids Inc. respectfully submits the following Proposed *Voir Dire* to be posed to the jury panel in addition to the Court's sample Jury *Voir Dire* Questions.

**<u>Group</u>**

- How many of you have any experience or training in any of the following?:

  – Advertising/Marketing

  – PR/Public Relations

  – Trademarks/Patents/Copyrights

  – Charity work

  – Law

  – Automobiles

    ○ If yes to any of these, what is your experience/training?

- How many of you have ever served in the military?

    ○ If so, what branch/rank?

- How many of you are active in any charities?

    ○ What charities and what is your involvement?

- Have you ever made a donation to an organization?

    ○ How did you or how do you typically decide where to donate?

- How many of you have ever donated a car?

    ○ Where did you donate the car?

    ○ How did you decide to donate to that particular charity?

- How many of you have ever worked for, or known anyone else who has ever worked for a charity that accepts cars for donations?

2

- ○ Who?

- ○ Where?

- ○ When?

- ○ What did you/they do?

- Have you ever made a donation to an organization that you later determined not to be what you thought?

  - ○ What happened?

  - ○ Did you do anything about it? What?

- How many of you have felt that someone or something in particular has gotten in the way of your potential and your success?

- Have you, a family member, or a close friend ever worked at a company that was involved in a trademark dispute?

  - ○ How so?

  - ○ If so, were you personally involved in this dispute in any way as a result of your job or role at this company?

- In a dispute between two organizations both alleging wrongdoing, how many of you would tend to believe/favor the smaller of those two organizations?

- How many of you have negative views or perceptions of members of the Orthodox Jewish faith/community?

  - ○ [Jurors who raise a hand should be heard at sidebar]

3

- How many of you listen to any of the following on the radio?

  o Frank, Starlene & Hudson in the Morning

  o Afternoons with Bonnie Curry

  o 94.9 KLTY

**<u>Parties</u>**

- How many of you are familiar with Kars 4 Kids?

  o How are you familiar?

  o Any negative impressions or experiences with Kars 4 Kids?

- How many of you are familiar with America Can!?

  o How are you familiar?

  o Any negative impressions or experiences with America Can!?

- How many of you have had any familiarity or dealings with any of the following lawyers, law firms, or potential witnesses in this case?

  o Orrick, Herrington & Sutcliffe LLP

  o Peter D. Vogl

  o David Litterine-Kaufman

  o Briggs M. Wright

  o Walsh Pizzi O'Reilly Falanga LLP

  o Liza M. Walsh

4

- ○ Marc D. Haefner

- ○ Eleonore Ofosu-Antwi

- ○ Fox Rothschild LLP

- ○ Karen A. Confoy

- ○ Nancy E. Halpern

- ○ Christopher R. Kinkade

- ○ Allison L. Hollows

- ○ The Pittman Law Firm P.C.

- ○ Aubrey D. ("Nick") Pittman

- ○ J. Manuel Torres-Rodriguez JD, CPA

- ○ J. Manuel Torres-Rodriguez

- ○ Yanaros Law, P.C.

- ○ Valerie Yanaros Wilde

- ○ Rabbi Eliyohu Mintz

- ○ Esti Landau

- ○ Robert Moskovits

- ○ Malcolm Wentworth

- ○ Richard Marquez

- ○ Cheryl R. Poldrugach

- ○ Frank Reed

5

- ○ Bonnie Curry

- ○ Malka Keller

- ○ David A. Hall

- ○ Dr. Alex Simonson

- ○ Bryce R. Cook

- ○ Melissa Pittaoulis

- ○ [For any who have raised hands, what is your relationship/familiarity with that entity/person?]

## **Litigation**

- Have you, a family member or anyone close to you ever been involved in a lawsuit (including as a witness at trial or a witness at a deposition)?

  - ○ If so, when?

  - ○ Please describe the nature of the lawsuit.

  - ○ Did you consider the outcome of the lawsuit satisfactory?

- Have any of you served as a foreperson on a jury?

## **Ability to Serve**

- The trial is expected to last five to seven days. Can you serve as a juror for this period of time?

  - ○ If no, please explain your reasons.

6

- Is there anything else you think the Court and parties in this dispute should know about you that would affect your ability to be a fair and impartial juror in this case?

Dated: April 18, 2019

By: *s/ Liza M. Walsh*
Liza M. Walsh
Marc D. Haefner
Eleonore Ofosu-Antwi
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, New Jersey 07102
(973) 757-1100

Peter D. Vogl
David Litterine-Kaufman
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019-6142
(212) 506-5000

*Attorneys for*
*KARS 4 KIDS INC.*

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| KARS 4 KIDS INC., | : | Civil Action No. 3:14-cv-7770 (PGS/LHG) |
|      Plaintiff, | : | |
| v. | : | |
| AMERICA CAN!, | : | |
|      Defendant. | : | |
| AMERICA CAN! CARS FOR KIDS, | : | Civil Action No. 3:16-cv-4232 (PGS/LHG) |
|      Plaintiff, | : | |
| v. | : | |
| KARS 4 KIDS, INC., | : | |
|      Defendant. | : | |

## <u>KARS 4 KIDS INC.'S PROPOSED JURY CHARGE</u>

Kars 4 Kids Inc. respectfully submits the following Proposed Jury Charge to be presented to the jury:

## JURY CHARGE

## PRELIMINARY INSTRUCTIONS FOR USE AT COMMENCEMENT OF TRIAL AND/OR AT END OF TRIAL

## INSTRUCTION NO. 1

### Introduction; Role of Jury[1]

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

---

[1] Model Civ. Jury Instr. 3d Cir. 1.1 (Comm. on Model Civ. Jury Instr. 3d Cir. 2017).

2

# INSTRUCTION NO. 2

## Description of Case; Summary of Applicable Law[2]

During the parties' Opening Statements and the course of the trial, you will hear more about the parties and their claims, but the Court would like to provide you with a brief overview of this case.  It is a trademark infringement, trademark dilution and unfair competition case.  A trademark is a term that signifies to the consumer the source of a product or the source of services.  A trademark owner may exclude others from using its trademark or words that are so similar to its trademark that those marks are likely to cause confusion in the marketplace, or dilute the distinctiveness of the owner's trademark.  When a trademark is offered in the context of services, as is the case here, it is also referred to as a service mark.

The parties have asserted claims in two different actions against one another relating to their alleged trademarks.  That is, each party is a plaintiff in their own case against the other and each party is a defendant in the other's case.  Kars 4 Kids, spelled "K-A-R-S-4-K-I-D-S," is the plaintiff in one action and the defendant in the other action, and America Can! Cars for Kids, spelled "C-A-R-S-F-O-R-K-I-D-S," is the plaintiff in one action and the defendant in the other action.  These two respective actions have been combined into one for purposes of trial and so you

---

[2] Model Civ. Jury Instr. 3d Cir. 1.2; *see* 15 U.S.C. §§ 1114 and 1125; *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983); *Green v. Fornario*, 486 F.3d 100, 105 (3d Cir. 2007).

