Aubrey D. (Nick) Pittman (*pro hac vice*)
**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201

Valerie Yanaros Wilde (*pro hac vice*)
**YANAROS LAW, P.C.**
5057 Keller Springs Road Suite 300
Addison, Texas 75001

J. Manuel Torres-Rodriguez (*pro hac vice*)
**J. MANUEL TORRES-RODRIGUEZ JD, CPA**
4322 Walnut Hill Lane, Suite 1
Dallas, Texas 75229

Karen A. Confoy
Christopher R. Kinkade
Nancy E. Halpern
Allison L. Hollows
**FOX ROTHSCHILD LLP**
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville NJ  08648
Telephone: (609) 896-3600
Facsimile: (609) 896-1469

*Attorneys for America Can! Cars for Kids*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARS 4 KIDS INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICA CAN!, <br><br> Defendant. | Case No. 3:14-cv-07770-PGS-LHG |
| AMERICA CAN! Cars for Kids, <br><br> Plaintiff, <br><br> v. <br><br> KARS 4 KIDS INC., <br><br> Defendant. | Case No. 3:16-cv-04232-PGS-LHG |

## <u>AMERICA CAN! CARS FOR KIDS' PROPOSED JURY CHARGE</u>

America Can! Cars for Kids submits these Proposed General Jury Instructions and Case Specific Jury Charge and requests that the Court charge the jury accordingly. Each instruction is submitted as a separate request, and America Can! Cars for Kids requests a separate ruling for each instruction.

In submitting these proposed instructions, America Can! Cars for Kids notes that federal courts have "substantial discretion with respect to specific wording of jury instructions and need not give a proposed instruction so long as the essential points are covered by the instructions that are given." *Alicea v. Ralston*, 279 F. App'x. 179, 182 (3d Cir. 2008) (citation omitted); *see Gilmore v. Macys Retail Holdings*, Inc., 385 F. App'x. 233, 239 (3d Cir. 2010) ("[S]o long as the jury instructions provide an accurate and fair statement of the law, the trial judge has discretion as to the style and wording employed."); *Tigg Corp. v. Dow Corning Corp.*, 962 F.2d 1119, 1124 (3d Cir. 1992) ("While jury instructions must 'fairly and adequately submit[] the issues in the case to the jury', a trial judge has broad discretion concerning the particular language used in a jury instruction.") (citation omitted); *Tokash v. Foxco Ins. Mgmt. Servs., Inc.*, 548 F. App'x 797, 804 (3d Cir. 2013).

By submitting these proposed jury instructions, America Can! Cars for Kids does not concede that Kars 4 Kids Inc.'s claims, or any issues relating to those claims, can or should be submitted to the jury. America Can! Cars for Kids' proposed

jury instructions are made without waiving its motions, its objections to Kars 4 Kids

Inc.'s  claims or the evidence admitted through the end of trial.

Dated: April 18, 2019                         Respectfully submitted,

                                              s/ Karen A. Confoy
                                              Karen A. Confoy
                                              Christopher R. Kinkade
                                              Nancy E. Halpern
                                              Allison L. Hollows
                                              **FOX ROTHSCHILD LLP**
                                              Princeton Pike Corporate Center
                                              997 Lenox Drive
                                              Lawrenceville, NJ 08648-2311
                                              T: 609- 896-3600
                                              F: 609-896-1469
                                              kconfoy@foxrothschild.com
                                              ckinkade@foxrothschild.com
                                              nhalpern@foxrothschild.com
                                              ahollows@foxrothschild.com

                                              Aubrey D. (Nick) Pittman (*pro hac vice*)
                                              **THE PITTMAN LAW FIRM, P.C.**
                                              100 Crescent Court, Suite 700
                                              Dallas, TX 75201
                                              pittman@thepittmanlawfirm.com

                                              J. Manuel Torres-Rodriguez (*pro hac vice*)
                                              **J. MANUEL TORRES-RODRIGUEZ JD, CPA**
                                              4322 Walnut Hill Lane, Suite 1
                                              Dallas, TX 75229
                                              manny_torres@hotmail.com

                                              Valerie Yanaros Wilde (*pro hac vice*)
                                              **YANAROS LAW, P.C.**
                                              5057 Keller Springs Road, Suite 300
                                              Addison, TX 75001
                                              valerie@yanaroslaw.com

**Table of Contents**

PART I GENERAL INSTRUCTIONS ................................................... 1

  PRELIMINARY INSTRUCTIONS ........................................... 2

    Instruction #1: Introduction; Role of Jury ........................... 2

    Instruction #2: Description of the Case ............................. 3

    Instruction #3: Conduct of the Jury .................................. 4

    Instruction #4: Bench Conferences .................................. 7

    Instruction #5: Evidence ................................................. 8

    Instruction #6: Direct and Circumstantial Evidence .......................10

    Instruction #7: Credibility of Witnesses ...........................11

    Instruction #8: Jury Questions for Witnesses ...................13

    Instruction #9: Note-Taking by Jurors ............................14

    Instruction #10: Preponderance of the Evidence .............16

    Instruction #11: Clear and Convincing Evidence .............18

    Instruction #12: Description of the Trial Proceedings ......................19

  INSTRUCTIONS FOR USE DURING TRIAL .........................................21

    Instruction #13: Judicial Notice .....................................21

    Instruction #14: Stipulation of Fact .................................22

    Instruction #15: Use of Deposition..................................23

    Instruction #16: Use of Interrogatories............................24

    Instruction #17: Charts and Summaries in Evidence .......................25

    Instruction #18: Striking Evidence .................................26

    Instruction #19: Evidence Admitted for a Limited Purpose..............27

    Instruction #20: Opinion Testimony ...............................28

    Instruction #21: Recess Admonition ...............................29

  DELIBERATION ..................................................................30

    Instruction #22: Introduction.........................................30

Instruction #23: Deliberations ............................................................31

Instruction #24: Number of Witnesses .............................................35

Instruction #25: Use of Notes..........................................................36

Instruction #26: All Persons Equal Before the Law...........................37

Instruction #27: Consideration Of Evidence.....................................38

Instruction #28: Evidence in the Case .............................................39

Instruction #29: Questions Not Evidence .........................................40

Instruction #30: Direct and Circumstantial Evidence .......................41

Instruction #31: Inferences and Presumptions .................................42

Instruction #32: Expert Witnesses....................................................43

Instruction #33: Evidence Admitted for Limited Purpose ................44

Instruction #34: Discrepancies in Testimony ...................................45

Instruction #35: Impeachment By Witnesses' Inconsistent Statements
         (False In One - False In All).......................................47

Instruction #36: Impeachment — Bad Reputation for Truth and
         Veracity.....................................................................48

Instruction #37: Effect of Prior Inconsistent Statements...................49

Instruction #38: Effect of Refusal of Witness to Answer...................50

Instruction #39: Depositions as Substantive Evidence .....................51

Instruction #40: All Available Witnesses or Evidence Need Not Be
         Produced ....................................................................52

PART II CASE SPECIFIC JURY CHARGE.......................................53

    SUMMARY AND BURDENS OF PROOF ...............................................54

    Instruction #41: Description Of Case; Summary Of Applicable Law 54

    Instruction #42: Burdens Of Proof ....................................................58

    Instruction #43: "If You Find" or "If You Decide" ...........................60

    TRADEMARKS GENERALLY: .............................................................61

    Instruction #44: Definition and Function of a Trademark.................61

    Instruction #45: How a Trademark is Obtained ...............................63

ii

Instruction #46: Trademark Ownership—Assignee (15 U.S.C. § 1060) ...................................................................................64

Instruction #47: Trademark Liability—Theories and Policies (15 U.S.C. §§ 1114(1), 1125(a)) ........................................65

INFRINGEMENT AND UNFAIR COMPETITION AND DILUTION CLAIMS:.................................................................................66

Instruction #48: Infringement and Unfair Competition State and Federal Claim Elements the Same:...............................66

Instruction #49: Basic Elements of Infringement: .............................67

Instruction #50: Presumed Validity and Ownership of Registered Trademark (15 U.S.C. §§ 1057, 1065 and 1115) ........68

Instruction #51: Validity of Unregistered Marks ...............................71