3

will be deciding each party's claims against the other.  As you will hear Kars 4 Kids asserts trademark rights in the term "KARS 4 KIDS" – spelled with a "K" and a number 4, and in "1-877-KARS-4-KIDS."  America Can! Cars for Kids asserts trademark rights in the term "CARS FOR KIDS" spelled with a "C".  Each party also asserts various defenses to the claims against them.

Each organization, as part of its fundraising activities, solicits and receives used automobile donations, and resells those vehicles as part of its fundraising activities.  Kars 4 Kids, Inc. alleges that it uses the revenue generated from those donations to fund educational, developmental, and recreational programs for Jewish youth and their families.  America Can! Cars for Kids alleges that it uses the funds it receives to create and support educational programs for at risk youth, funding charter schools at the high school level in order to help those children obtain a high school diploma and to give them the tools needed to achieve economic independence.

The purpose of this trial is to resolve whether one party or the other has a superior right to use the marks in question, and, if so, whether the use of marks by the party with inferior rights has caused harm to the other party.

# INSTRUCTION NO. 3

### Conduct of the Jury[3]

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves. If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly. There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence. I know that many of you use cell phones, smart phones [like Blackberries and iPhones], and other portable electronic devices; laptops, netbooks, and other computers both portable and fixed; and other tools of technology, to access the internet and to communicate with others. You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate orally with anyone about the case on your cell phone, smart phone, or portable or fixed computer or device of any kind; or use these devices to communicate electronically by messages or postings of any kind including e-mail, instant messages, text messages, text or instant messaging services [such as Twitter], or through any blog, website, internet chat room, or by

---

[3] Model Civ. Jury Instr. 3d Cir. 1.3.

5

way of any other social networking websites or services [including Facebook, MySpace, LinkedIn, and YouTube].

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either.  [That is why you are asked to wear your juror tags.  It shows that you are someone who is not to be approached in any way.]

Second, do not read or listen to anything related to this case that is not admitted into evidence.  By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report.  In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case.  Do not do any research on the internet, for example.  You are to decide the case upon the evidence presented at trial.  In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case.  Please do not try to find out information from any source outside the confines of this courtroom.

Again, do not reach any conclusion on the claims until all of the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

[Finally, if any member of the jury has a friend or family member who is in attendance at this public trial, that visitor must first register with my Clerk because special rules will govern their attendance.  You may not discuss any aspect of this trial with the visitor, nor may you permit the visitor to discuss it with you.]

## INSTRUCTION NO. 4

### Bench Conferences[4]

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference. If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. While we meet, I will invite you to stand up and stretch and take a short break or perhaps even call a recess if it is a lengthy issue.

I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

---

[4] Model Civ. Jury Instr. 3d Cir. 1.4.

# INSTRUCTION NO. 5

## Evidence[5]

The evidence from which you are to find the facts consists of the following:

1. The testimony of the witnesses;

2. Documents and other things received as exhibits;

3. Any facts that are stipulated--that is, formally agreed to by the parties; and

4. Any facts that are judicially noticed--that is, facts I say you must accept as true even without other evidence.

The following things are not evidence:

1. Statements, arguments, and questions of the lawyers for the parties in this case;

2. Objections by lawyers.

3. Any testimony I tell you to disregard; and

4. Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court.  Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in

---

[5] Model Civ. Jury Instr. 3d Cir. 1.5.

light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded.   Do not speculate about what a witness might have said or what an exhibit might have shown.

# INSTRUCTION NO. 6

## Credibility of Witnesses[6]

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2) the quality of the witness's understanding and memory;

(3) the witness's manner while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

---

[6] Model Civ. Jury Instr. 3d Cir. 1.7.

11

[The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.]

## INSTRUCTION NO. 7

### Note Taking by Jurors[7]

If you wish, you may take notes during the presentation of evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law. My Courtroom deputy will arrange for pens, pencils, and paper. Remember that your notes are for your own personal use -- they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial. But you should not assume that the transcripts will be available for your review during your deliberations. Nor should you consider notes that you or fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberations. Here are some other specific points to keep in mind about note taking:

1.      Note-taking is permitted, not required. Each of you may take notes. No one is required to take notes.

2.      Be brief. Do not try to summarize all of the testimony. Notes are for the purpose of refreshing memory. They are particularly helpful when dealing with measurements, times, distances, identities, and relationships. Overuse of

_____

[7] Model Civ. Jury Instr. 3d Cir. 1.9.

note-taking may be distracting.   You must determine the credibility of witnesses; so you must observe the demeanor and appearance of each person on the witness stand.  Note-taking must not distract you from that task.  If you wish to make a note, you need not sacrifice the opportunity to make important observations.  You may make your note after having made an observation.

3.      <u>Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors</u>.  In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes. As I mentioned earlier, your notes are not official transcripts.  They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial.  They are valuable, if at all, only as a way to refresh your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.  You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial. Notes are not to be used in place of the evidence.

4.      <u>Do not take your notes away from court</u>.  I repeat, at the end of each day, please leave your notes in the jury room. [Describe logistics of storing and securing notes, for example: "If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. At the conclusion of the case, after you have used

your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations."]

## INSTRUCTION NO. 8

### Preponderance of the Evidence[8]

This is a civil case. Each party is a plaintiff with respect to the claims that they brought in this lawsuit. Each party is a defendant with respect to the claims asserted against it. With the exception of one of America Can's claims that I will get to in a moment, each party has the burden of proving its case by what is called the preponderance of the evidence.  That means the party has to prove to you, in light of all the evidence, that what it claims is more likely so than not so.  To say it differently: if you were to put the evidence favorable to one party and the evidence favorable to the other party on opposite sides of the scales, the party asserting the claim would have to make the scales tip somewhat on its side.  If the party asserting a claim fails to meet this burden with respect to its claim, the verdict must be for the other party. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

---

[8] Model Civ. Jury Instr. 3d Cir. 1.10.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

**INSTRUCTION NO. 9**

Clear and Convincing Evidence[9]

America Can has the burden of proving by clear and convincing evidence its claim that Kars 4 Kids fraudulently obtained a trademark registration with the United States Patent and Trademark Office for 1-877-KARS-4-KIDS.  Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true. Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard. But it does not require proof beyond a reasonable doubt, the standard applied in criminal cases.

---

[9] Model Civ. Jury Instr. 3d Cir. 1.11.