Instruction #52: Infringement—Elements—Validity—Unregistered Mark—Distinctiveness ................................................73

Instruction #53: Mark Distinctiveness and Validity ..........................79

Instruction #54: Infringement—Elements—Validity— Distinctiveness—Secondary Meaning .......................80

Instruction #55: Infringement—Elements—Ownership—Generally .82

Instruction #56: Infringement—Likelihood of Confusion—Lapp Factors (15 U.S.C. §§ 1114(1) and 1125(a))...............85

Instruction #57: Trademark Dilution...................................................87

AFFIRMATIVE DEFENSES: ......................................................................90

Instruction #58: Acquiescence ...........................................................90

Instruction #59: Laches ......................................................................91

DAMAGES: ...............................................................................................92

Instruction #60: Trademark Remedies ...............................................92

Instruction #61: Plaintiff's Actual Monetary Damages .....................93

Instruction #62: Determining compensatory damages.......................94

Instruction #63: Nominal Damages....................................................97

Instruction #64: Intentional Infringement...........................................98

**PART I**
**GENERAL INSTRUCTIONS**

**PRELIMINARY INSTRUCTIONS**

**INSTRUCTION #1:      INTRODUCTION; ROLE OF JURY**

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.[1]

---

[1] Third Circuit Model Civil Jury Instruction 1.1 (Unmodified).

**INSTRUCTION #2:      DESCRIPTION OF THE CASE**

**INSTRUCTION #3:     CONDUCT OF THE JURY**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves. If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly. There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence. I know that many of you use cell phones, smart phones like Blackberries and iPhones, and other portable electronic devices; laptops, netbooks, and other computers both portable and fixed; and other tools of technology, to access the internet and to communicate with others. You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate orally with anyone about the case on your cell phone, smart phone, or portable or fixed computer or device of any kind; or use these devices to communicate electronically by messages or postings of any kind including e-mail, instant messages, text messages, text or instant messaging services such as Twitter, or through any blog, website, internet chat room, or by way of any other social networking websites or services, including Facebook, MySpace, LinkedIn, and YouTube.

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either. That is why you are asked to wear your juror tags. It shows that you are someone who is not to be approached in any way.

Second, do not read or listen to anything related to this case that is not admitted into evidence. By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case. Do not do any research on the internet, for example. You are to decide the case upon the evidence presented at trial. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Again, do not reach any conclusion on the claims or defenses until all of the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

Finally, if any member of the jury has a friend or family member who is in attendance at this public trial, that visitor must first register with my Clerk because special rules will govern their attendance. You may not discuss any aspect of this

trial with the visitor, nor may you permit the visitor to discuss it with you.[2]

---

[2] Third Circuit Model Civil Jury Instruction 1.3 (Unmodified).

**INSTRUCTION #4:        BENCH CONFERENCES**

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference. If that happens, please be patient. We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law. We will, of course, do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.[3]

---

[3] Third Circuit Model Civil Jury Instruction 1.4 (Unmodified).

**INSTRUCTION #5:      EVIDENCE**

The evidence from which you are to find the facts consists of the following:

1.      The testimony of the witnesses;

2.      Documents and other things received as exhibits;

3.      Any facts that are stipulated--that is, formally agreed to by the parties;

4.      Any facts that are judicially noticed--that is, facts I say you must accept as true even without other evidence; and

5.      Any requests for admissions entered by a party in this case

The following things are not evidence:

1.      Statements, arguments, and questions of the lawyers for the parties in this case;

2.      Objections by lawyers.

3.      Any testimony I tell you to disregard; and

4.      Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.[4]

---

[4] Third Circuit Model Civil Jury Instruction 1.5 (Modified).

**INSTRUCTION #6:      DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.[5]

---

[5] Third Circuit Model Civil Jury Instruction 1.6 (Option 2) (Unmodified).

**INSTRUCTION #7:      CREDIBILITY OF WITNESSES**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following:

1.      the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

2.      the quality of the witness's understanding and memory;

3.      the witness's manner while testifying;

4.      whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

5.      whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

6.      how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

7.      any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

If you believe that any witness deliberately lied to you on any material fact that is significant to your decision in this case, you have the right to reject all of

11

that witness's testimony. However, in your discretion you may believe some of the testimony and not believe other parts of the testimony.[6]

---

[6] Third Circuit Model Civil Jury Instruction 1.7 (Modified).

**INSTRUCTION #8:     JURY QUESTIONS FOR WITNESSES**

Only the lawyers and I are allowed to ask questions of witnesses. You are not permitted to ask questions of witnesses.[7]

---

[7] Third Circuit Model Civil Jury Instruction 1.8 (Option 1) (Unmodified).

13

**INSTRUCTION #9:      NOTE-TAKING BY JURORS**

If you wish, you may take notes during the presentation of evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law. My Courtroom deputy will arrange for pens, pencils, and paper. Remember that your notes are for your own personal use -- they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial. But you should not assume that the transcripts will be available for your review during your deliberations. Nor should you consider notes that you or fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberations. Here are some other specific points to keep in mind about note taking:

1.   <u>Note-taking is permitted, not required</u>. Each of you may take notes. No one is required to take notes.

2.   <u>Be brief</u>. Do not try to summarize all of the testimony. Notes are for the purpose of refreshing memory. They are particularly helpful when dealing with measurements, times, distances, identities, and relationships. Overuse of note-taking may be distracting. You must determine the credibility of witnesses; so you must observe the demeanor and appearance of each person on the witness stand. Note-taking must not distract you from that task. If you wish to make a note, you need not sacrifice the opportunity to make important observations. You may make your note after having made an observation.

3.   <u>Do not use your notes, or any other juror's notes, as authority to</u>

14

<u>persuade fellow jurors</u>. In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes. As I mentioned earlier, your notes are not official transcripts. They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial. They are valuable, if at all, only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case. You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial. Notes are not to be used in place of the evidence.

4.  Do <u>not take your notes away from court</u>. I repeat, at the end of each day, please leave your notes in the jury room. [Describe logistics of storing and securing notes, for example: "If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations."][8]

---

[8] Third Circuit Model Civil Jury Instruction 1.9 (Unmodified).

**INSTRUCTION #10:   PREPONDERANCE OF THE EVIDENCE**

This is a civil case. Each of the parties has made claims against the other. I will instruct you on what facts are necessary for you to find in order to make a decision on each claim.

In order to prevail the party making the claim must prove its case by the preponderance of the evidence. That means it must prove to you, in light of all the evidence, that what it claims is more likely so than not so. To say it differently: if you were to put the evidence favorable to party asserting the claim and the evidence favorable to the party opposing the claim on opposite sides of the scales, the party making the claim would have to make the scales tip somewhat on its side. If the party making the claim fails to meet this burden, the verdict must be for the other party. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain claims and defenses a party will have the burden of proving the elements of the defenses by clear and convincing evidence which I will explain later.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.[9]

---

[9] Third Circuit Model Civil Jury Instruction 1.10 (Modified).

**INSTRUCTION #11:    CLEAR AND CONVINCING EVIDENCE**

On certain of their claims and defenses, the parties must establish each element of proof by clear and convincing evidence.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true. Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard. But it does not require proof beyond a reasonable doubt, the standard applied in criminal cases.[10]

---

[10] Third Circuit Model Jury Instruction 1.11 (Modified).

## INSTRUCTION #12:    DESCRIPTION OF THE TRIAL PROCEEDINGS

The trial will proceed in the following manner:

First, the attorney for Kars 4 Kids Inc. will make an opening statement to you. Next, the attorney for America Can! Cars for Kids will make an opening statement. What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show. A party is not required to make an opening statement.

After [Before] the attorneys have made their opening statements, I will instruct you on the applicable law and then each party is given an opportunity to present its evidence.

Each party has filed a case against the other and therefore, each party has the burden of proof as to its claims. The parties have agreed upon an order of presenting their proofs. Kars 4 Kids Inc. will present witnesses for testimony. Counsel for America Can! Cars for Kids may cross-examine these witnesses. Some witnesses will not appear live; rather the attorneys will play a video of the witness giving testimony at a deposition. Kars 4 Kids Inc. may also present evidence. Following Kars 4 Kids Inc.'s case, America Can! Cars for Kids will present its case. Counsel for America Can! Cars for Kids will call live witnesses and will offer videotaped testimony and may present other evidence. Counsel for Kars 4 Kids Inc. may cross-examine live witnesses offered by America Can. After each party's main case is

19

presented, each may be permitted to present what is called rebuttal evidence.