## INSTRUCTION NO. 10

Description of Trial Proceedings[10]

The trial will proceed in the following manner:

First, attorneys for Kars 4 Kids will make an opening statement to you. Next, attorney(s) for America Can may make an opening statement. What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.

After [Before] the attorneys have made their opening statements, [I will instruct you on the applicable law and] then each party is given an opportunity to present its evidence.

Kars 4 Kids goes first because its case against America Can was filed first and it has the burden of proof with respect to the claims in that case. Kars 4 Kids will present witnesses whom counsel for America Can will cross-examine, and Kars 4 Kids will also present evidence. Following Kars 4 Kids' case, America Can will present witnesses and evidence.   Counsel for Kars 4 Kids will cross-examine witnesses for America Can.  [After the parties' main case is presented, they may be permitted to present what is called rebuttal evidence.]

After all the evidence has been presented, [I will instruct you on the law and then] the attorneys will present to you closing arguments to summarize and

---

[10] Model Civ. Jury Instr. 3d. Cir. 1.12.

interpret the evidence in a way that is helpful to their clients' positions. As with opening statements, closing arguments are not evidence. [Once the closing arguments are completed, I will then instruct you on the law.]  After that you will retire to the jury room to deliberate on your verdict in this case.

[At this point the court may wish to inform the jury of the scheduling and length of the trial, and other logistical information.]

## INSTRUCTION NO. 11

Definition of a Trademark[11]

A trademark offered in connection with services is any word, name, symbol, device [, or any combination thereof,] used by a person to identify and distinguish such person's services from those of others and to indicate the source of the services [, even if that source is generally unknown].

---

[11] 9th Cir. Manual of Model Civ. Jury Instr. 15.1-2 (9th Cir. Jury Instr. Comm. 2017); *Presley's Estate v. Russen*, 513 F. Supp. 1339, 1362 (D.N.J. 1981) (defining trademark in context of services).

## INSTRUCTION NO. 12

Right to Exclusive Use[12]

A party acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer. Rights in a trademark are obtained only through commercial use of the mark in a public manner such as advertising.

Whether or not a company name is being used as a trademark can be determined only by careful scrutiny of the exact manner in which the term is being

---

[12] 9th Cir. Model Jury Instr. 15.1; *see Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 315 (3d Cir. 1999) (noting that to establish priority a mark must be used "in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as the adopter of the mark."); *Dille Family Tr. V. Nowlan Family Tr.*, 276 F. Supp. 3d 412, 428 (E.D. Pa. 2017) (applying Third Circuit criterion to service marks); *Presley's Estate v. Russen*, 513 F. Supp. 1339 1362 (D.N.J. 1981); 3 McCarthy on Trademarks and Unfair Competiton § 19.88 (5th ed.); *Three Rivers Confections, LLC v. Warman*, 660 F. App'x 103, 108 (3d Cir. 2016) (holding documentary evidence in form of business registration without evidence of contemporaneous advertising insufficient to establish priority); *Premier Dental Prod. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 853 (3d Cir. 1986) (holding that after assignment of mark, assignee "steps into the shoes of the assignor"); *Colonial Elec. & Plumbing Supply of Hammonton, LLC v. Colonial Elec. Supply, Ltd.*, 05-cv-5408, 2007 WL 4571105, at *5-*6 (D.N.J. Dec. 27, 2007) (holding that when a business is conveyed, its trade name and goodwill are also conveyed); 3 McCarthy on Trademarks and Unfair Competition § 18:4 (5th ed.) (noting that conveyance of rights in trademark does not require written assignment); 3 McCarthy on Trademarks and Unfair Competition § 19:88 (5th ed.) (noting importance of advertising in context of determining whether designation used in connection with services constitutes use as a trademark).

used by the company in its advertising.  This is particularly the case in the context of services.

Merely registering to do business under a particular trade name, without evidence of contemporary advertising, is insufficient to establish priority of use.

A party can acquire rights in a trademark, and the right to exclude others from using a mark that is likely to cause confusion, via an assignment from a prior user.  When a trademark is assigned, the assignee steps into the shoes of the assignor, and can claim first use of the trademark dating back to the first use of the assignor.  An assignment need not be formal or reduced to writing to be valid.

After the owner of a trademark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office. Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion in the marketplace in connection with the type of goods specified in the certificate. These presumptions in favor of the owner created by the certificate of registration can be overcome or rebutted only by certain types of evidence that I will describe to you later as appropriate.

23

## INSTRUCTION NO. 13

### Geographic Nature of Trademark Rights[13]

Trademark rights are obtained in the geographic area in which the mark is used.  A party that only uses its trademark in Alabama cannot exclude another party from using that trademark in Alaska.  A party must show priority of use in each market in which it asserts trademark rights.  When two parties dispute priority of use in a geographic area, the party who first used it in that geographic area has priority.  This is true even if the other party was the first to use the trademark in a different geographic area, and thus has priority in that geographic area.  If you cannot determine who has use in a disputed geographic area, you should also consider the following in order to determine who has superior rights to the mark in that geographic area:

    1.  The volume of sales of each party in the geographic area;

---

[13] *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 315 (3d Cir. 1999) (noting that to establish priority a mark must be used "in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as the adopter of the mark."); *Horizon Healthcare Servs., Inc. v. Allied Nat., Inc.*, No. 03-cv-4908, 2006 WL 34277 at *12 (granting summary judgment to plaintiff on issue of priority); *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1394, 1398-99 (3d Cir. 1985) (establishing factors to consider in determining who has superior rights in a disputed geographic area); *Three Rivers Confections, LLC v. Warman*, 660 F. App'x 103, 108 (3d Cir. 2016) (noting that where there is no evidence of advertising in an area, the full four factor analysis need not be undertaken).

2.  The growth trends (both positive and negative) of each party in the area;

3.  The number of persons purchasing each party's services in relation to the potential number of customers (i.e., market share); and

4.  The amount of each party's advertising in the area.

For the first factor, if one party has a higher volume of sales in an area, that factor weighs in favor of that party's having a claim to superior rights in the mark in that area.

For the second factor, if one party has more positive growth trends in an area, that factor weighs in favor of that party's having a claim to superior rights in the mark in that area.

For the third factor, if one party has a superior market share in an area, that factor weighs in favor of that party's having a claim to superior rights in the mark in that area.

For the fourth factor, if one party has a greater amount of advertising in an area, that factor weighs in favor of that party's having a claim to superior rights in the mark in that area.  If a party has no evidence of advertising in that area, the other three factors need not be considered.

## INSTRUCTION NO. 14

### Trademark Infringement[14]

Each party has brought a claim for trademark infringement under federal law.