After all the evidence has been presented, [I will instruct you on the law and then] the attorneys will present to you closing arguments to summarize and interpret the evidence in a way that is helpful to their clients' positions. As with opening statements, closing arguments are not evidence. [Once the closing arguments are completed, I will then instruct you on the law.] After that you will retire to the jury room to deliberate on your verdict in this case.

[At this point the court may wish to inform the jury of the scheduling and length of the trial, and other logistical information.][11]

---

[11] Third Circuit Model Civil Jury Instruction 1.12 (Modified).

**INSTRUCTIONS FOR USE DURING TRIAL**

**INSTRUCTION #13:    JUDICIAL NOTICE**

The rules of evidence permit the judge to accept facts that cannot reasonably be disputed. This is called judicial notice. I may decide to accept as proved a fact, even though no evidence has been introduced to prove this fact. If I instruct you that I have taken judicial notice of a fact, you must accept this fact as true for purposes of this case.[12]

---

[12] Third Circuit Model Civil Jury Instruction 1.12 (Modified).

**INSTRUCTION #14:    STIPULATION OF FACT**

The parties have stipulated that certain facts are true, and those stipulations have been read to you during this trial. You must therefore treat these facts as having been proved for the purposes of this case.[13]

---

[13] Third Circuit Model Jury Instruction 2.4.

**INSTRUCTION #15:     USE OF DEPOSITION**

I told you that both parties may offer deposition testimony by video. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

The deposition of [name of witness], which was taken on [date], is about to be [has been] presented to you by a video.[14]

---

[14] Third Circuit Model Jury Instruction 2.5 (Modified).

**INSTRUCTION #16:    USE OF INTERROGATORIES**

You will now hear [have heard] answers that [name of party] gave in response to written questions submitted by the other side. The written questions are called "interrogatories." The written answers were given in writing and under oath, before the trial.

You must consider [name of party]'s answers to interrogatories in the same manner as if the answers were made from the witness stand.[15]

---

[15] Third Circuit Model Jury Instruction 2.6 (Unmodified).

**INSTRUCTION #17:    CHARTS AND SUMMARIES IN EVIDENCE**

[Name of party] has presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.[16]

---

[16] Third Circuit Model Jury Instruction 2.7.

**INSTRUCTION #18:     STRIKING EVIDENCE**

I have ordered that [describe the evidence] be struck from the record and I am instructing you that you must disregard that information [testimony]. That means that when you  are deciding the case, you must not consider that information [testimony] in any way.[17]

---

[17] Third Circuit Model Jury Instruction 2.9.

**INSTRUCTION #19:     EVIDENCE ADMITTED FOR A LIMITED PURPOSE**

You [have heard] [will now hear] evidence that was received for [a] particular limited purpose[s]. [This evidence can be considered by you as evidence that (describe limited purpose)]. It may not be used for any other purpose. [For example, you cannot use it as proof that (discuss specific prohibited purpose)].[18]

_____

[18] Third Circuit Model Jury Instruction 2.10.

**INSTRUCTION #20:    OPINION TESTIMONY**

You have heard [will hear] testimony containing opinions from [name of witness]. In weighing this opinion testimony, you may consider [his/her] qualifications, the reasons for [his/her] opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. The opinion of [name of witness] should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinion of [name of witness], you may consider any bias that [name of witness] may have, including any bias that may arise from evidence that [name of witness] has been or will be paid for reviewing the case and testifying [or from evidence that [name of witness] testifies regularly and makes a large portion of [his/her] income from testifying in court].[19]

---

[19] Third Circuit Model Jury Instruction 2.11.

**INSTRUCTION #21:    RECESS ADMONITION**

We are about to take [our first] [a] recess [and I remind you of the instruction I gave you earlier]. During this recess and any other recess, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone tries to talk to you about the case, do not tell your fellow jurors but tell me about it immediately. [Do not read, watch or listen to any news reports of the trial, or conduct any research or investigation, including on the Internet. Remember that I told you not to use any electronic tools to communicate with anyone about the case or to do research relating to the case.] Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to [identify court personnel] to give to me.

[I will not repeat these admonitions each time we recess or adjourn, but you will be reminded of them on occasion.][20]

---

[20] Third Circuit Model Jury Instruction 2.14.

**DELIBERATION**

**INSTRUCTION #22:    INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case. Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.[21]

---

[21] Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006).

**INSTRUCTION #23:     DELIBERATIONS**

When you retire to the jury room to deliberate, you may take with you these instructions and your notes [and the exhibits that the Court has admitted into evidence]. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself,

but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the courtroom deputy, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone like Blackberries or iPhones, or computer of any kind; the internet, any internet service, or any text or instant messaging service like Twitter; or any internet chat room, blog, website, or social networking service such as Facebook, MySpace, LinkedIn, or YouTube, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties

have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to

talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be. It is your sole and exclusive duty and responsibility to determine the verdict.[22]

---

[22] Third Circuit Model Jury Instruction 3.1.

**INSTRUCTION #24:     NUMBER OF WITNESSES**

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.[23]

---

[23] Third Circuit Model Jury Instructions 3.2.

**INSTRUCTION #25:    USE OF NOTES**

You may use the notes taken by you during the trial. However, the notes should not be substituted for your memory. Remember, notes are not evidence. If your memory should differ from your notes, then you should rely on your memory and not on your notes.[24]

_____

[24] 3 Fed. Jury Prac. & Instr. § 103:02 (6th ed.).

**INSTRUCTION #26:    ALL PERSONS EQUAL BEFORE THE LAW**

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations and other organizations stand equal before the law, and are to be treated as equals.[25]

---

[25] 3 Fed. Jury Prac. & Instr. § 103:12 (6th ed.).

**INSTRUCTION #27:   CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.[26]

---

[26] Sample Miscellaneous Jury Instructions (Sleet, J.) (rev. January 18, 2006); Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware § 1.5 (March 1993).

**INSTRUCTION #28:     EVIDENCE IN THE CASE**

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to [and all facts and events that may have been judicially noticed].

Statements and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence. However, when the lawyers on both sides stipulate or agree on the existence of a fact, unless otherwise instructed, you must accept the stipulation and regard that fact as proved.

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.[27]

---

[27] 3 Fed. Jury Prac. & Instr. § 103:30 (6th ed.).

**INSTRUCTION #29:    QUESTIONS NOT EVIDENCE**

If a lawyer asked a witness a question containing an assertion of fact, you may not consider the assertion as evidence of that fact. The lawyer's questions and statements are not evidence.[28]

---

[28] 3 Fed. Jury Prac. & Instr. § 103:34 (6th ed.).

**INSTRUCTION #30:    DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Do not be concerned about whether evidence is "direct evidence" or "circumstantial evidence". You should consider and weigh all of the evidence that is presented to you. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.[29]

---

[29] Third Circuit Model Jury Instruction 1.6.

41

**INSTRUCTION #31:    INFERENCES AND PRESUMPTIONS**

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.[30]

---

[30] Third Circuit Model Jury Instruction 1.6.

**INSTRUCTION #32:     EXPERT WITNESSES**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. There is an exception to this rule for "expert witnesses." An expert witness is a person who by education and experience has become expert in some art, science, profession, or calling. Expert witnesses state their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the opinion entirely.[31]

---

[31] 3 Fed. Jury Prac. & Instr. § 104:40 (6th ed.).

43

**INSTRUCTION #33:    EVIDENCE ADMITTED FOR LIMITED PURPOSE**

As I instructed you earlier, certain evidence [identify evidence] was admitted concerning only for a particular purpose that is [insert purpose] and not generally against all parties or for all purposes. For the limited purpose for which this evidence has been received you may give it such weight as you feel it deserves. You may not, however, use this evidence for any other purpose or against any party not specifically mentioned.[32]

---

[32] 3 Fed. Jury Prac. & Instr. § 104:42 (6th ed.).