On its claim for trademark infringement, Kars 4 Kids has the burden of proving each of the following elements by a preponderance of the evidence:

1. Either or both of KARS 4 KIDS and 1-877-KARS-4-KIDS (where "KARS" is spelled "K-A-R-S" and "4" is the numeral 4) are valid, protectable trademarks;

2. Kars 4 Kids owns either or both of KARS 4 KIDS and 1-877-KARS-4-KIDS as a trademark; and

3. America Can used CARS FOR KIDS (where "CARS" is spelled "C-A-R-S" and "FOR" is spelled "F-O-R") without the consent of Kars 4 Kids in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the services.

If you find by a preponderance of the evidence that each of the elements on which Kars 4 Kids has the burden of proof has been proved, your verdict should be for the Kars 4 Kids on its trademark infringement claim. If, on the other hand, Kars

---

[14] 9th Cir. Model Jury Instr. 15.6; *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708-09 (3d Cir. 2004) (must show likelihood of confusion for trademark infringement claim).

4 Kids has failed to prove any of these elements, your verdict should be for America Can on Kars 4 Kids' trademark infringement claim.

On its claim for trademark infringement, America Can has the burden of proving each of the following elements by a preponderance of the evidence:

1. CARS FOR KIDS is a valid, protectable trademark;

2. America Can owns CARS FOR KIDS as a trademark; and

3. Kars 4 Kids used KARS 4 KIDS and 1-877-KARS-4-KIDS without the consent of America Can in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the services.

If you find that each of the elements on which America Can has the burden of proof has been proved, your verdict should be for America Can on its trademark infringement claim. If, on the other hand, America Can has failed to prove any of these elements, your verdict should be for Kars 4 Kids on America Can's trademark infringement claim.

I will now instruct you further regarding the elements of trademark infringement.

## INSTRUCTION NO. 15

### Infringement – Elements – Presumed Validity and Ownership – Registered Trademark[15]

I gave you Instruction number [14] that requires the party asserting a claim of trademark infringement to prove by a preponderance of the evidence that the trademark is valid and protectable and that the party owns the trademark. A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods or services and distinguishes those goods and services from those of others. A trademark becomes protectable after it is used in commerce.

One way for a party asserting trademark rights to prove trademark validity is to show that the trademark is registered, since a trademark registration constitutes evidence of validity of the registered mark and of ownership of the mark by the registrant.  An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

---

[15] 9th Cir. Model Jury Instr. 15.8.  *See* 15 U.S.C. § 1115(a); *Matal v. Tam*, 137 S. Ct. 1744, 1753 (2017) ("Federal registration . . . is prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate.").

28

Exhibit PX-129 is a certificate of registration from the United States Patent and Trademark Office.  It was submitted by Kars 4 Kids as proof of the validity of the trademark 1-877-KARS-4-KIDS and that Kars 4 Kids owns the trademark.

The facts recited in this certificate are Kars 4 Kids owns the mark 1-877-KARS-4-KIDS in connection with "charitable fundraising services by means of collecting and reselling used automobiles." However, the defendant alleges that the certificate cannot be considered proof of validity and ownership of the trademark both because it claims to have prior rights in its alleged CARS FOR KIDS mark and because it claims that Kars 4 Kids obtained the mark 1-877-KARS-4-KIDS through fraud.  I will discuss the law relating to those issues later in this charge.

## INSTRUCTION NO. 16

Infringement – Elements – Validity – Unregistered Marks[16]

Kars 4 Kids' alleged mark KARS 4 KIDS is not registered. America Can's alleged mark CARS FOR KIDS is also not registered.  Unregistered trademarks can be valid and provide the trademark owner with the exclusive right to use that mark. Instruction number [14] requires the party asserting trademark rights to prove by a preponderance of the evidence that its alleged trademark is valid. A valid trademark is a [word, name, symbol, device, or any combination of these items] that is either:

1. inherently distinctive; or

2. descriptive, but has acquired a secondary meaning.

Only a valid trademark can be infringed. Only if you determine that Kars 4 Kids proved by a preponderance of the evidence that KARS 4 KIDS is a valid trademark should you consider whether Kars 4 Kids owns it or whether America Can's actions infringed it.  Similarly, only if you determine that America Can proved by a preponderance of the evidence that CARS FOR KIDS is a valid trademark should you consider whether America Can owns it or whether Kars 4 Kids' actions infringed it.

---

[16] 9th Cir. Model Jury Instr. 15.9.  *See J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374-76 (D.N.J. 2002) (noting that party asserting mark must show it is inherently distinctive or have proof of secondary meaning).

Only if you determine that Kars 4 Kids' alleged mark KARS 4 KIDS is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning, as I will direct in Instruction number [18].  Similarly, only if you determine that America Can's alleged mark CARS FOR KIDS is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning, as I will direct in Instruction number [18].

## INSTRUCTION NO. 17

Infringement – Elements – Validity – Distinctiveness of a Mark[17]

Strength as a Likelihood of Confusion Factor

How strongly a trademark indicates that a service comes from a particular source, even if unknown, is an important factor to consider in assessing its validity and Instruction number [19] for determining whether the trademark used by the defendant creates for consumers a likelihood of confusion with the plaintiff's trademark.

Kars 4 Kids asserts KARS 4 KIDS and 1-877-KARS-4-KIDS are valid and protectable trademarks for its charitable fundraising services. Kars 4 Kids contends that America Can's use of CARS FOR KIDS in connection with America Can's charitable fundraising services infringes Kars 4 Kids' trademarks and is likely to cause confusion about the origin of services associated with those trademarks.

America Can asserts CARS FOR KIDS is a valid and protectable trademark for its charitable fundraising services. America Can contends that Kars 4 Kids' use of KARS 4 KIDS and 1-877-KARS-4-KIDS in connection with Kars 4 Kids' charitable fundraising services infringes America Can's trademark and is likely to cause confusion about the origin of services associated with that trademark.

---

[17] 9th Cir. Model Jury Instr. 15.10.  *See J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 375-76 (D.N.J. 2002) (describing spectrum of marks).

32

In order to determine if either party has met its burden of showing that its respective trademark is a valid trademark, you should classify it on the spectrum of trademark distinctiveness that I will explain in this instruction.

An inherently distinctive trademark is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a good or service in the market. The law assumes that an inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a good or service, and that consumers will be predisposed to equate the trademark with the source of a good or service.

Spectrum of Marks

Trademark law provides great protection to distinctive or strong trademarks. Conversely, trademarks that are not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses. Trademarks that are not distinctive are not entitled to any trademark protection. For deciding trademark protectability you must consider whether a trademark is inherently distinctive. Trademarks are grouped into four categories according to their relative strength. These four categories are, in order of strength or distinctiveness: arbitrary (which is inherently distinctive), suggestive (which also is inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning"

which I explain in Instruction number [18] and generic names (which are entitled to no protection).