**INSTRUCTION #34:     DISCREPANCIES IN TESTIMONY**

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness's ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from

innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

**INSTRUCTION #35:    IMPEACHMENT BY WITNESSES'
INCONSISTENT STATEMENTS (FALSE IN ONE - FALSE IN ALL)**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or to do something, that was different from the testimony he or she gave at the trial.

If a witness is shown to have knowingly testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars, and you may, in your discretion, reject some or all of the testimony of that witness, or give it such credibility as you think it deserves.

Remember my previous instruction: In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider therefore whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

**INSTRUCTION #36:    IMPEACHMENT — BAD REPUTATION FOR TRUTH AND VERACITY**

A witness may be discredited or impeached by evidence that the character of the witness for truthfulness is bad. If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.[33]

---

[33] 3 Fed. Jury Prac. & Instr. § 105:06 (6th ed.).

**INSTRUCTION #37:    EFFECT OF PRIOR INCONSISTENT STATEMENTS**

Evidence that, at some other time while not under oath a witness who is not a party to this action has said or done something inconsistent with the witness's testimony at the trial, may be considered for the sole purpose of judging the credibility of the witness. However, such evidence may never be considered as evidence of proof of the truth of any such statement.

Where the witness is a party to the case, and by such statement or other conduct admits some fact or facts against the witness's interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party as a witness.

An act or omission is "knowingly" done, if the act is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.[34]

---

[34] 3 Fed. Jury Prac. & Instr. § 105:09 (6th ed.).

**INSTRUCTION #38:    EFFECT OF REFUSAL OF WITNESS TO ANSWER**

The law requires every witness to answer all proper questions put to the witness at trial, unless I rule the witness is privileged to refuse to answer on constitutional or other grounds.

The fact a witness refuses to answer a question after being instructed by me to answer it may be considered by the jury as one of the factors in determining the credibility of the witness and the weight his or her testimony deserves.[35]

---

[35] 3 Fed. Jury Prac. & Instr. § 105:10 (6th ed.).

**INSTRUCTION #39:     DEPOSITIONS AS SUBSTANTIVE EVIDENCE**

During this trial, you have heard testimony from the playing of videotape excerpts or the reading of written excerpts from depositions. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness testified in person here in the courtroom.[36]

---

[36] Fed. R. Civ. P. 32; 4 Leonard B. Sand *et al., Modern Federal Jury Instructions*, Inst. 74-14 (2006).

**INSTRUCTION #40:     ALL AVAILABLE WITNESSES OR EVIDENCE NEED NOT BE PRODUCED**

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.[37]

---

[37] 3 Fed. Jury Prac. & Instr. § 105:11 (6th ed.).

# PART II
# CASE SPECIFIC JURY CHARGE

**SUMMARY AND BURDENS OF PROOF**

**INSTRUCTION #41:    DESCRIPTION OF CASE; SUMMARY OF APPLICABLE LAW**

As we discussed at the outset, this case involves the consolidation of two separate cases that the parties filed.  In one case, Kars 4 Kids, Inc. sued American Can!.  In the other case America Can! Cars for Kids sued Kars 4 Kids, Inc. Therefore, this case is the consolidation of both of those lawsuit and, here, both parties are considered to be a Plaintiff/Defendant, and you will be asked to determine the outcome for both cases.

In this consolidated case, Kars 4 Kids, Inc. claims that America Can! Cars for Kids' use of the mark "CARS FOR KIDS" infringes on two marks that Kars 4 Kids claims to own, a registered word mark 1-877-KARS-4-KIDS and an unregistered Mark, KARS-4-KIDS.  Kars 4 Kids also alleges that America Can! Cars for Kids' activities constitute unfair competition and false designation under the Federal Lanham Act as well as state and common law and causes trademark dilution in violation of the Lanham Act and New Jersey state law.  Kars 4 Kids claims that it is entitled to injunctive relief and monetary compensation as a result.

During this case, you have heard Kars 4 Kids' advertising jingle. The jingle is not a trademark and is not at issue in this case.

America Can! Cars for Kids denies those claims made by Kars 4 Kids, Inc. and contends that Kars 4 Kids Inc.'s use of the word mark 1-877-KARS-4-KIDS

and the unregistered Mark KARS-4-KIDS infringe upon America Can! Cars for Kids' Mark, CARS FOR KIDS. America Can! Cars for Kids alleges in its lawsuit that Kars 4 Kids Inc. has also engaged in a number of activities that constitute unfair competition and false designation under the Federal Lanham Act as well as state and common law and causes trademark dilution of America Can! Cars for Kids' Marks in violation of the Lanham Act and New Jersey state law. America Can! Cars for Kids also seeks cancellation of the 1-877-KARS-4-KIDS Mark under 15 U.S.C. §1119 and seeks a judgment that Kars 4 Kids' 1-877-KARS-4-KID Mark be cancelled because Kars 4 Kids Inc. engaged in fraud on the United States Patent and Trademark Office when it applied for the mark.

I will now give you a brief summary of the elements that each party must prove to make its case:

For a party to recover on a claim of trademark infringement or unfair competition of a registered mark it owns, that party must show: (1) that the mark is valid and legally protectable; (2) that the mark is owned by the party asserting the claim; and (3) that the other party's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services.[38]   In general, the first two requirements, validity and legal protectability, are presumed

---

[38] *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir.1994).

where the mark has been federally registered.[39] However, a party may challenge the validity of a registered mark, which is what America Can! Cars for Kids is doing in this case.

As for the unregistered marks, the protectability of a trademark which is not registered depends on proof of secondary meaning, unless the unregistered mark is inherently distinctive.[40] To determine whether a mark is inherently distinctive, the trademark must be classified with respect to its degree of distinctiveness as: (1) arbitrary or fanciful; (2) suggestive; (3) descriptive; or (4) generic.[41]  I will describe these classifications in more detail shortly.  With respect to ownership of an unregistered mark, the first party to adopt a mark can assert ownership so long as it continuously uses the mark in commerce.[42]

As to each party's trademark dilution claim, that party must show that: (i) it is the owner of a "famous" mark; (ii) the other party is making commercial use in interstate commerce of the mark or trade name; (iii) the other party's use began after

---

[39] *Ford Motor Co. v. Summit Motor Products, Inc*., 930 F.2d 277, 291 (3d Cir. 1991), cert. denied, 502 U.S. 939 (1991).

[40] *Ford Motor Co*., 930 F.2d at 291 (citation omitted).

[41] *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 768 (1992).

[42] *Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) (quoting *Ford Motor Co*., 930 F.2d at 292).

the mark became famous, and (iv) the other party's use causes dilution by lessening

the capacity of the mark to identify and distinguish goods or services.[43]

---

[43] *See* 4 McCarthy on Trademarks and Unfair Competition § 24:89; *see also Hershey Foods Corp. v. Mars, Inc*., 998 F. Supp. 500, 504 (M.D.Pa.1998).

**INSTRUCTION #42:    BURDENS OF PROOF**

In any legal action, facts must be proved by a required weight of the evidence, known as the "burden of proof." In a civil case such as this, there are two burdens of proof that are used. The first is called preponderance of the evidence. The second is called clear and convincing evidence.

Here, each party is the plaintiff in its own case and has made affirmative claims against the other. Each party is also, therefore, the defendant in the other's case. Throughout these instructions, I may refer to plaintiff or defendant. When I use those words I am not referring to either party specifically, but rather, I am referring to each party generally when it is making proofs on the claims it initiated against the other.

Each party, as a plaintiff, has the burden of proving its own case by what is called a preponderance of the evidence. That means the plaintiff has to produce evidence which, considered in the light of all the facts, leads you to believe that what the plaintiff claims is more likely true than not. To put it differently, if you were to put the plaintiff's and the defendant's evidence on opposite sides of a scale, the evidence supporting the plaintiff would have to make the scale tip somewhat on its side. If the plaintiff fails to meet this burden, the verdict must be for the defendant. Each plaintiff must also prove its damages, if any, by a preponderance of the evidence.

As I will discuss in more detail later, one of the defenses that America Can! Cars for Kids has asserted—fraud on the United States Patent and Trademark Office—must be proven by "clear and convincing" evidence. "Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true. This is a higher burden than "preponderance of the evidence."