**Arbitrary Trademarks.** The first category of "inherently distinctive" trademarks is arbitrary trademarks. They are considered strong marks and are clearly protectable. They involve the arbitrary, fanciful or fictitious use of a word to designate the source of a service. Such a trademark is a word that in no way describes or has any relevance to the particular service it is meant to identify. It may be a common word used in an unfamiliar way. It may be a newly created (coined) word or parts of common words which are applied in a fanciful, fictitious or unfamiliar way, solely as a trademark.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold. The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics. "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

**Suggestive Trademarks.** The next category is suggestive trademarks. These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks. Unlike arbitrary trademarks, which are in no way related to what the

service is, suggestive trademarks imply some characteristic or quality of the service to which they are attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but merely suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the service to which the word is attached. For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple–A–Day" Vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the benefits of taking "Apple–A–Day" Vitamins.

**Descriptive Trademarks.** The third category is descriptive trademarks. These trademarks directly identify or describe some aspect, characteristic, or quality of the service with which they are used in a straightforward way that requires no exercise of imagination to be understood.

For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a service comes from, or the name of the person who makes or sells the service. Thus, the words "Apple Valley Juice" affixed to cider from the California town of

Apple Valley is a descriptive trademark because it geographically describes where the cider comes from. Similarly, a descriptive trademark can be the personal name of the person who makes or sells the product. So, if a farmer in Apple Valley, Judy Brown, sold her cider under the label "Judy's Juice" (rather than CranApple) she is making a descriptive use of her personal name to indicate and describe who produced the apple cider and she is using her first name as a descriptive trademark.

**Generic Names**. The fourth category is entitled to no protection at all. They are called generic names and they refer to a general name of the service, as opposed to the plaintiff's brand for that service. Generic names are part of our common language that we need to identify all such similar services. A generic name is a name for the service on which it appears.

If the primary significance of the alleged mark is to name the type of service rather than the provider, the term is a generic name and cannot be a valid trademark. If the majority of consumers would understand the term to name the type of service rather than the provider, the primary significance of the term is generic and not entitled to protection as a trademark.

The word "apple" can be used as a generic name and not be entitled to any trademark protection. This occurs when the word is used to identify the fruit from an apple tree.

The computer maker who uses the word "apple" as a trademark to identify

its personal computer, or the vitamin maker who uses that word as a trademark on

vitamins, has no claim for trademark infringement against the grocer who used that

same word to indicate the fruit sold in a store. As used by the grocer, the word is

generic and does not indicate any particular source of the product. As applied to

the fruit, "apple" is simply a commonly used name for what is being sold.

Mark Distinctiveness and Validity

If you decide that a mark is arbitrary or suggestive, it is considered to be

inherently distinctive. An inherently distinctive trademark is valid and protectable.

If you find that Kars 4 Kids' alleged mark KARS 4 KIDS is arbitrary or

suggestive, the mark is valid and protectable.  If you find that Kars 4 Kids' alleged

mark 1-877-KARS-4-KIDS is arbitrary or suggestive, the mark is valid and

protectable.  If you find that America Can's alleged mark CARS FOR KIDS is

arbitrary or suggestive, the mark is valid and protectable.

On the other hand, if you determine that the mark is generic, it cannot be

distinctive and therefore is not valid nor protectable. If you find that either or both

of Kars 4 Kids' alleged marks KARS 4 KIDS or 1-877-KARS-4-KIDS is generic,

you must render a verdict for the America Can on Kars 4 Kids' charge of

infringement in Instruction number [14].  If you find that America Can's alleged

37

mark CARS FOR KIDS is generic, you must render a verdict for Kars 4 Kids on America Can's charge of infringement in Instruction number [14].

If you decide that a mark is descriptive, you will not know if that trademark is valid or invalid until you consider whether it has gained distinctiveness by the acquisition of secondary meaning, which I explain in Instruction number [18].

## INSTRUCTION NO. 18

Infringement – Elements – Validity – Distinctiveness – Secondary Meaning[18]

If you determined pursuant to Instruction number [17] that any of the alleged marks is descriptive, you must consider the recognition that the mark has among prospective consumers in order to determine whether it is valid and protectable even though it is descriptive.

This market recognition is called the trademark's "secondary meaning."

A word acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product or service itself, but the identification of the product or service with a single source, regardless of whether consumers know who or what that source is. For Kars 4 Kids' trademark infringement claims against America Can, you must find that the preponderance of the evidence shows that a significant number of the consuming public associates KARS 4 KIDS or 1-877-KARS-4-KIDS with a single source, in order to find that it has acquired secondary meaning.   For America Can's trademark infringement claims against Kars 4 Kids, you must find that the preponderance of the evidence shows that a significant number of the consuming

---

[18] 9th Cir. Model Jury Instr. 15.11.  *See Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432 (3d Cir. 2000) (enumerating Third Circuit's non-exclusive secondary meaning factors).

public associates CARS FOR KIDS with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether a mark has acquired a secondary meaning, you may consider the following factors:

(1) the extent of sales and advertising leading to consumer's associating the mark with the owner;

(2) length of use by the owner;

(3) exclusivity of use by the owner;

(4) the fact of copying by the party against whom rights in the mark are asserted;

(5) customer surveys showing that consumers associate the mark with the owner;

(6) customer testimony;

(7) the use of the mark in trade journals;

(8) the size of the company;

(9) the number of sales by the mark owner;

(10) the number of customers that the mark owner has; and,

(11) actual confusion among consumers.

The presence or absence of any particular factor should not necessarily resolve whether a mark has acquired secondary meaning, and this list is not intended to be exclusive.

Descriptive marks are protectable only to the extent you find they acquired distinctiveness through secondary meaning. Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark.

Kars 4 Kids has the burden of proving that its alleged marks KARS 4 KIDS and 1-877-KARS-4-KIDS have acquired a secondary meaning.  As I explained to you before, Kars 4 Kids' trademark registration for 1-877-KARS-4-KIDS serves as evidence of the validity of that mark.  America Can may challenge the presumption of validity by establishing by a preponderance of the evidence that the mark is not valid, or by establishing by clear and convincing evidence that the registration was obtained fraudulently.  I will discuss the law relating to those issues later in this charge.

America Can has the burden of proving that its alleged mark CARS FOR KIDS has acquired a secondary meaning.

The mere fact that a party is using a mark, or that one party began using its mark before the other party, does not mean that the trademark has acquired

secondary meaning. There is no particular length of time that a trademark must be used before it acquires a secondary meaning.