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case; therefore, you should put it out of your mind.[44]

---

[44] 1 Fed. Jury Prac. & Instr. Ch. 4 Appendix E (6th ed.) (modified).

**INSTRUCTION #43:    "IF YOU FIND" OR "IF YOU DECIDE"**

When I instruct you that a party has the burden of proof by a preponderance of the evidence on any proposition, or use the expression "if you find," or "if you decide," I mean that you must be persuaded, considering all the evidence in the case that the proposition is more probably true than not.[45]

---

[45] 3 Fed. Jury Prac. & Instr. § 104:04 (6th ed.).

**TRADEMARKS GENERALLY:**

**INSTRUCTION #44:    DEFINITION AND FUNCTION OF A TRADEMARK**

A trademark is a word, name, symbol, or device, or any combination of these items that functions as a designation of source of specific goods or services. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant so as to prevent consumer confusion and to protect the goodwill of the manufacturer or merchant.[46]

Marks may be federally registered with the U.S. Patent and Trademark Office,[47] or registered with individual State governments, and the owner of a registered mark may enforce its rights under applicable federal or state laws.  The federal law that governs the protection and enforcement of trademarks is known as the "Lanham Act."[48] Owners of both registered and unregistered marks may enforce rights under the Lanham Act against one who uses the same or a similar mark or designation in a manner that is likely to cause confusion as to the source, origin, or sponsorship of the goods or services.[49]

---

[46] Model Civ. Jury Instr. 9th Cir. § 15.1 (2018).

[47] 15 U.S.C. § 1051.

[48] 15 U.S.C. § 1114.

[49] 15 U.S.C. § 1125(a).

Marks are also protected at common law. In order to have common law mark protection, a business must adopt the mark, affix it to a product or service, and use it in commerce.[50]

Common law marks provide exclusivity only in the physical territory of actual use.[51]

---

[50] *See* Halpern, Nard & Port, *Fundamentals of United States Intellectual Property Law: Copyright, Patent and Trademark* § 1.1.

[51] *See Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 409–10 (1916) (first appropriator of trademark for flour by confining his use of trademark to certain territory lost right to enjoin use of trademark by another manufacturer who in good faith had built up extensive trade outside of first appropriator's territory*). See also United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 98 (1918) (senior user enjoined from entering into geographical territory of innocent junior user).

**INSTRUCTION #45:    HOW A TRADEMARK IS OBTAINED**

A person acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer. Rights in a trademark are obtained only through commercial use of the mark.[52]

---

[52] Model Civ. Jury Instr. 9th Cir. § 15.1 (2018).

**INSTRUCTION #46:    TRADEMARK OWNERSHIP—ASSIGNEE (15 U.S.C. § 1060)**

The owner of a registered trademark may transfer to another the owner's interest in the trademark, that is, the right to exclude others from using the trademark. This transfer is called an assignment, and the person to whom this right is assigned is called an assignee.

The assignment of a registered trademark must be in writing and signed. To be enforceable, the assignment must include the goodwill of the business connected with the mark, not just the mark itself, since trademark rights function as a designation of source of goodwill, not just the name of a product or service.[53]

---

[53] Model Civ. Jury Instr. 9th Cir. § 15.13 (2007); *see also* 3 McCarthy on Trademarks and Unfair Competition § 18:43 (4th ed. 2016); *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 150 (3d Cir. 1997) (explaining that trademark which was orally assigned, rather than acquired in connection with the sale of a business or otherwise transferred with the goodwill associated with the trademark, constitutes an invalid assignment in gross).

## INSTRUCTION #47:   TRADEMARK LIABILITY—THEORIES AND POLICIES (15 U.S.C. §§ 1114(1), 1125(A))

The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In these instructions, I will identify types of facts you are to consider in deciding if the defendant is liable to the plaintiff for violating the trademark law. These facts are relevant to whether the defendant is liable for:

1.    infringing plaintiff's registered trademark rights, by using a trademark in a manner likely to cause confusion among consumers; and

2.    unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of plaintiff's goods.[54]

---

[54] Model Civ. Jury Instr. 9th Cir. § 15.5 (2018); *see also* 15 U.S.C. §§ 1114(1), 1125(a).

## INFRINGEMENT AND UNFAIR COMPETITION AND DILUTION CLAIMS:

## INSTRUCTION #48:   INFRINGEMENT AND UNFAIR COMPETITION STATE AND FEDERAL CLAIM ELEMENTS THE SAME:

Claims for Trademark Infringement and claims for Unfair Competition under the Lanham Act share the same elements.[55] In addition, state law claims of unfair competition, trademark infringement, and false advertising under the New Jersey Fair Trade Act, N.J.S.A. 56:4-1 *et. seq.*, and common law unfair competition claims require the same elements of proof as the Lanham Act claims.[56]

---

[55] *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards.").
[56] *See J & J Snack Foods Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002).

**INSTRUCTION #49:    BASIC ELEMENTS OF INFRINGEMENT:**

To prove infringement and/or unfair competition, the party asserting the claim must prove, by a preponderance of the evidence, that:

(1) the claimed mark is valid and legally protectable,

(2) the party asserting the claim owns the mark, and

(3) the other party's use of the same or a similar mark is likely to create confusion concerning the origin of the goods or services of the party asserting the claim.[57]

---

[57] *MNI Mgmt., Inc. v. Wine King, LLC*, 542 F. Supp. 2d 389, 404 (D.N.J. 2008) (citing *Duffy v. Charles Schwab & Co., Inc.*, 97 F. Supp. 2d 592, 54 U.S.P.Q.2d 1820, 1824 (D.N.J. 2000)).

**INSTRUCTION #50:   PRESUMED VALIDITY AND OWNERSHIP OF REGISTERED TRADEMARK (15 U.S.C. §§ 1057, 1065 AND 1115)**

I have instructed you that each party must prove its claims by a preponderance of the evidence that the trademark is valid and protectable and that the plaintiff owns the trademark.

One way for a party to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark.[58]  Federally registered trademarks are presumed valid, although that presumption may be rebutted. Both parties have indicated it has a registered mark that has been used by the other:

America Can! Cars for Kids' Registered Mark:

Exhibit _ is a certificate of registration from the United States Patent and Trademark Office.  It was submitted by America Can! Cars for Kids as proof of the validity of the trademark Write Off The Car and Not The Kid and that America Can! Cars for Kids owns the trademark.

As to Kars 4 Kids Inc.'s Registered Mark:

---

[58] Model Civ. Jury Instr. 9th Cir. § 15.8 (2018); 15 U.S.C. § 1115; *N.V.E., Inc. v. Famous*, Civ. No. 08-1633(FLW), 2009 WL 2194538, at *3 (D.N.J. July 22, 2009).

Exhibit _ is a certificate of registration from the United States Patent and Trademark Office. It was submitted by Kars 4 Kids Inc. as proof of the validity of the trademark 1-877-KARS-4-KIDS and that the Kars 4 Kids Inc. owns the trademark.

However, America Can! Cars for Kids submitted evidence to dispute the validity of the alleged Kars 4 Kids Inc. registration. America Can! Cars for Kids alleges that the certificate cannot be considered proof of validity and ownership of the trademark because Kars 4 Kids Inc. engaged in fraud on the United States Patent and Trademark Offices when it applied for the registration.

To succeed on this defense, America Can! Cars for Kids must prove by clear and convincing evidence that Kars 4 Kids Inc. made material misrepresentations and/or failed to disclose material information to the Patent and Trademark Office, with the intent to deceive the Patent and Trademark Office.[59] Information that was misrepresented is "material" if it influenced the Patent and Trademark Office's decision to register the trademark. Information is "material" if it would have caused the Patent and Trademark Office not to register the trademark had it been disclosed.[60]

To demonstrate that a federal registration was fraudulently procured, America Can! Cars for Kids must prove with clear and convincing evidence that:

---

[59] 15 U.S.C. § 1115(b)(1); *Lorenzana v. S. Am. Restaurants Corp.*, 799 F.3d 31, 35 (1st Cir. 2015).
[60] *Lorenzana*, 799 F.3d at 35.