# INSTRUCTION NO. 19[19]

<u>Infringement – Likelihood of Confusion – Factors[20]</u>

For Kars 4 Kids' trademark infringement claims against America Can, you must decide whether America Can's use of CARS FOR KIDS is likely to cause consumer confusion as to the source or sponsorship of America Can's services. To prove likelihood of confusion, Kars 4 Kids must demonstrate that an appreciable number of consumers using ordinary care and prudence in making their purchasing decisions are likely to be misled or confused as to the source of America Can's services rendered in connection with CARS FOR KIDS. A "likelihood of confusion" means more than a mere possibility of confusion; it requires that you find that confusion is probable.

You must also decide, for America Can's trademark infringement claims against Kars 4 Kids, whether Kars 4 Kids' use of KARS 4 KIDS and 1-877-

---

[19] The parties agree that there is a likelihood of confusion with respect to the alleged marks.  *See* 14-cv-07770, D.E. 1 and 16.  Accordingly, Kars 4 Kids is prepared to enter a stipulation with America Can that there is a likelihood of confusion with respect to KARS 4 KIDS and 1-877-KARS-4-KIDS on the one hand, and CARS FOR KIDS on the other.  If the parties enter into this stipulation, Kars 4 Kids will propose a replacement for this instruction.

[20] 9th Cir. Model Jury Instr. 15.18.  *See Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983) (establishing Third Circuit's ten-factor test for likelihood of confusion); see also *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 470-71 (3d Cir. 2005) (endorsing the Third Circuit's Lapp factors); *800-JRCigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 285-86 (D.N.J. 2006) (endorsing the Third Circuit's *Lapp* factors).

KARS-4-KIDS is likely to cause consumer confusion as to the source or sponsorship of Kars 4 Kids' services. To prove likelihood of confusion, America must demonstrate that an appreciable number of consumers using ordinary care and prudence in making their purchasing decisions are likely to be misled or confused as to the source of the America Can's services rendered in connection with CARS FOR KIDS. A "likelihood of confusion" means more than a mere possibility of confusion; it requires that you find that confusion is probable.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. For purposes of Kars 4 Kids' claims against America Can, Kars 4 Kids is the plaintiff and America Can is the defendant.  For purposes of America Can's claims against Kars 4 Kids, America Can is the plaintiff and Kars 4 Kids is the defendant.  As to each party's trademark infringement claims against the other, as you consider the likelihood of confusion you should examine the following:

1.     The similarity of the owner's mark and the alleged infringing mark.  If the overall impression created by the plaintiff's trademark in the marketplace is similar to that created by the defendant's trademark in appearance, sound, or meaning, there is a greater chance of likelihood of confusion. Similarities in

44

appearance, sound or meaning weigh more heavily than differences in finding the marks are similar.

2.      The strength of the owner's mark(s).  The more the consuming public recognizes the plaintiff's trademark(s) as an indication of origin of the plaintiff's services, the more likely it is that consumers would be confused about the source of the defendant's services if the defendant uses a similar mark.

3.      The price of the services and other factors indicative of the care and attention expected of consumers when making a purchase.  The more sophisticated the potential buyers of the services or the more costly the services, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the parties' trademarks.

4.      The length of time that the defendant has used the accused mark without evidence of actual confusion.

5.      The defendant's intent in adopting the mark.  Knowing use by the defendant of the plaintiff's trademark(s) to identify similar services may strongly show an intent to derive benefit from the reputation of the plaintiff's mark(s), suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that the defendant acted knowingly, the use of plaintiff's trademarks to identify similar goods may indicate a likelihood of confusion.

6.     The evidence of actual confusion.  If use by the defendant of the plaintiff's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the defendant's use of the trademark may still be likely to cause confusion. As you consider whether the trademark used by the defendant creates for consumers a likelihood of confusion with the plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

7.     Whether the parties' services are marketed or advertised through the same channels.  If the parties' services are likely to be sold in the same or similar outlets, or advertised in similar media, this may increase the likelihood of confusion.

8.     The extent to which the targets of the parties' sales efforts are the same.

9.    The relationship of the services in the minds of ordinary purchasers. Whether ordinary purchasers view the services of the plaintiff and the services of the defendant as related.

10.    Other factors suggesting that the consuming public might expect the plaintiff to provide both parties' services, or provide services in the defendant's market, or expect that the plaintiff is likely to expand into the defendant's market.

## INSTRUCTION NO. 20

### Issues Instruction - Trademark Infringement[21]

You have now heard about all the elements of the parties' trademark infringement claims.

If you find that Kars 4 Kids has proven by a preponderance of the evidence that America Can has infringed Kars 4 Kids' trademarks by likely causing confusion as to the source or sponsorship of its services, then your verdict on Kars 4 Kids' trademark infringement claim should be in favor of Kars 4 Kids.

On the other hand, if you find that Kars 4 Kids has not proven by a preponderance of the evidence that America Can has infringed Kars 4 Kids' trademarks by likely causing confusion as to the source or sponsorship of its services, then your verdict on Kars 4 Kids' trademark infringement claim should be in favor of America Can.

If you find that America Can has proven by a preponderance of the evidence that Kars 4 Kids has infringed America Can's trademark by likely causing confusion as to the source or sponsorship of its services, then your verdict on America Can's trademark infringement claim should be in favor of America Can.

---

[21] *See J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002); N.J.S.A. § 56:3-13.20.

48

On the other hand, if you find that America Can has not proven by a preponderance of the evidence that Kars 4 Kids has infringed America Can's trademark by likely causing confusion as to the source or sponsorship of its services, then your verdict on America Can's trademark infringement claim should be in favor of Kars 4 Kids.

Each party has also brought claims for unfair competition and false designation of origin under federal law, as well as claims for trademark infringement and unfair competition under New Jersey state law. Each of these claims has the same elements as those for trademark infringement under federal law. Accordingly, if you find for one party on its trademark infringement claim under federal law, you should also find for that party on its federal unfair competition and false designation of origin claims and its New Jersey state trademark infringement and unfair competition claims. Similarly, if you find against one party on its trademark infringement claim under federal law, you should also find against that party on its federal unfair competition and false designation of origin claims and its New Jersey state trademark infringement and unfair competition claims.

## INSTRUCTION NO. 21

### Trademark Dilution[22]

Kars 4 Kids also brings a claim of trademark dilution against America Can.

"Dilution" is the weakening of the ability of a famous trademark to clearly identify

and call to mind only one exclusive source.