(1) it was the user of the same or a confusingly similar mark at the time the application verification was signed by Kars 4 Kids Inc.;

(2) it had legal rights superior to Kars 4 Kids Inc.'s rights at the time Kars 4 Kids signed the application for registration;

(3) Kars 4 Kids knew that America Can! Cars for Kids rights in the mark were superior to Kars 4 Kids Inc.'s and either believed that a likelihood of confusion would result from Kars 4 Kids Inc.'s use of its mark or had no basis for believing otherwise; and

(4) Kars 4 Kids Inc., in failing to disclose these facts to the USPTO, intended to procure a registration to which it was not entitled.[61]

---

[61] 6 McCarthy on Trademarks and Unfair Competition, § 31:75 (5th ed.); *see also Taza Sys., LLC v. Taza 21 Co., LLC*, Civ. No. 11-0073, 2012 WL 12892277, at *3 (W.D. Pa. Nov. 30, 2012); *Ohio State Univ. v. Ohio Univ.*, 51 U.S.P.Q.2d 1289, 1293 (T.T.A.B. 1999).

**INSTRUCTION #51:    VALIDITY OF UNREGISTERED MARKS**

Kars 4 Kids Inc.'s alleged trademark KARS 4 KIDS is not registered with the USPTO.

America Can! Cars for Kids' mark CARS FOR KIDS is not registered with the USPTO.

Unregistered trademarks can be valid and provide the trademark owner with the exclusive right to use that mark. I have instructed you that each party must prove by a preponderance of the evidence that its alleged unregistered mark is valid. A valid trademark is a word, name, symbol, device, or any combination of these items that is either:

1.    inherently distinctive; or

2.    descriptive, but has acquired a secondary meaning.[62]

Only if you determine that the party's alleged trademark is not inherently distinctive should you consider whether it is descriptive, but became distinctive through the development of secondary meaning. I will give you further instructions on how to determine this.

Only a valid trademark can be infringed. Only if you determine that a party proved by a preponderance of the evidence that its alleged trademark is a valid

---

[62] *MNI Mgmt., Inc.*, 542 F. Supp. 2d at 404.

trademark should you consider whether that party owns the mark, and if so, whether

defendant's actions infringed it.

## INSTRUCTION #52:   INFRINGEMENT—ELEMENTS—VALIDITY— UNREGISTERED MARK—DISTINCTIVENESS

**Strength as a Likelihood of Confusion Factor**

How strongly a mark indicates that a service comes from a specific source even if unknown is an important factor to consider in assessing its validity and for determining whether the mark used by a defendant creates for consumers a likelihood of confusion with the plaintiff's mark.

Each party here asserts a claimed mark is a valid and protectable mark for its charitable fundraising services. It is undisputed that both parties provide the same or similar services, e.g. fundraising by obtaining vehicles and re-selling them to fund the objectives of the organization that serves their respective constituencies. In order to determine if a party has met its burden of showing that the claimed mark is a valid mark, you should classify it on the spectrum of trademark distinctiveness that I will explain in this instruction.

**Spectrum of Marks**

Trademark law provides great protection to distinctive or strong trademarks. Conversely, trademarks that are not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses. Trademarks that are not distinctive are not entitled to any trademark protection. For deciding trademark protectability you must consider whether a trademark is inherently distinctive. Trademarks are grouped into four categories according to their relative strength.

These four categories are, in order of strength or distinctiveness: arbitrary or fanciful (which are inherently distinctive), suggestive (which also is inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning" which I will explain) and generic names (which are entitled to no protection).[63]

*Arbitrary or Fanciful Trademarks.* The first category of "inherently distinctive" trademarks is arbitrary and fanciful trademarks. They are considered strong marks and are inherently protectable. They involve the arbitrary, fanciful or fictitious use of a word to designate the source of a service. Such a trademark is a word that in no way describes or has any relevance to the particular service it is meant to identify. An arbitrary mark is a common word used in an unfamiliar way. A fanciful mark is a newly created (coined) word or parts of common words which are applied in a fanciful, fictitious or unfamiliar way, solely as a trademark.

For instance, the common word "apple" is generic when referring to a type of fruit, descriptive when referring to a type of juice, but arbitrary and protectable when referring to computers. The company Apple's use of the mark "Apple" for

---

[63] Model Civ. Jury Instr. 9th Cir. 15.10 (2018); *Two Pesos, Inc.,* 505 U.S. at 768 ("Marks are often classified in categories of generally increasing distinctiveness; following the classical formulation … they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful."); *MNI Mgmt., Inc.*, 542 F. Supp. 2d at 404 (quoting *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 472 (3d Cir. 2005)).

computers and software is arbitrary, because "apple" does not describe and is not related to the components, ingredients, quality, or characteristics of a computer. "Apple" is used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source. As another example, "Exxon" is a fanciful mark, because it is a made-up word that has no meaning apart from its function to identify the source of the products and services provided by the company under that name.

*Suggestive Trademarks.* The next category is suggestive trademarks. These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks. Unlike arbitrary trademarks, which are in no way related to what the service is or its components, quality, or characteristics, suggestive trademarks imply some characteristic or quality of the service to which they are attached. If the consumer must use imagination or any type of multistage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but merely suggests them.[64]

---

[64] *J & J Snack Foods Corp.*, 220 F. Supp. 2d at 380 ("requires imagination, thought or perception to reach a conclusion as to the nature of goods."); *MNI Mgmt., Inc.*, 542 F. Supp. 2d at 405 (citing *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 282 (3d Cir. 2001)) ("Suggestive marks suggest an idea of the qualities and characteristics of the goods, but require customer imagination, thought or perception to determine what the product is.").

A suggestive use of a word involves consumers associating the qualities the word suggests to the service to which the word is attached. For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple-A-Day" Vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" Vitamins.    Another example would be "MicroSoft," which originally was a short form of microcomputer software.  "MicroSoft" itself does not describe the products, but rather with some imagination or mental reasoning suggests what the goods or services are related to.

***Descriptive Trademarks***. The third category is descriptive phrases. As the name states, descriptive phrases identify or describe some aspect, characteristic, or quality of the service to which they are connected in a straightforward way that requires no exercise of imagination to be understood.[65]

For instance, the word "apple" is descriptive when used in the name of a juice, because it directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a service comes from, or the name of the

---

[65] *Vista India v. Raaga, LLC*, 501 F. Supp. 2d 605, 617 (D.N.J. 2007) (quoting *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 297 (3d Cir. 1986) ("A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.").

person who makes or sells the service. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from.

*Generic Names*. The fourth category is entitled to no protection at all. They are called generic names and they refer to a general name of the service, as opposed to the a brand for that service. Generic names are part of our common language that we need to identify all such similar services. A generic name is a name for the service on which it appears.

If the primary significance of the alleged mark is to name the type of service rather than the provider, the term is a generic name and cannot be a valid trademark. If the majority of relevant consumers would understand the term to name the type of service rather than the provider, the primary significance of the term is generic and not entitled to protection as a trademark.

The word "apple" can be used as a generic name and not be entitled to any trademark protection. This occurs when the word is used to identify the fruit from an apple tree.

The computer maker who uses the word "apple" as a trademark to identify its personal computer, or the vitamin maker who uses that word as a trademark on vitamins, has no claim for trademark infringement against the grocer who used that same word to indicate the fruit sold in a store. As used by the grocer, the word is

generic and does not indicate any particular source of the product.  Similarly, one grocer has no claim against another grocer for using the generic term "apple." As applied to the fruit, "apple" is simply a commonly used name for what is being sold.

**INSTRUCTION #53:   MARK DISTINCTIVENESS AND VALIDITY**

If you decide that claimed trademark is arbitrary or suggestive, it is considered to be inherently distinctive. An inherently distinctive trademark is protectable.[66]

On the other hand, if you determine that claimed trademark is generic, it cannot be distinctive and therefore is not valid nor protectable.[67] You must render a verdict for the defendant on the charge of infringement. In addition, if you find that America Can! Cars for Kids' use of the "CARS FOR KIDS" term does not function as a designation of source, but rather as a descriptive or generic term for America Can! Cars for Kids' services, which I will further explain later, then America Can! Cars for Kids cannot have infringed Kars 4 Kids claimed marks.