In order to prove trademark dilution, Kars 4 Kids must prove each of the

following elements by a preponderance of the evidence:

1.     One or both of Kars 4 Kids' asserted trademarks, KARS 4 KIDS and

1-877-KARS-4-KIDS, is famous;

2.     America Can is making use of the accused trademark in commerce;

3.     America Can's use of the accused trademark began after Kars 4 Kids'

trademark had become famous; and

4.     America Can's use of the accused trademark is likely to dilute the

distinctive quality of Kars 4 Kids' famous trademark(s) by diminishing the

capacity of the trademark to be identified with only one source, or that customers

---

[22] See 15 U.S.C. § 1125(c)(1); *Zinn v. Seruga*, 05-cv-3572, 2009 WL 3128353, at *29 (D.N.J. Sept. 28, 2009) (setting forth elements of dilution claim and establishing that federal and New Jersey claims of dilution are subject to same considerations); *Springboards to Educ., Inc. v. Kipp Found.*, 325 F. Supp. 3d 704, 718 (N.D. Tex. 2018) (holding that a claim under Texas Anti-Dilution statute, Texas Business Commerce Code Section 16.103, "implicates the same standards" as those under federal law).

or prospective customers associate America Can's mark and Kars 4 Kids' famous mark(s) in a way that harms the reputation of Kars 4 Kids' famous mark(s).

Similarly, America Can brings a claim of trademark dilution against Kars 4 Kids.  In order to prove trademark dilution, America Can must prove each of the following elements by a preponderance of the evidence:

1.   America Can's asserted CARS FOR KIDS trademark is famous;

2.   Kars 4 Kids is making use of the accused trademark in commerce;

3.   Kars 4 Kids' use of the accused trademark began after America Can's trademark had become famous; and

4.   Kars 4 Kids' use of the accused trademark(s) is likely to dilute the distinctive quality of America Can's famous trademark by diminishing the capacity of the trademark to be identified with only one source, or that customers or prospective customers associate Kars 4 Kids' mark(s) and America Can's famous mark in a way that harms the reputation of America Can's famous mark.

# INSTRUCTION NO. 22

## Trademark Dilution: Fame[23]

For Kars 4 Kids' trademark dilution claims against America Can, Kars 4 Kids is the plaintiff and America Can is the defendant.  For America Can's trademark dilution claims against Kars 4 Kids, America Can is the plaintiff and Kars 4 Kids is the defendant.

To merit protection from dilution, the plaintiff must prove not only that its trademark(s) is/are famous, but also that the defendant's use of its allegedly infringing mark began after the point in time when the plaintiff's trademark had become famous. If you find that plaintiff's trademark(s) is/are not famous, or is/are famous but only became famous after the defendant's first use, then the plaintiff's mark is not entitled to protection from dilution.

When I talk about "fame," this is not necessarily the same as the dictionary definition with which you are familiar. For the purposes of a trademark dilution claim, a plaintiff's trademark only qualifies as "famous" if it carries a substantial

---

[23] See 15 U.S.C. § 1125(c)(2)(A); *Green v. Fornario*, 486 F.3d 100, 105 (3d Cir. 2007) (setting forth standard for fame); *Zinn v. Seruga*, 05-cv-3572, 2009 WL 3128353, at *29 (D.N.J. Sept. 28, 2009) (setting forth elements of dilution claim and establishing that federal and New Jersey claims of dilution are subject to same considerations); *Springboards to Educ., Inc. v. Kipp Found.*, 325 F. Supp. 3d 704, 718 (N.D. Tex. 2018) (holding that a claim under Texas Anti-Dilution statute, Texas Business Commerce Code Section 16.103, "implicates the same standards" as those under federal law).

degree of fame. That is, the mark must be truly prominent and renowned. Even if a mark is strong or distinctive enough to qualify for protection in the context of trademark infringement, a concept that I discussed earlier, this does not necessarily mean that the mark is famous enough to qualify for protection in the trademark dilution context. Trademark dilution is a cause of action reserved for marks that are widely recognized by the general consuming public of the United States as a designation of the source of the goods or services of the mark's owner. Some examples of trademarks that are "famous" in the dilution context are BUDWEISER beer, COCA-COLA soft drinks, and DELTA airline services.

In considering whether the plaintiff's trademark is famous, you may evaluate the following factors:

1.     the duration, extent, and geographic reach of advertising and publicity of the  mark, whether advertised or publicized by the owner or third parties;

2.     the amount, volume, and geographic extent of sales of goods or services offered under the mark;

3.     the extent of actual recognition of the mark; and

4.     whether the mark was federally registered.

# INSTRUCTION NO. 23

## Trademark Dilution - Issues Instruction[24]

You have now heard about all the elements of the parties' trademark dilution claims.

If you find both that the plaintiff has proven by a preponderance of the evidence all the elements of its trademark dilution claim, as set forth in these instructions, then your verdict on the plaintiff's trademark dilution claim should be in favor of the plaintiff.

On the other hand, if you find that the plaintiff has not proven by a preponderance of the evidence all of the elements of its trademark dilution claim, as set forth in these instructions, then your verdict should be in favor of the defendant on the plaintiff's trademark dilution claim.

---

[24] *Zinn v. Seruga*, 05-cv-3572, 2009 WL 3128353, at *29 (D.N.J. Sept. 28, 2009) (setting forth elements of dilution claim and establishing that federal and New Jersey claims of dilution are subject to same considerations); *Springboards to Educ., Inc. v. Kipp Found.*, 325 F. Supp. 3d 704, 718 (N.D. Tex. 2018) (holding that a claim under Texas Anti-Dilution statute, Texas Business Commerce Code Section 16.103, "implicates the same standards" as those under federal law).

## INSTRUCTION NO. 24

### Cancellation of 1-877-KARS-KIDS[25]

America Can asserts a claim for cancellation of Kars 4 Kids' registration of

1-877-KARS-4-KIDS at the United States Patent and Trademark Office on the

grounds that the registration was fraudulently procured.

The burden of proof on America Can's claim for cancellation of 1-877-

KARS-4-KIDS is that of clear and convincing evidence.  That means to prove

fraudulent procurement, America Can must establish, by clear and convincing

evidence, that Kars 4 Kids knowingly made a false material representation of fact

in connection with its application to register 1-877-KARS-4-KIDS and intended

the United States Patent and Trademark Office to rely on that misrepresentation in

granting Kars 4 Kids a trademark registration.  I have already explained the

meaning of the clear and convincing evidence standard of proof, which is more

demanding than the preponderance of the evidence standard.

---

[25] *Goldfaden v. Miss World (Jersey) Ltd.*, 02-cv-712, 2005 WL 1703207, at *9 (D.N.J. July 20, 2005) ("Fraud in procuring a service mark occurs when an applicant knowingly makes false, material representations of fact in connection with an application."); *Horizon Healthcare Servs., Inc. v. Allied Nat., Inc.*, No. 03-cv-4098, 2006 WL 344277 (D.N.J. Feb. 14, 2006) (noting that "[t]he Third Circuit's rule is . . . a party seeking cancellation for fraudulent procurement must prove the alleged fraud by clear and convincing evidence"); *Primepoint, L.L.C. v. PrimePay, Inc.*, 545 F. Supp. 2d 426, 447 (D.N.J. 2008) (similar).