If you decide that claimed trademark is descriptive, you will not know if the trademark is valid or invalid until you consider whether it has gained distinctiveness by the acquisition of secondary meaning, which I will now explain.[68]

---

[66] *MNI Mgmt., Inc.*, 542 F. Supp. 2d at 405 (citing *Fisons Horticulture, Inc.*, 30 F.3d at 478*; Duffy*, 54 U.S.P.Q.2d at 1824).

[67] *Id.*

[68] *MNI Mgmt., Inc.*, 542 F. Supp. 2d at 405 (citing *Commerce Bancorp, Inc. v. BankAtlantic,* 285 F. Supp. 2d 475, 485 (D.N.J. 2003)*; Duffy*, 54 U.S.P.Q.2d at 1824).

## INSTRUCTION #54:    INFRINGEMENT—ELEMENTS—VALIDITY—DISTINCTIVENESS—SECONDARY MEANING

If you determine that a party's claimed trademark is descriptive, you must consider the recognition that the mark has among prospective consumers in order to determine whether it is valid and protectable even though it is descriptive. This market recognition is called the trademark's "secondary meaning."[69]

A word, name, symbol or any combination of these items acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public  associates the alleged trademark with a single source, in order to find that it has acquired secondary meaning.[70]

When you are determining whether KARS 4 KIDS and/or CARS FOR KIDS has acquired a secondary meaning, consider the following factors:

(1) the extent of sales and advertising leading to buyer association;

(2) length of use;

(3) exclusivity of use;

(4) the fact of copying;

---

[69] *Id.*
[70] *See MNI Mgmt., Inc.*, 542 F. Supp. 2d at 405.

(5) customer surveys;

(6) customer testimony;

(7) the use of the mark in trade journals;

(8) the size of the company;

(9) the number of sales;

(10) the number of customers; and

(11) actual confusion.[71]

No one factor is dispositive. The presence or absence of any particular factor should not necessarily resolve whether the alleged trademark has acquired secondary meaning.[72]

Descriptive marks are protectable only to the extent you find they acquired distinctiveness through secondary meaning by the public coming to associate the mark with the owner of the mark. Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark.

Each party has the burden of proving that its mark has acquired a secondary meaning, and that the other's mark lacks a secondary meaning.[73]

---

[71] *Commerce Nat.*, 214 F.3d at 438.
[72] *In re Steelbuilding.com*, 415 F.3d 1293, 1300 (Fed. Cir. 2005).
[73] Model Civ. Jury Instr. 9th Cir. § 15.11 (2018).

**INSTRUCTION #55:   INFRINGEMENT—ELEMENTS—OWNERSHIP— GENERALLY**

The law entitles the trademark owner to exclude others from using that trademark. A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace or by using it before the alleged infringer.

If you find the plaintiff's trademark to be valid that is, inherently distinctive you must consider whether the plaintiff used the trademark as a trademark for plaintiff's services before the defendant began to use its trademark to market its services in the area where the plaintiff offers its services.

A party asserting trademark rights must prove it is the owner of the claimed mark.  Competing claims of ownership of an unregistered mark are determined by priority of use and market penetration.[74]  Priority of use is determined by order of use of a claimed mark in commerce. "A 'senior user' is the first to adopt and use a mark anywhere in the country."[75]  The "junior user" is a user subsequent to the first to adopt the mark in the relevant geographic territory.[76]

The senior user must then show entitlement to trademark protection in a particular market by providing evidence of (1) market penetration in a particular

---

[74] *MNI Mgmt., Inc.*, 542 F. Supp. 2d at 405.

[75] *Three Rivers Confections, LLC v. Warman*, 660 F. App'x 103, 107 (3d Cir. 2016) (quoting *Lucent Info. Mgmt., Inc., v. Lucent Tech., Inc.*, 186 F.3d 311, 316 (3d Cir. 1999)) (quotations omitted).

[76] *ACCU Pers., Inc. v. AccuStaff, Inc.*, 846 F. Supp. 1191, 1213 (D. Del. 1994).

market, (2) reputation in a particular market, or (3) a 'zone of natural expansion' extending into a particular market.[77]

*Market Penetration.* Under the market penetration theory, the senior user must show "clear entitlement" to trademark protection within a specific market "under four factors as of the time the junior user first adopted and began using the trademark: (1) volume of sales; (2) positive and negative growth trends in the area; (3) the number of actual customers in relation to the potential number of customers; and (4) the amount of advertising in the area.[78]

*Reputation.* Under the reputation theory, the court considers whether a senior user's reputation has penetrated a particular market area prior to the junior user's first use of the mark. This theory recognizes that a user can build up an 'identifiable public image' with activities conducted solely in that user's own market, yet have that image travel to other markets via advertising and word of mouth.[79]

*Zone of Natural Expansion. Under* the zone of natural expansion theory, the court evaluates whether that party is entitled to a zone of natural expansion if the party has failed to establish market penetration in a particular market."[80] In

---

[77] *MNI Mgmt., Inc.*, 542 F. Supp. 2d at 406 (quoting *Laurel Capital Group, Inc. v. BT Fin. Corp.*, 45 F. Supp. 2d 469, 482 (W.D. Pa. 1999)).

[78] *Id.* (citing *Laurel Capital*, 45 F. Supp. 2d at 482).

[79] *Id.* (citing *Laurel Capital*, 45 F. Supp. 2d at 492).

[80] *Id.*

determining the zone of natural expansion, the court considers as of the date that the junior user adopted and used the mark, the following four (4) factors:

(1) the geographic distance from the senior user's actual location to the perimeter of the claimed zone;

(2) the nature of the business and the size of the senior user's zones of market penetration and reputation;

(3) the history of the senior user's expansion and assessment as to when the senior user could potentially reach the zone the senior user claims; and

(4) whether it would take a "great leap forward" for the senior user to enter the zone; that is, whether expansion into the claimed zone is the next logical step.[81]

If the plaintiff has not shown by a preponderance of the evidence that the plaintiff used the trademark before the defendant's use of the trademark, then you cannot conclude that the plaintiff is the owner of the trademark.

---

[81] *Id.* (citing *Laurel Capital*, 45 F. Supp. 2d at 493).

## INSTRUCTION #56:   INFRINGEMENT—LIKELIHOOD OF CONFUSION—*LAPP* FACTORS (15 U.S.C. §§ 1114(1) AND 1125(A))

You must consider whether the defendant's use of the trademark is likely to cause confusion about the source of the plaintiff's or the defendant's goods.[82] I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark;
>
> (2) the strength of the owner's mark;
>
> (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
>
> (4) the length of time the defendant has used the mark without evidence of actual confusion arising;
>
> (5) the intent of the defendant in adopting the mark;
>
> (6) the evidence of actual confusion;
>
> (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;

---

[82] *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008).

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors;

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.[83]

---

[83] *A & H Sportswear, Inc.*, 237 F.3d at 215 (citing *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983)).

## INSTRUCTION #57:    TRADEMARK DILUTION

An owner of a mark may bring a cause of action for trademark dilution. Dilution is the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of competition between the owner of the famous mark and other parties or the likelihood of confusion, mistake, or deception.[84]

To prevail on a claim for federal trademark dilution, the owner of the mark must prove that the following:

> (1) the mark is famous;
>
> (2) the other party is making commercial use in interstate commerce of a mark or trade name;
>
> (3) the other party's use began after the mark became famous; and
>
> (4) the other party's use is likely to cause dilution by lessening the capacity of the mark to identify and distinguish goods or services.[85]

A mark is famous when it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner.[86]

In deciding whether a  mark is "famous," consider the following factors:

---

[84] *American Cyanamid Co. v. Nutraceutical Corp.*, 54 F. Supp. 2d 379, 390 (D.N.J. 1999).
[85] *Dille Family Tr. v. Nowlan Family Tr.*, 276 F. Supp. 3d 412, 434 (E.D. Pa. 2017).
[86] 15 U.S.C. § 1125(c)(2)(A); *see also Vista India, LLC*, 501 F. Supp. 2d at 623-24.

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark.