If you find that America Can has proven by clear and convincing evidence that Kars 4 Kids procured its registration for 1-877-KARS-4-KIDS fraudulently, your verdict must be for America Can on its claim for cancellation of Kars 4 Kids' registration of 1-877-KARS-4-KIDS at the United States Patent and Trademark Office.

If you find that America Can has not proven by clear and convincing evidence that Kars 4 Kids procured its registration for 1-877-KARS-4-KIDS fraudulently, your verdict must be for Kars 4 Kids on America Can's claim for cancellation of Kars 4 Kids' registration of 1-877-KARS-4-KIDS at the United States Patent and Trademark Office.

In determining whether or not America Can has proven by clear and convincing evidence that Kars 4 Kids procured its registration for 1-877-KARS-4-KIDS fraudulently, you may not rely on speculation or inference.  You may consider whether Kars 4 Kids believed that America Can owned trademark rights and whether Kars 4 Kids believed that America Can claimed trademark rights in interstate commerce at the time that it applied to register 1-877-KARS-4-KIDS.

## INSTRUCTION NO. 25

### Damages[26]

Kars 4 Kids has chosen not to request damages in this case.  America Can has chosen to request damages in the form of costs of "corrective advertising," as that term is defined in Instruction number [26], in this case.

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered or that there are in fact damages.

In the event you find for America Can on its trademark infringement or dilution claims, you must then determine America Can's damages.  America Can has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate America Can for any injury you find was caused by Kars 4 Kids.

America Can has also requested a disgorgement of Kars 4 Kids' profits. This issue is not for you to decide.  It will be decided by the Court depending on your verdict.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

---

[26] 9th Cir. Model Jury Instr. 5.1 (modified).

57

# INSTRUCTION NO. 26

## Corrective Advertising[27]

If you determine that America Can has proven by a preponderance of the evidence that an advertising campaign is necessary to repair any damage that has resulted or will result as a result of Kars 4 Kids' actions, you may award America Can the amount necessary, if any, fairness requires to compensate them for the cost of any such advertising campaign.

In determining whether America Can is entitled to corrective advertising damages, America Can must prove by a preponderance of the evidence:

1. It has suffered lost profits, lost sales, or damage to its reputation; and

2. Kars 4 Kids acted in bad faith in its adoption and continued use of KARS 4 KIDS and/or 1-877-KARS-4-KIDS.

---

[27] *See Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*, No. CV113684SRCCLW, 2016 WL 3545529, at *30 (D.N.J. June 29, 2016) ("Corrective advertising is not awarded where the trademark holder has not demonstrated actual damages and where the alleged infringer has not acted in bad faith.").

**INSTRUCTION NO. 27**

Damages – Dilution[28]

In order to obtain monetary damages in the form of corrective advertising on its dilution claim, in addition to the requirements I have already instructed you on, America Can must show that Kars 4 Kids willfully intended to trade on America Can's reputation or willfully intended to dilute the CARS FOR KIDS mark.

---

[28] *See* 15 U.S.C. § 1125(c).

**GENERAL INSTRUCTIONS FOR USE DURING TRIAL**

**INSTRUCTION NO. 28**

<u>Judicial Notice</u>[29]

The rules of evidence permit the judge to accept facts that cannot reasonably be disputed. This is called judicial notice. I have decided to accept as proved the fact that [state the fact that the court has judicially noticed], even though no evidence has been introduced to prove this fact.  You must accept this fact as true for purposes of this case.

---

[29] Model Civ. Jury Instr. 3d. Cir. 2.2.

## INSTRUCTION NO. 29

### Use of Deposition[30]

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], which was taken on [date], is about to be [has been] presented to you [by a video] [by reading the transcript]. Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

---

[30] Model Civ. Jury Instr. 3d. Cir. 2.5.

# INSTRUCTION NO. 30

## Expert Testimony[31]

Some witnesses, because of education or experience, are permitted to state their opinions and the reasons for those opinions. You have heard what is called "expert testimony" from Dr. Alex Simonson and Mr. David Hall for Kars 4 Kids, and expert testimony from Ms. Melissa Pittaoulis and Mr. Bryce Cook for America Can. These experts are allowed to express their opinions on matters about which they have special knowledge and training. Their testimony is given to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

An expert's opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, as well as all other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.

You may give each expert's testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept a witness's testimony merely because he is an expert. Nor should you substitute it

---

[31] 9th Cir. Manual of Model Civ. Jury Instr. 2.11.

for your own reason, judgment and common sense. The determination of the facts

in this case rests solely with you.

## INSTRUCTION NO. 31

<u>Use of Charts and Summaries</u>[32]

Kars 4 Kids has presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

---

[32] Model Civ. Jury Instr. 3d. Cir. 2.7.

**INSTRUCTION NO. 32**

<u>Evidence Admitted for a Limited Purpose</u>[33]

You [have heard] [will now hear] evidence that was received for [a]

particular limited purpose[s]. [This evidence can be considered by you as evidence

that (describe limited purpose)]. It may not be used for any other purpose. [For

example, you cannot use it as proof that (discuss specific prohibited purpose)].

---

[33] Model Civ. Jury Instr. 3d. Cir. 2.10.

## GENERAL INSTRUCTIONS FOR USE AFTER TRIAL

## INSTRUCTION NO. 33

Deliberations[34]

When you retire to the jury room to deliberate, you may take with you these instructions, your notes, and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

---

[34] Model Civ. Jury Instr. 3d. Cir. 3.1.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be. It is your sole and exclusive duty and responsibility to determine the verdict.


APPROVED:                    _____
                             HONORABLE PETER G. SHERIDAN, U.S.D.J.

Dated: April 18, 2019                     By: *s/ Liza M. Walsh*
                                          Liza M. Walsh
                                          Marc D. Haefner
                                          Eleonore Ofosu-Antwi
                                          WALSH PIZZI O'REILLY FALANGA
                                          LLP
                                          One Riverfront Plaza
                                          1037 Raymond Blvd., Suite 600
                                          Newark, New Jersey 07102
                                          (973) 757-1100


                                          Peter D. Vogl
                                          David Litterine-Kaufman
                                          ORRICK, HERRINGTON &
                                          SUTCLIFFE LLP
                                          51 West 52nd Street
                                          New York, New York 10019-6142
                                          (212) 506-5000


                                          *Attorneys for*
                                          *KARS 4 KIDS INC.*