(iv) Whether the mark was registered.[87]

A plaintiff can also establish dilution under New Jersey's dilution law. This requires the party to show that:

(1) the other party uses the mark;

(2) the mark is famous; and

(3) that the other party's use of the mark causes dilution of the distinctive quality of the mark.[88]

Under New Jersey state law the following factors may be considered to determine whether a mark is famous:

a. The degree of inherent or acquired distinctiveness of the mark in this State;

b. The duration and extent of use of the mark in connection with the goods and services;

c. The duration and extent of advertising and publicity of the mark in this State;

d. The geographical extent of the trading area in which the mark is used;

---

[87] 15 U.S.C. § 1125(c)(2)(A)(i)-(iv).

[88] *Platypus Wear, Inc. v. Bad Boy Club, Inc*., No. 08-cv-02662(NLH)(AMD), 2009 WL 2147843, at *3 (D.N.J. July 15, 2009).

e.  The channels of trade for the goods or services with which the registrant's mark is used;

f.  The degree of recognition of the registrant's mark in its and in the other's trading areas and channels of trade in this State; and

g.  The nature and extent of use of the same or similar mark by third parties.[89]

---

[89] N.J.S.A. 56:3-13.20.

**AFFIRMATIVE DEFENSES:**

**INSTRUCTION #58:    ACQUIESCENCE**

The parties both contend that the other party acquiesced to the other's use of its mark.

To establish an affirmative defense of acquiescence requires an (1) affirmative act that (2) reasonably conveys (expressly or implicitly) that the claimant has (3) consented to the defendant's conduct.

Among other things, you may consider whether:

(1) Any Party actively represented that it would not assert a right or a claim;

(2) Any Party's delay between the active representation and assertion of the right or claim was not excusable; and

(3) the delay caused undue prejudice to the other party.[90]

To succeed in an acquiescence defense, the party asserting this defense must demonstrate that the other party undertook some affirmative action that conveyed its implied consent to the other party to use the term.[91]

---

[90] *Covertech Fabricating, Inc. v. TVM Building Prods., Inc.*, 855 F.3d 163, 175 (3d Cir. 2017).

[91] *Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assur. Co.*, 943 F. Supp. 509, 519 (E.D. Pa. 1996), *abrogated by A & H Sportswear,* 237 F.3d 198 (emphasis added); *see also* McCarthy on Trademarks § 31.14[1] (Acquiescence is reserved "for use only in those cases where the trademark owner, by affirmative word or deed, conveys its implied consent to another.").

**INSTRUCTION #59:    LACHES**

Both parties contend that the other is barred from asserting infringement and unfair competition claims because it unreasonably delayed in asserting its claims.

In order to prove this defense the party asserting it must prove by a preponderance of the evidence that there was:

(1) inexcusable delay in instituting suit, and

(2) prejudice to the party defending the claim.[92]

---

[92] *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 337 (3d Cir. 2004).

**DAMAGES:**

**INSTRUCTION #60:     TRADEMARK REMEDIES**

If you find that the plaintiff owns a valid trademark, that the defendant has infringed it, and the defendant does not have a defense you must consider whether, and to what extent, monetary and other relief should be awarded.[93]

---

[93] *See, e.g.*, 15 U.S.C § 1117(a); *Banjo Buddies*, 399 F.3d at 175-176 (awarding defendant's profits to plaintiff). Pattern Civ. Jury Instr. 11th Cir. § 10.2 (2018).

**INSTRUCTION #61:    PLAINTIFF'S ACTUAL MONETARY DAMAGES**

You may award actual damages that the plaintiff has sustained. The plaintiff may recover the economic injury to its business proximately resulting from the defendant's wrongful acts. You are not required to calculate actual damages with absolute exactness—you may make reasonable approximations. But an award of actual damages to the plaintiff must be just and reasonable, based on facts, and proved by the plaintiff by a preponderance of the evidence.[94]

---

[94] Pattern Civ. Jury Instr. 11th Cir. 10.2 (2018).

**INSTRUCTION #62:     DETERMINING COMPENSATORY DAMAGES**

In determining actual damages, you may consider the following: (1) the injury, if any, to the prevailing party's reputation; (2) the injury, if any, to the prevailing party's goodwill, including injury to its general business reputation; (3) the lost profits that the prevailing party would have earned but for the infringement. Profit is determined by deducting all expenses from gross revenue; (4) the expense of preventing customers from being deceived; and (5) the cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement.[95]

In addition to the prevailing party's actual damages, you may also make an award based on an accounting of the defendant's profits.

In determining the defendant's profits, the plaintiff only is required to prove the defendant's gross sales. The defendant may then prove the amount of sales made for reasons other than the infringement. The defendant also may prove its costs or other deductions which it claims should be subtracted from the amount of it sales to determine its profits on such sales. Any costs or deductions that the defendant proves by a preponderance of the evidence are required to be subtracted from the sales

---

[95] *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1564 (11th Cir. 1986); *U–Haul Int'l, Inc. v. Jartran, Inc.*, 601 F.Supp. 1140, 1141 (D. Ariz. 1984); *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992).

attributable to the infringement and the difference is the amount that may be awarded to the plaintiff.

"'Corrective advertising' is a method of repair. Defendant diminishes the value of plaintiff's trademark, and advertising restores that mark to its original value."[96] There are "[t]hree elements to the justification for corrective advertising damages. First, the claimed wrongdoing (trademark infringement or false advertising) has resulted in confusion about certain facts in the marketplace. Second, the confusion has resulted (or will result) in altered economic decision-making by relevant consumers or users. Third, the confusion has had (or will have) nontrivial negative economic effects on a plaintiff. Given these elements, the amount of corrective advertising is the quantified cost of advertising a plaintiff would likely need to undertake to correct the marketplace confusion resulting from the wrongdoing by a defendant."[97]   An award of money for post-trial corrective advertising must be justifiable as "a surrogate for plaintiff's damages or defendant's

---

[96] *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992) (citing *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1374–76 (10th Cir. 1977); Comment, Money Damages and Corrective Advertising: An Economic Analysis, 55 U.Chi.L.Rev. 629 (1988)). "To justify damages to pay for corrective advertising a plaintiff must show that the confusion caused by the defendant's mark injured the plaintiff and that "repair" of the old trademark, rather than adoption of a new one, is the least expensive way to proceed." *Id.*; *see also Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*, No. 11-cv-3684(SRC)(CLW), 2016 WL 3545529, at *30 (D.N.J. June 29, 2016).

[97] D.S. Bosworth, et al., Corrective Advertising in Lanham Act Damages: The Use and Misuse of Past Advertising Expenditures, 107 ITA 3, 2017.

profit." [98]  The award of prospective costs should not exceed the damage to the value of the infringed mark.[99]

---

[98] *Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 740–41 (D. Del. 2005) (quoting *PBM Products, Inc. v. Mead Johnson & Co.*, 174 F. Supp. 2d 417, 420 (E.D. Va. 2001)

[99] *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995).

**INSTRUCTION #63:    NOMINAL DAMAGES**

If you find that the defendant infringed the plaintiff's trademark, but you do not find that the plaintiff sustained any actual damages or damages based on the defendant's profits, you may return a verdict for the plaintiff and award what are called "nominal" damages. By "nominal" I mean a small amount of damages that you, in your discretion, determine.[100]

---

[100] Pattern Civ. Jury Instr. 11th Cir. § 10.2 (2018).

**INSTRUCTION #64:    INTENTIONAL INFRINGEMENT**

If you find that defendant has infringed the plaintiff's trademark, you must also determine whether defendant acted with culpable conduct, meaning willfully, with bad faith, fraud, malice, or knowing infringement.[101] Defendant acted willfully if it knew that it was infringing Plaintiff's trademark or if it acted with indifference to Plaintiff's trademark rights.

---

[101] O'Malley, Grenig & Lee, 3A Federal Jury Practice and Instructions §§ 159.93 (5th ed. 2001); *see also Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280 (3d Cir. 2000) ("[C]ulpable conduct on the part of the losing party", meaning "bad faith, fraud, malice, or knowing infringement," is required before a case can meet the standards of being an "exceptional case under § 35(a)"); *Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 332 (D.N.J. 2006) (agreeing with *Securacomm Consulting, Inc.* that to qualify as an exceptional case and allow for an award of attorneys' fees, the court must find "culpable conduct" on the part of the infringing party).