1                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
2


3

_____
4   KARS 4 KIDS, INC.,
                    PLAINTIFF
5
      Vs.                              CIVIL NO.
6                                      14-7770 (PGS)
    AMERICA CAN!,
7                   DEFENDANT
_____
8


9


10                                JULY 24, 2019
                                  CLARKSON S. FISHER COURTHOUSE
11                                402 EAST STATE STREET
                                  TRENTON, NEW JERSEY  08608
12


13


14
    B E F O R E:        THE HONORABLE PETER G. SHERIDAN
15                      U.S. DISTRICT COURT JUDGE
                        DISTRICT OF NEW JERSEY
16


17


18


19
    **HEARING ON PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE ANY**
20  **OPINIONS ON DAMAGES**


21


22


23


24                    FRANCIS J. GABLE, C.C.R.
                      OFFICIAL U.S. REPORTER
25                       (856) 889-4761

```
 1
     A P P E A R A N C E S:  (BY TELEPHONE)
 2

 3       WALSH, PIZZI, O'REILLY, FALANGA, LLP
         BY:  ELEONORE OFOSU-ANTWI, ESQUIRE
 4       FOR THE PLAINTIFF

 5
         ORRICK, HERRINGTON & SUTCLIFFE, LLP
 6       BY:  PETER D. VOGL, ESQUIRE
              DAVID LITTERINE-KAUFMAN, ESQUIRE
 7       FOR THE PLAINTIFF

 8

 9       FOX ROTHSCHILD, LLP
         BY:  KAREN A. CONFOY, ESQUIRE
10            CHRISTOPHER R. KINKADE, ESQUIRE
              ALLISON L. HOLLOWS, ESQUIRE
11       FOR THE DEFENDANT

12
         THE PITTMAN LAW FIRM, PC
13       BY:  AUBREY NICK PITTMAN, ESQUIRE
         FOR THE DEFENDANT
14

15       YANAROS LAW, PC
         BY:  VALERIE YANAROS WILDE, ESQUIRE
16       FOR THE DEFENDANT

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  This is Judge Sheridan.

2          (Counsel say good morning.)

3          THE COURT:  So, this is Kars 4 Kids with a K versus

4    America Can! Cars with a C.  We should enter appearances;

00:00    5    we'll start with the plaintiff.

6          MS. OFOSU-ANTWI:  Good morning, your Honor, this is

7    Eleonore Ofosu-Antwi from Walsh, Pizzi, O'Reilly, and with me

8    is my co-counsel from Orrick whom I'll introduce themselves.

9          MR. VOGL:  Good morning, your Honor, it's Peter Vogl

00:00    10   and David Litterine-Kaufman on behalf of plaintiff Kars 4 Kids

11   on the line.

12         THE COURT:  Good morning Mr. Vogl and -- Mr. Kaufman

13   is it?

14         MR. VOGL:  Yes, your Honor.

00:00    15         THE COURT:  Okay.  And for the defendants?

16         MR. KINKADE:  Good morning, your Honor, Christopher

17   Kinkade, Karen Confoy and Allison Hollows from Fox Rothschild,

18   and I'll let co-counsel introduce themselves.

19         THE COURT:  Good morning.

00:01    20         MR. PITTMAN:  Your Honor, this is Aubrey Nick

21   Pittman for America Can! Cars For Kids.

22         MS. WILDE:  And Valerie Yanaros Wilde for America

23   Can! Cars For Kids.

24         THE COURT:  Good morning.

00:01    25         Anyone else?

1          All right.  Mr. Vogl, I believe we're looking at

2  your application.

3          MR. VOGL:  Yes, your Honor.  So, your Honor, may I

4  begin?

00:01    5          THE COURT:  You may.

6          MR. VOGL:  Thank you, your Honor.  Your Honor,

7  America Can!'s opinion on damages should be excluded in its

8  entirety and there are three reasons for that.  America Can!'s

9  claims for injunctive relief and monetary relief are barred by

00:02   10  laches because of America Can!'s 12-year delay.

11          If your Honor recalls from the 2003 letter when it

12  first knew that my client, Kars 4 Kids with a K, was using the

13  mark Kars 4 Kids, until 2015 when it brought its claim for

14  infringement in this case.  A finding of laches, your Honor,

00:02   15  in this case obviates the need for any remedies trial next

16  week.

17          Also, your Honor, pending before the Court is

18  plaintiff's motion in limine specifically requesting that the

19  Court exclude the 2018 expert opinions of America Can!'s

00:03   20  expert Bryce Cook, to the extent that those opinions recite a

21  damages theory that seeks Kars 4 Kids' nationwide profits.

22          We believe, your Honor, that that opinion, that is a

23  nationwide profits opinion, propounded by Mr. Cook at the

24  outset of the case, is irrelevant under 401 at this point,

00:03   25  because indeed the jury found that the only infringement in

1    this case was relegated to Texas.  He in his original report

2    did not identify, carve out in any way Texas in terms of

3    revenues or profits.

4         Also before the Court, your Honor, is something that

00:03    5    happened after we spoke with your Honor last Monday.  America

6    Can! has provided us for the first time with a supplemental

7    report as they call it, disclosing to us a now Texas theory of

8    damages.  We believe, your Honor, in light of the lateness of

9    that report and in view of the upcoming damages trial that is

00:04    10    set for next Tuesday, that that supplemental report is

11    untimely and prejudicial under Rule 403.

12         So we would argue, your Honor, for those three

13    reasons -- and I will give your Honor a little bit more detail

14    on each; but for those three reasons, your Honor, we believe

00:04    15    that it should be clear that the opinion of Mr. Cook, and

16    frankly any opinion on damages and a proposed injunction, is

17    no longer timely, is certainly not well founded, and certainly

18    precluded by laches.

19         And to that point, your Honor, the doctrine of

00:05    20    laches as your Honor knows bars a claim where there's

21    inexcusable delay and there's prejudice.  And in both

22    instances, your Honor, there is indeed inexcusable delay and

23    prejudice here.

24         Interestingly, your Honor, just turning to the

00:05    25    newest supplemental report that we got last Wednesday, you

*United States District Court*
*Trenton, New Jersey*

1    know, I'll remind the Court that the verdict in this case

2    where the jury did find that my client, Kars 4 Kids with a K,

3    infringed in Texas was delivered on May 28.  And, your Honor,

4    even in their opening remedies brief that the Court asked both

00:05    5    sides to provide the Court with an opening remedies brief

6    which was due on 6/28, there was no mention of a Texas only

7    theory.

8         And then there was an opposition brief that both

9    sides filed to their respective proposed remedies briefs on

00:06    10    7/12; again, no mention of a Texas theory whatsoever.  And

11    indeed, even in the opposition brief as I said that they filed

12    on 712, no indication of a Texas brief -- Texas remedy.

13    Indeed, in fact the America Can! folks continued to hold to a

14    national theory of damages in that brief.

00:06    15         So, your Honor, we feel that the Lanham Act does not

16    specifically identify a statute of limitations.  But what

17    courts have done -- particularly in New Jersey; what the

18    courts have done, your Honor, is use the New Jersey six-year

19    fraud statute as the basis to determine whether or not a

00:06    20    statute of limitations has applied in bringing your action.

21         The *Santana* case, which is 401 F.3d at 123, and

22    specifically at page 135, deals with this topic, as does

23    *Kaufhold*, K-a-u-f-h-o-l-d, *v. Caiafa*, which is C-a-i-a-f-a, at

24    872 F.Supp.2d 374, at 379, District of New Jersey case in

00:07    25    2012; the courts there have found that claims under the Lanham

1    Act are properly analyzed -- or analogized to New Jersey's

2    six-year fraud statute.

3           So, your Honor, what's happened is that, as I

4    mentioned at the outset, the 2003 letter where the America

00:07    5    Can!'s folks have written to my client and objected to our

6    client's -- my client's use of Kars 4 Kids in Texas, nothing

7    happened; nothing indeed happened between that 2003 and 2015

8    when they brought suit.  They sent a letter in 2013, but even

9    that letter in 2013 did not conclude in litigation by them

00:08    10   until we sued them first.  Perhaps they would have never

11   brought up this issue had we not brought this case to the --

12   brought the case in New Jersey.

13          So, the fact of the matter is they sat on their

14   hands, and in the meantime by sitting on their hands for that

00:08    15   period of time, which is 12 years, which is twice the statute

16   of limitations, my clients continued to use its mark and build

17   its national reputation, and incur between 50 and $60 million

18   worth of advertising and marketing costs in building their

19   brand, and America Can! did nothing.

00:08    20          So, we believe that, your Honor, based on that --

21   their own actions, America Can! has inexcusably delayed in

22   bringing the suit, and indeed caused prejudice to my client.

23   And with that prejudice comes now, your Honor, because they

24   have exceeded the time within the statute of limitations to

00:09    25   bring their action, there's a presumption that applies here.

1    And that presumption really goes to a presumption of laches

2    which they now have to overcome.

3         And we believe, your Honor, that based on the facts

4    of the case that were elicited at trial, that the delay and

00:09    5    the injury or the harm that delay has caused my client, that

6    they can't overcome, America Can! can't overcome that laches

7    issue, your Honor.  So, we believe that laches alone precludes

8    any testimony with respect to damages, and as a matter of fact

9    any remedies in this case pursuant to Third Circuit precedent.

00:09    10   So, your Honor, we think that laches alone resolves and

11   obviates the need for any further damages or discussion of a

12   scope of an injunction in this case.

13        If even the Court were to find that laches does not

14   apply here, we think that the report submitted by Mr. Cook

00:10    15   that speaks to a nationwide damages theory, is at this point

16   completely irrelevant to this case.  It doesn't fit as the

17   courts like to say the facts in this case, because the jury as

18   we know found infringement in only one state, Texas.

19        Obviously we can't infringe in the other 49 states,

00:10    20   and in fact we are coexisting with the other side in the other

21   49 states.  There is no basis to find that any damages or an

22   injunction should apply to the other 49 states.  So, any

23   nationwide theory that America Can! would continue to propound

24   in this case, is inappropriate at this point in view of the

00:10    25   jury's -- the jury's verdict.

*United States District Court*
*Trenton, New Jersey*

1            With respect to the supplemental report, it indeed

2    now creates and provides a new theory.  And indeed that

3    theory, just to compare Mr. Cook's 2018 report, that is the

4    report that he put in at the outset of the case, estimates

00:11    5    nationwide revenue and nationwide profits.  There is

6    absolutely no discussion of revenue or profits from any

7    individual state anywhere in that report.  In fact, Mr. Cook's

8    new opinions about Texas revenues and Texas profits in his

9    supplemental report, or -- don't appear anywhere in the 2018

00:11    10    report.

11            And it's not just a matter of dividing nationwide

12    revenues and profits by 50, it isn't that simple, nor does

13    frankly Mr. Cook say it's that simple.  Indeed what he does is

14    he uses -- you know, the documents that Mr. Cook uses for the

00:11    15    Kars 4 Kids revenue give aggregate nationwide revenue.  They

16    don't break it down by state.  So Mr. Cook needed to come up

17    with a methodology in his new report --

18            THE COURT:  I understand that, Mr. Vogl.

19            MR. VOGL:  Okay.

00:12    20            THE COURT:  I have a couple questions.

21            MR. VOGL:  Please.

22            THE COURT:  First, when we were going through

23    damages at the trial, it was actually before the trial began,

24    and it may have been a week or two before, but we decided that

00:12    25    we would put damages off to this new proceeding that we're

1 having next week.

2    MR. VOGL:  Yes.

3    THE COURT:  One of the reasons if I recall this

4 right, and I haven't checked the transcript, but it was my

00:12 5 thought, and I believe it was your argument that what Mr.

6 Pittman was seeking for Cars with a C was disgorgement.

7    MR. VOGL:  Right.

8    THE COURT:  And we thought that was an equitable

9 remedy.  And he had produced in Cook's report the income

00:13 10 generated nationally I suppose at that time by Kars 4 Kids

11 with a K.

12    MR. VOGL:  Yes.

13    THE COURT:  But he never produced, if I have this

14 correct in my mind, what the expenses were with regard to

00:13 15 same.  So, his report was just based on income, which seemed

16 to be really extraordinarily overbroad I suppose for lack of a

17 better word, or excessive, and it needed to be subject to

18 whatever the expenses were.

19    MR. VOGL:  Right.

00:13 20    THE COURT:  And I thought you had indicated at that

21 time what we really need to do for a remedy is maybe do some

22 type of an accounting.  And that's why you asked me if that's

23 an equitable remedy, maybe that's what we should be doing is

24 an accounting; right?

00:14 25    Is that still your position?

1          MR. VOGL:  Yes.  So your Honor, you're absolutely

2    correct.  This is Peter Vogl, your Honor.  Yes, disgorgement

3    is an equitable remedy, and that is the basis for our request

4    that the disgorgement portion was not an issue to be decided

5    by the jury, but by your Honor.  So your Honor's memory on

6    that is absolutely correct, that disgorgement is indeed an

7    equitable remedy and that is the indeed reason why we're now

8    talking after the jury has rendered its verdict as to what if

9    any remedies should apply here in terms of disgorgement.

10          THE COURT:  So how do we go about doing an

11   accounting?

12          MR. VOGL:  Well, your Honor, what the other side has

13   done here -- and again, I say the 990s -- if your Honor

14   recalls that phrase, the 990s are the tax returns if you will

15   for charitable organizations.

16          THE COURT:  I got it.

17          MR. VOGL:  And what the other side has done is

18   they've taken a look at those 990s and added up the revenues

19   based on those 990s and come to a dollar number.  Those 990s,

20   however, don't break down the revenues by state.  So, those

21   990s that Mr. Cook used speak to a nationwide revenues, not to

22   state-by-state revenues.

23          So, the theory that he used in the original report

24   was again a nationwide theory, so the 990s did form at least

25   some benchmark if you will for us to then discuss as to what

1    the appropriate costs should be and deducted from the overall

2    revenues, gleaned through the national revenues.

3           THE COURT:  So can I do that by appointing an

4    accounting firm?

00:15   5           MR. PITTMAN:  Your Honor, this is Mr. Pitman --

6           THE COURT:  I'm talking to Mr. Vogl right now.

7           MR. PITTMAN:  I apologize.  I apologize.

8           THE COURT:  Mr. Vogl, can I appoint an accounting

9    firm to look at what the income was and what the expenses were

00:16   10   in Texas?

11          MR. VOGL:  Well -- so the answer is, your Honor, I

12   think both sides have done just that, I think both sides have

13   appointed -- you know, we have obviously a rebuttal witness,

14   Mr. Hall, who has submitted a report in this case.  So I think

00:16   15   that both sides have submitted, you know, expert reports.  I

16   mean certainly your Honor -- if your Honor wanted to pick his

17   own independent --

18          THE COURT:  I don't think Mr. Cook has submitted an

19   accounting of revenues in Texas.  I thought his numbers were

00:16   20   based on estimates that he had --

21          MR. VOGL:  Correct.

22          THE COURT:  So I don't think that's -- I'm having

23   trouble accepting the estimates.

24          MR. VOGL:  No, I agree with your Honor, and in fact

00:17   25   we haven't even been able to test the theory that he's put

1  forward in his supplemental report.  I won't bore you with the

2  details, but our expert has been unavailable to us so we

3  haven't even had a chance to sit down with him yet.  But the

4  point is that certainly there have been assumptions that Mr.

00:17  5  Cook makes and methodologies that he is proposing that we

6  certainly would want to take on in any -- any discussion with

7  respect to what's the appropriate, if any, damages in Texas.

8  Because again, being that we're now just talking about Texas,

9  none of that's been done yet.

00:17  10  THE COURT:  Why can't we have somebody just look at

11  -- you have all the records together; right?  So why can't we

12  just have an accountant look at the records, determine what

13  income came from Texas, and then look at the expenditures and

14  see which expenditures related to Texas, and, you know,

00:18  15  subtract that out, then we come up with a number.

16  Why can't that happen?  Why do I need estimates?  It

17  seems to me it's straightforward, unless I'm -- you know, I'm

18  not an accountant, I don't know exactly if all the records are

19  accurate and stuff like that.

00:18  20  MR. VOGL:  So your Honor, that could work.  I guess

21  the only thing I would propose to your Honor though is that

22  the idea of whether they're even entitled -- you know, whether

23  the equity would allow them, again, this should not be a

24  penalty, it's got to be somewhat reasoned in terms --

00:18  25  THE COURT:  You can argue that all you want.  I just

1   want to know about a remedy first, and then I'll get into your

2   legal arguments.

3          MR. VOGL:  Sure.

4          THE COURT:  Because your legal argument also impacts

00:18   5   what I'm going to do on laches.  When I'm reading it, it seems

6   to be a hypothetical question to me.  I don't have any -- what

7   am I barring exactly, and what am I allowing in exactly, I

8   don't know.

9          But if I had an accountant go back from 2000 or 2003

00:19   10  and tell me what the expenses were each year, what the income

11  was each year, then we can see the impact of the laches and

12  make a decision on it.  It would be helpful in determining

13  this.

14         MR. VOGL:  The only thing I would suggest, your

00:19   15  Honor, is that I don't know if we have a granular -- that

16  level of granularity in terms of what actually was, you know,

17  distributed -- or excuse me, what was donated from Texas

18  specifically.  So I'm a little bit -- I guess I would want to

19  confirm, your Honor, that that evidence is in the record.  I'm

00:19   20  not sure that it is at that level of detail that would allow

21  an accountant --

22         THE COURT:  Mr. Vogl, I don't think it needs to be

23  in the record at the present time.  If your client has the

24  information, then we can make that available for the expert to

00:20   25  look at it.  Even if it hasn't been --

*United States District Court*
*Trenton, New Jersey*

1          MR. VOGL:  Understood.

2          THE COURT:  You know what I mean, as long as they

3     know it's there.

4          MR. VOGL:  Yeah.  And I think the answer is it

00:20   5     likely is there, your Honor.  I just don't know sitting here

6     -- I can't you know represent to your Honor with full hundred

7     percent certainty that it exists in that -- in that way, but I

8     would imagine it should or would.  So I think to your Honor's

9     point, if your Honor wants that level of detail, you know, I

00:20  10     would -- obviously I'll inquire immediately.

11          THE COURT:  All right.  Do you have any other

12     arguments before I hear from your adversary?

13          MR. VOGL:  Well, your Honor, I think I -- I guess I

14     would just reiterate that I think that the case law in the

00:20  15     Third Circuit does indeed provide the Court with sufficient

16     basis to find laches here.  And I do think that, you know, the

17     report for the 328 million that they sought in the national

18     theory that they put forward originally should be stricken.

19          And if we're going to get down to just discussing

00:21  20     what in Texas is in the way of damages, obviously we feel that

21     no damages apply here at all, your Honor, but we can

22     certainly -- and I will, your Honor, seek that additional

23     information from the client so that we can -- we can move

24     forward.

00:21  25          THE COURT:  All right.  Well, I haven't made a

*United States District Court*
*Trenton, New Jersey*

1   decision on that yet, I was just --

2            MR. VOGL:  Sure.

3            THE COURT:  -- trying to test out some

4   methodologies.

00:21    5            MR. VOGL:  I guess, your Honor -- and I don't want

6   to throw a monkey wrench into this, but if we were going to do

7   it that way I would submit to your Honor one thing -- a couple

8   things.  You know, we'll need to take Mr. Cook's deposition if

9   his supplemental report stands and is going to be proposed in

00:21   10   this case and the Court's going to allow that to take place,

11   we're going to want to take his deposition on that report.

12            We'll also want to put in our own report, so that

13   the Court has the benefit of not only Mr. Cook's report on

14   Texas but our own report.  And then that will have some impact

00:22   15   frankly, your Honor, in our -- in our ability to be prepared

16   for next Tuesday, which I think is coming up very quickly and

17   won't be able to get all this done by then.

18            So, I guess I would just throw out, your Honor, that

19   if we're going to have an independent accountant look at this

00:22   20   information and/or even if we are not and we're just going to

21   proceed with us dealing with Mr. Cook's supplemental report, I

22   would ask your Honor to -- we're going to need to adjourn

23   Tuesday and move it to another date.  But I throw that out

24   there as a proposal, your Honor.

00:22   25            THE COURT:  Okay, thank you.

1          MR. VOGL:  Sure, thank you.

2          THE COURT:  Mr. Pittman?

3          MR. PITTMAN:  Yes, your Honor.  Your Honor, and of

4   course I'd certainly be happy to address the laches argument,

00:22      5   I think it's completely inapplicable here.  Mr. Vogl will

6   acknowledge that they brought a claim in 2014 allegedly for

7   acts that happened in 2003.  So if he were correct that laches

8   applied, then they are guilty of pursuing a lawsuit that they

9   knew they were -- that was untimely from the start, because it

00:23     10   was the same act.

11          So clearly that has never been the case.  Laches has

12   never applied to either party's claims in this case.  Again,

13   he wouldn't have been able to bring his lawsuit --

14          THE COURT:  So Mr. Pittman, I was a little confused

00:23     15   in your brief.  Are you arguing that the damages should go

16   back to 3/28/2013, when Cars with a C advertised in Houston,

17   or 2011 when you found out Kars with a was using your domain

18   name; or how far are you going back on your damages?

19          MR. PITTMAN:  To 2008, your Honor.

00:24     20          THE COURT:  To 2008.  How did you reach 2008?

21          MR. PITTMAN:  Which would have been the time that --

22   there's a six-year period, we would be allowed to recover

23   damages within the six-year period of the act that we were

24   alleging.  And that was the 2000 -- we sent that 2013 cease

00:24     25   and desist letter, so it would be six years prior to that.  So

1    roughly the end of 2007 would be the time.

2         So Mr. Cook calculated damages from 2008, and so

3    that's would be the period, your Honor.  But absolutely there

4    was some infringement and these are distinct acts of

00:24    5    infringement.  Some was more narrow just in one city.  The

6    first in 2003 that Mr. Vogl is referring to was one act in

7    2003 that stopped, that act stopped.  So there was no cause of

8    action once that action stopped in 2003.

9         There's no evidence showing that in 2004, for

00:25   10    instance, they advertised in Dallas.  It's just not there.  So

11    that act stopped.  So it wasn't until much later in the 2011

12    or so timeframe that Cars with a C became aware of this.  So

13    again, clearly laches doesn't apply.  I'm not sure why Mr.

14    Vogl is assuming that it does, your Honor --

00:25   15         THE COURT:  Well, the next time you knew there was

16    damages in Texas was 2011; is that what you're saying?  Why

17    would I go back beyond that if there's no proof of damages.

18         MR. PITTMAN:  Your Honor, there is proof.  So the

19    way it works is is we would be -- if we find out today, then

00:25   20    there's a six-year statute of limitations.  So you'd capture

21    any infringement that happens within six years of the time of

22    the lawsuit, when you file the lawsuit.  You can going back

23    six years, because that's the statute of limitations for it.

24         So if you find that an act happened -- for

00:26   25    instance, if I file a lawsuit today in 2019, I could file the

1   lawsuit with respect to any act that --

2            THE COURT:  Don't go to today, Mr. Pittman, I don't

3   want any hypotheticals.

4            MR. PITTMAN:  Yes, your Honor.

5            THE COURT:  Tell me about --

6            MR. PITTMAN:  I apologize.

7            THE COURT:  Go into the case.

8            MR. PITTMAN:  Right.  In 2014 when the lawsuit was

9   filed, the counterclaim was filed, that allowed America Can!

10  to include or receive damages for any infringement that

11  occurred within six years of that time period.  So that's why

12  Mr. Cook went back to 2008.  So it would be 2008 forward.

13           THE COURT:  But you said the next time you heard

14  about Kars 4 Kids was when you saw that they advertised in

15  Houston, which was 3/28/13.  So why isn't that the last -- if

16  we're only dealing with Texas and that's the next time they

17  advertised there, why would we go beyond that?

18           MR. PITTMAN:  Well, your Honor, the reason why we

19  did -- and again, it's all -- as the Court knows it's an

20  equitable remedy, so the Court can look at the facts and the

21  Court can pick some other point.  But for purposes of the

22  legal argument, the legal argument is that if there was some

23  infringement -- so, take the 2013 letter when we found out

24  about it, when we found out about that act in Houston; that

25  caused America Can! to do further investigation, and they

1   found out that there had been previous infringement.

2           And as Mr. Vogl pointed out in his opening and

3   closing argument, they were doing some -- Kars with a K, they

4   were using our right in 2007 and 2008 and 2009 in Chicago and

00:28   5   in New Jersey.  So that allowed --

6           THE COURT:  You're not entitled to damages, as best

7   as I can tell, unless you have another argument for this that

8   I haven't considered, except for in Texas.  So when you say

9   they were using your rights in Chicago, that doesn't help me

00:28   10   with your damages as far as I see it.

11           MR. PITTMAN:  Well, your Honor, that gave us notice.

12   So that's -- that's the one thing -- I was speaking of the

13   notice which allows us to go back.  So if the Court limits the

14   damages to Texas, which, you know, we're prepared to

00:28   15   demonstrate to the Court why that shouldn't be true, but if

16   the Court were to do that then it would still be that we would

17   be entitled to the infringement in Texas.

18           So to the extent we are able to show infringement in

19   Texas six years prior to that time, we still get those back

00:29   20   damages for Texas for 2008 through the time of trial.

21           But your Honor, you know, again, our position is

22   that if you look at it -- in this case, and there are a couple

23   of things that Kars with a K that they -- they're omitting

24   from their argument.  And that is that the jury decided -- and

00:29   25   as the Court knows, Kars with a K started out with a national

1    registration, a federal registration, which gave them a

2    presumption that they owned nationwide rights.

3            The jury said they did not own that.  They did not

4    own any nationwide rights whatsoever.  Any infringement, your

00:29    5    Honor, is fruit of the poisonous tree.  When they started in

6    Texas in 2003, the infringement that they started doing was

7    infringing America Can!'s rights.

8            But now Kars with a K is asking the Court to give

9    them nationally 49 states that the jury didn't find for them.

00:30    10   They had a presumption under the law, a federal registration

11   gives a presumption that you own rights nationally.  The jury

12   rejected that and said that Kars with a K did not own any

13   rights nationally; but Kars with a K is asking the Court to

14   allow them to keep that fruit of the poisonous tree, to allow

00:30    15   them to keep it.

16           This was not a wash, your Honor.  The jury -- again,

17   they started off with -- we had common law rights, so we

18   didn't have a presumption of national rights.  Kars with a K

19   had a presumption of national rights.  The jury rejected that

00:30    20   and said they didn't have any national right.  But what Kars

21   with a K is asking the Court to do now, is to give them those

22   national rights, allow them to keep that national revenue that

23   the jury said they were not entitled to because they did not

24   prove that their national registration that they had obtained

00:31    25   from the USPTO, the jury said they did not have that right.

1        And so -- and again, as your Honor knows, this is an

2    equitable claim, so we're prepared to argue to the Court from

3    the actual facts of the record.  And that's what -- in there's

4    two cases that they've cited, the *Natural Footwear* case and

5    the *Covertech* case, both say the same thing, your Honor.  It

6    says that the court has to look at whether a -- the party's

7    rights were infringed are entitled to damages outside of a

8    certain geographical area.

9        There are specific facts that the Court has to look

10    at.  In the *Natural Footwear* case that Kars with a K is citing

11    to, it doesn't say what they're saying it says.  It doesn't

12    say that a court can't give -- can't find nationwide

13    infringement and give that even though there was infringement

14    found in one state.  In that case, the facts -- and again,

15    these are all fact specific cases.

16        In the *Natural Footwear* case the court found that

17    the winner made no serious effort to do business beyond New

18    Jersey.  That's not the case here.

19        THE COURT:  But Mr. Pittman, you can talk to me all

20    day; I read that in the briefs, I just don't -- I'm not

21    accepting that.

22        MR. PITTMAN:  Right.  And your Honor --

23        THE COURT:  If you want damages, I think you're

24    entitled to them under the jury verdict for Texas, and Texas

25    alone.

1          MR. PITTMAN:  Right.  Right.

2          THE COURT:  I think I'll just limit it to Texas.

3          MR. PITTMAN:  Right.  And that's certainly -- your

4    Honor, again, in equity that's completely proper and

00:32    5    appropriate if the Court decides that.  So we're not arguing

6    that part, we're just -- we're letting to Court know that the

7    law doesn't say that, but in equity the Court can do -- you

8    know, can do what it wants to do, what it thinks is

9    appropriate.

00:33   10          Now, turning to the actual accounting and the

11   expenses, Mr. Vogl is incorrect when he said to the Court that

12   Mr. Cook did not take that into account.  Mr. Cook did take

13   expenses into account, your Honor.  We've said that multiple

14   times, I'm not sure why Mr. Vogl keeps saying he didn't, he

00:33   15   did.

16          And here's the issue, your Honor, and I don't

17   think -- certainly the Court has the right to appoint an

18   expert, accounting expert, to assist the Court, and if the

19   Court were to do that we certainly wouldn't object to it.

00:33   20   However, if you look at the reports, if you look at the report

21   of Mr. Cook and Mr. Hall, you will see, your Honor, that

22   there's no disagreement in terms of the actual revenue.

23   There's no disagreement.

24          There's no disagreement in terms of the expenses.

00:33   25   Mr. Hall applied expenses, Mr. Cook applied expenses.  The

1   disagreement is the type of expenses that should be -- not the

2   amounts, but the type of expenses, the categories of expenses.

3   Mr. Hall is arguing that certain categories of expenses should

4   be deducted, and Mr. Cook is saying those categories.  Again,

5   not amounts, but the categories.  They don't disagree as to

6   the amount.  That is up until 2016.

7          What Mr. Cook did is for the Texas specific, and Mr.

8   Cook did that to assist the Court if the Court were to decide

9   in its discretion to limit it to Texas.  That's what Mr. Cook

10  -- Mr. Cook didn't have any other reason to do that.  Your

11  Honor, we tried to perform a service to the Court if the Court

12  decided to limit it.  Again, our argument is not that it

13  should be limited, but again to assist the Court, Mr. Cook

14  provided that.

15         Now, what Mr. Vogl fails to tell the Court is that

16  Mr. Cook and Mr. Hall both relied on actual revenues.  So

17  again, it's not, you know, projected revenues at least up

18  until 2016.  So there are actual revenues in the record from

19  the 990s from K4K.

20         So their revenues, your Honor -- through their

21  revenues they produce what is effectively a

22  revenue-per-vehicle number.  So they took the total revenues,

23  again, both of them used the same revenues, and Mr. Cook was

24  able to determine, just as Mr. Hall will be able to, he took

25  the total revenue, divided by the total number of cars and he

1   got a revenue-per-vehicle number.

2           Then Mr. Cook applied that to the actual vehicles

3   that were obtained in Texas by K4K.  These are from K4K's

4   records, your Honor, these are not numbers that Mr. Cook made

5   up or America Can! these are actual numbers, Mr. Cook used

6   actual numbers.

7           And now Mr. Cook, because he didn't have the last

8   couple of years from K4K, because again, it's their burden,

9   they've got to produce the records, they've got to produce the

10  expenses; he did not have their records which K4K could easily

11  give Mr. Cook their records.  So based on previous years Mr.

12  Cook just made a projection for the last two years, since his

13  report was filed.

14          But we're talking, your Honor, about actual

15  revenues.  So this is not hypothetical revenues, Mr. Cook

16  didn't come up with any hypothetical revenues, these are

17  actual revenues that we can show the Court on paper.  So that

18  whether it's the Court or whether it's an independent

19  accountant, we'd be able to show the Court the actual revenues

20  that K4K received; be able to show the actual expenses that

21  K4L in incurred in producing that revenue.

22          So it's just a matter for this Court or the

23  accountant saying whether these -- I think there are two

24  categories of expenses that Mr. Cook says shouldn't be

25  deducted, Mr. Hall should be deducted.

1          So your Honor, I thought during the course of the

2    trial Mr. Vogl had argued that the accounting should be done,

3    and at that time the Court can hear from the experts.  And so

4    I think we're at that point where the Court can hear from

00:37    5    these two experts; Mr. Hall will say why these certain

6    categories of expenses should be deducted, and Mr. Cook will

7    say why they shouldn't be deducted, and the Court can make a

8    decision either to deduct them or not.

9          It's not really an accounting exercise that the

00:37    10    Court would have to undertake, it's just a matter of whether

11    the Court thinks that, you know, these program expenses should

12    be deducted or not.  And we can put on evidence from our fact

13    witness as to what those expenses consist of, and then the

14    Court can make a determination as the Court does every day

00:37    15    whether this is -- whether it looks appropriate to deduct, you

16    know, warehouse expense for instance, in determining the net

17    revenue or not.

18          So it's not going to be a complicated process, I'm

19    not sure why Mr. Vogl is making it more complicated, but it's

00:38    20    the actual K4K revenues that we're looking at.  And then Mr.

21    Cook, again, as it relates to Texas, he didn't change

22    methodology.  The original calculations would have allowed

23    both experts to come up with a revenue-per-week vehicle

24    number.  It's just a matter of taking a total revenue,

00:38    25    dividing it by the total number of donations.  That's all it's

1    a simple mathematical calculation that's done.

2            The only thing that Mr. Cook did that made it

3    different with the latest report that he produced, is for the

4    last two years I believe he had to do projections based on --

00:38      5    but those projections were based on historical information

6    from K4K.  Again, he didn't base it on America Can!'s

7    information, he based it K4K's information that they provided

8    to us during discovery.

9            THE COURT:  Okay.  Mr. Vogl, any rebuttal?

00:39     10    MR. VOGL:  Yes, your Honor.  So what Mr. Pittman is

11    describing is in the nationwide study that was done

12    originally.  This methodology and revenue by vehicle, all this

13    detail as to Texas is nowhere to be found anywhere or nor

14    could it be found in the original report.  So, you know, to

00:39     15    somehow suggest that this is all simple is not the case,

16    because now we're just talking about Texas.

17            And none of this Texas theory that Mr. Cook is

18    putting forth has been subject to any cross-examination.  And

19    frankly, your Honor, there is cross-examination and, you know,

00:39     20    advice of our expert that's going to be needed before we get

21    to that point.  So the simplicity at which Mr. Pittman

22    describes this is absolutely not the case.  There's some work

23    ahead of us before we get to that point.

24            So frankly, your Honor, I think that -- you know,

00:39     25    the methodologies used by Mr. Cook in the Texas report, his

**1**  projections used in that report, you know, all of that detail

**2**  needs to be -- needs to be vetted.  And, you know, so far

**3**  since we just got this report last Wednesday, we haven't had

**4**  an opportunity to do so that.

00:40   **5**          So my hands are a little bit tied in terms of

**6**  commenting in any greater detail, but that certainly is ahead

**7**  of us, your Honor.

**8**          THE COURT:  All right.

**9**          MR. PITTMAN:  Again, your Honor, the -- I apologize.

00:40   **10**          THE COURT:  Go ahead, Mr. Pittman.

**11**          MR. PITTMAN:  The Texas donations, your Honor, are

**12**  in the record, these are their records; it's always been

**13**  there.  We've got donations from every state, each of the 50

**14**  states.  So I'm not sure what Mr. Vogl is saying is not there;

00:40   **15**  it's there.  It's always been there.  Mr. Hall looked at it,

**16**  their expert looked at it, our expert looked at it.  They

**17**  didn't break it out, but it's there clearly in the record.  It

**18**  takes three seconds to find the Texas donations for each year.

**19**          So I'm not sure --

00:40   **20**          THE COURT:  Well, if you have the donations I can

**21**  probably see that; but how about what expenses they had with

**22**  regard to each donation, is that set forth in the records that

**23**  you have, Mr. Pittman?

**24**          MR. PITTMAN:  Correct, your Honor.

00:41   **25**          THE COURT:  It is?

1                MR. PITTMAN:  Yes, your Honor.

2                THE COURT:  Why didn't you estimate the revenues per

3    vehicle when you just do the actual calculation?

4                MR. PITTMAN:  It is -- the calculation does show

5    revenue per vehicle.

6                THE COURT:  I thought you said that the estimated --

7    you took the total number of cars, divided it into the total

8    revenue and then came up with what received per vehicle.  Why

9    didn't you just --

10               MR. PITTMAN:  Yes, your Honor.

11               THE COURT:  -- get the Texas cars, find out the

12   actual expenses, then you can find out what the revenue was

13   per vehicle in Texas.

14               MR. PITTMAN:  Absolutely, your Honor, and that's

15   exactly what Mr. Cook did.  Again, the methodology didn't

16   change.  Mr. Cook originally back in 2017 and 2018, he

17   determined the actual revenues, based on Kars 4 K's records.

18   He determined the actual number of donations based on K4K's

19   records.  So again, all you have to do is divide it into it.

20               So what Mr. Cook has done now, again, to assist the

21   Court if the Court decided to just limit it to Texas, Mr. Cook

22   took again the actual donations from Texas, only from Texas,

23   and he multiplied that by the revenue per vehicle, which is

24   what was always decipherable from his original report.

25               Again, it's not -- it's not rocket science, your

1   Honor, Mr. -- and it's the same with the expenses.  You take

2   the expenses, you take the total expenses, divide those by the

3   number of vehicles and you get the expenses per vehicle.  And

4   so if you do that for Texas, your Honor -- and again, it took

5   Mr. Cook 10 minutes to do that.  It would take Mr. Hall --

6   because Mr. Hall already has the information.

7          So I'm not sure why Mr. Vogl again is suggesting

8   that it's rocket science by his expert, his expert has been

9   doing this for over 20 years.  He can certainly take the total

10  revenue, divide it by the number of vehicles that K4K reported

11  to us.  They reported that to us, it's not something we got

12  from a third-party source.  That's what they provided, K4K

13  provided to our expert to look at.

14         So their expert could take the same actual revenues,

15  divide it by the number of vehicles, and again just for Texas,

16  and come up with that.  So he can take the actual revenues,

17  the national revenues, divide it by per vehicle and gives a

18  revenue per vehicle.  And you look at the number of vehicles

19  that were obtained in Texas, again, from their records, and

20  multiply that times the revenue per vehicle and you get it.

21  So it's very simple, your Honor.

22         THE COURT:  Here's what I think what we should do

23  for next week; I would ask that Mr. Cook and -- I forget Mr.

24  Vogl's

25         MR. VOGL:  Hall.

**1**          MR. PITTMAN:  Hall, your Honor.

**2**          THE COURT:  Hall; if he can -- what I think I need

**3** to know is as close as reasonably practicable, the damages

**4** that are -- or I guess the revenues of Kars 4 Kids with a K,

00:44     **5** in Texas.  And I'll start with your year, Mr. Pittman, 2008;

**6** I'm not sure I'll accept that date, but we'll do the

**7** calculation from 2008.  It should be reduced by expenses of

**8** Kars 4 Kids, and then I believe that gives us -- that should

**9** get us to net profits.

00:45    **10**          MR. PITTMAN:  Correct.

**11**          THE COURT:  But I'd like to see each party's

**12** calculation of that, you know, like on a piece of paper; this

**13** is what we would do in order to find it for Texas; and just

**14** come out with a theory on it.  And if we could just do that in

00:45    **15** that sense, then I believe -- we won't be able to meet next

**16** week, but we should be able to then determine whether we can

**17** use the two experts, or whether I need to appoint a

**18** third-party to do this calculation and the accounting on it,

**19** by just evaluating that and listening to you folks.

00:46    **20**          MR. PITTMAN:  Right.  And your Honor --

**21**          THE COURT:  Does that make any sense?

**22**          MR. VOGL:  Sure, your Honor --

**23**          MR. PITTMAN:  Yes, your Honor --

**24**          THE COURT:  One person at a time.  Mr. Pittman

00:46    **25** first.

1          MR. PITTMAN:  Yes.  Your Honor, Mr. Cook has already

2     done that, that's a report that he provided to Mr. Vogl last

3     week, so we can certainly have it --

4          THE COURT:  I don't think that's close enough to the

5     truth, to tell you the truth, Mr. Pittman.  He needs to go

6     back in -- I need to know -- you don't have numbers for the

7     last three years or something of that nature, so you projected

8     the number out.  I'm not awarding damages based on

9     projections, period.  It's got to be closer than that.

10          MR. PITTMAN:  Right, right.

11          THE COURT:  I can understand how Mr. Cook may have

12     relied on projections, but I'm not, in any damages that I

13     award.

14          MR. PITTMAN:  Right.

15          THE COURT:  So his report is insufficient.

16          MR. PITTMAN:  Okay.  So your Honor, what we would

17     have to do, we being America Can! Cars For Kids, in order for

18     us to do that for the last couple years, we would have to have

19     -- and I'm assuming the Court is going to order K4K to produce

20     that information to us so we can come apply with the Court's

21     order that we both provide --

22          THE COURT:  That's exactly my point, Mr. Pittman.

23     By next week I need to know what Mr. Cook -- how he would do

24     the exact calculation on disgorgement, which I take it gets us

25     to net profits; what numbers does he need; how he would do the

*United States District Court*
*Trenton, New Jersey*

1    calculation; and then if I was going to order Kars 4 Kids to

2    produce numbers, I'll do it based on what the expert tells me

3    next week.

4            MR. PITTMAN:  Okay, perfect, your Honor.

00:48    5            THE COURT:  And the same goes in response, if Mr.

6    Hall has a different methodology to come up with what the net

7    profits are or he thinks more expenses should be deducted -- I

8    don't know that exact issue, but I know there's a disagreement

9    on that; then I need to know that too.

00:48    10            MR. VOGL:  Sure, sure.  This is Peter Vogl; yes,

11   your Honor, we will provide your Honor with that information

12   as well.

13           THE COURT:  And then wherever it is after we come up

14   with how we're going to -- if both of them want to come next

00:49    15   week I'd be glad the listen to them on it; or if you think

16   that's impossible then I'll set up a new date; or if we get a

17   letter and we can agree then I'd do that.

18           MR. VOGL:  So your Honor, if I may, this is Peter

19   Vogl; that is not going to work for us, only because we

00:49    20   obviously need to get Mr. -- first of all, Mr. Hall's out of

21   the country and he's back tomorrow, and so we're going to get

22   him rolling on this immediately.  So the timing is a little

23   bit tight for us, that's why.

24           THE COURT:  Well, I'm more interested in getting a

00:49    25   process down how we're going to move forward.

1           MR. VOGL:  Sure, sure.

2           THE COURT:  So what I think we need to do -- I do

3    believe that disgorgement is the appropriate remedy, and I

4    think that gets us to net profits.  I've been doing this at a

00:49    5    very high helpful; income less expenses, equals net profits.

6    I don't know if that's good or bad.  So we need both experts

7    to tell us how we go about doing this calculation.  I don't

8    want it to be based on projected numbers or estimates of

9    numbers, I want it to be as precise as we can with regard to

00:50    10   Texas.

11          MR. VOGL:  Understood, your Honor.  I guess last --

12   this is Peter Vogl.  The last thing I would ask your Honor is,

13   we obviously believe, your Honor, that laches would preclude

14   all of this.  So we would ask that if your Honor could give us

00:50    15   an order, give us a decision on the laches issue obviously at

16   some point, we will obviously accept whatever your Honor puts

17   forward but --

18          THE COURT:  Here's what I'm doing on laches; I'm not

19   going to render any decision on laches until I see the numbers

00:50    20   for each year.  Because --

21          MR. VOGL:  Okay.

22          THE COURT:  -- I want to know what I'm dealing with.

23   I don't think I should just do it on a hypothetical issue.

24          MR. VOGL:  Got it.  Okay, good.  I just wanted to

00:51    25   make sure it was still out there, your Honor.

1          THE COURT:  When I see the expenses from each year,

2     and I see what advertising was run in Texas each year, things

3     of that nature, then I'll make a decision on laches.

4          MR. VOGL:  Okay.  All right.  I appreciate that.

00:51  5     Thank you, your Honor.

6          THE COURT:  Any other issues?

7          MR. VOGL:  Not from plaintiff.

8          THE COURT:  So how do you want do this, Mr. Pittman?

9     Mr. Vogl says he can't be prepared by next week.

00:51  10         MR. PITTMAN:  Prepared in the sense of prepared to

11    give us the information that we need to prepare our report for

12    the last two or three years without projections?  I'm not sure

13    what he's not prepared to do.

14         THE COURT:  Mr. Hall is not around, he's out of the

00:52  15    country, he doesn't know about the issue.  To get an expert

16    together and figure out what he's -- how he can help you, what

17    he has to write on a piece of paper with regard to how we

18    calculate this number, I don't know, it doesn't look like

19    something you can accomplish in a week from my experience.

00:52  20         MR. PITTMAN:  If Mr. Vogl -- and your Honor, I guess

21    I was looking for it, some feel for whether Mr. Vogl --

22    because our expert, if he's provided with that information he

23    can do it in an hour.  So I was trying to find out when Mr.

24    Vogl would be able to give it -- give us the missing

00:52  25    information that our expert's going to need.

1          THE COURT:  Well, he first has to know what your

2     expert needs.  So you have to talk to your expert, Mr. Cook,

3     find out what information he needs to come up with a -- I

4     would say a reasonable practical number on the net profits in

00:53   5     Texas since January 2008.

6          MR. VOGL:  So your Honor, one point -- and again, I

7     didn't raise previously, is that the Jewish -- there are

8     Jewish holidays August 2nd through the 12th.  So I will

9     obviously reach out to my folks now today to avoid that being

00:53  10     a conflict, but just to sort of present that to your Honor

11     that I will have some limitation in accessing my client

12     through that period.

13          THE COURT:  Okay.

14          MR. VOGL:  So that's something that I'm obviously

00:54  15     not expecting the supplemental report, both my expert and the

16     client, you know, are just standing by waiting for it to come

17     in.  So I will -- obviously as your Honor knows I will move as

18     quickly as possible, but I can't promise your Honor that I

19     will have, even when I get Mr. Pittman's --

00:54  20          THE COURT:  I'm not opposed to anyone not working

21     during religious holidays.  So whatever time they need, they

22     can do it.

23          MR. PITTMAN:  Same here, your Honor.

24          MR. VOGL:  So your Honor, I guess just to pick a

00:54  25     date, if we could submit our report for Mr. Hall sometime --

*United States District Court*
*Trenton, New Jersey*

1    I'm going to say, I'm just looking at my calendar here, August

2    30th, your Honor?

3              THE COURT:  Mr. Pittman?

4              Is this your religious holiday as well, Mr. Vogl

5    or --

6              MR. VOGL:  No, it's not.

7              THE COURT:  Are you going to work during August?

8              MR. VOGL:  Yes, yes, your Honor.

9              THE COURT:  Here's what I think we need, the more

10   we're going through this; if I could just -- I suppose in my

11   mind I had the idea that if I was going to ask for

12   recommendations and appoint an accountant, and then have the

13   accountant tell me what the formula is; and then have the

14   accountant be given access to Kars 4 Kids' records to see the

15   different things they would need to figure out this

16   calculation, and that was going to be easy for me.

17             But since we're looking at using the two experts

18   rather than the accountant, I really need to know what formula

19   each expert would be using; and then would need to know what

20   information each expert would need from the other side, from

21   each party; and then I would issue an order.

22             You know, I could say we'll use this formula; this

23   information is needed, and I could require the parties to

24   produce it, whoever has it; and then I could I guess order the

25   depositions of the experts if the numbers differ.

1          MR. VOGL:  Right.

2          THE COURT:  But right now I don't know what to write

3     easily enough -- what I would like if we could before the

4     30th, is what is the number -- what is the formula that we

00:57    5     should use, and what information does each party need to come

6     up with the best practicable net profits figure from 2008

7     forward.

8          MR. VOGL:  So your Honor, this is Peter Vogl; I can

9     say this, your Honor, that if the 30th is too long then we

00:57   10     could -- the 9th of August I think I can get your Honor the

11     information that -- the calculation that your Honor's looking

12     for, I think we can do it then.

13          I mean obviously having not had the opportunity to

14     really talk to the expert, I'm representing his availability

00:57   15     and his ability to do this, but the 9th seems like a

16     reasonable period of time for him to digest the information

17     and provide the information your Honor is asking for.

18          THE COURT:  All right.  If I could get those two

19     letters by the 9th, then maybe at that point I can craft a

00:58   20     better order.

21          MR. PITTMAN:  Well, your Honor, it sounds like we

22     may be talking about different things.  So Mr. Vogl seems to

23     be talking about the actual calculation, the actual end

24     product.  What I was talking about is the information that our

00:58   25     expert's going to need to be able to give the Court that end

1    product.

2            So we can get the Court something by noon tomorrow

3    what records our expert is going to need from K4K, so that he

4    can give the Court that end product which would be the

00:58    5    calculations based on actual records, your Honor.

6            THE COURT:  Okay.

7            MR. VOGL:  Yeah, we -- again, your Honor, having not

8    had a chance to speak to our expert, I'm not talking about a

9    final report on the 9th, I'm talking about the information

00:58    10    that your Honor is asking us -- you know, the calculation and

11    what the deductions should be.  That I can get your Honor on

12    the 9th, it's not --

13            THE COURT:  It would just be a broad general

14    document, you know.

00:59    15            MR. VOGL:  Yes, your Honor.  That we can do by the

16    9th.

17            THE COURT:  All right.  I think we should follow --

18    go ahead, Mr. Pittman.

19            MR. PITTMAN:  I don't know that K4K is going to need

00:59    20    any information from America Can!  But to the extent they're

21    relying -- but to the extent they do, your Honor, you know,

22    we're prepared to give them whatever information they think

23    they need to be able to come up with that end product.

24            THE COURT:  All right.  So here's what we're doing,

00:59    25    if we've made any decision, the calculation will begin on

1   January 1st, 2008.  And I'd like the numbers when they're

2   preparing them year by year.

3        MR. PITTMAN:  Correct.

4        THE COURT:  And then I'd just to like to know the

01:00   5   formula that they're going to utilize; and the more precise

6   that formula is the better, because I'm pretty sure there's a

7   dispute on what expenditures can be deducted.  So I have to

8   know, you know, the category of expenses that can be deducted,

9   and the category of those that you disagree on.

01:00   10        MR. PITTMAN:  Correct.

11        THE COURT:  And then --

12        MR. VOGL:  Understood.

13        THE COURT:  So that's just generally.  But this only

14   applies to Texas, you know, it's not broader than that.  I

01:00   15   don't see how we can use Mr. Cook's original report.  It seems

16   to apply to all 50 states.  I think we need to get a number

17   that is, you know, practically -- a practical calculation of

18   net revenues for those period of years from 2008 forward.

19        MR. PITTMAN:  Correct.

01:01   20        THE COURT:  And then I think that's it.  I think the

21   way you should do this is both parties should send in a letter

22   by the 9th of August.  And then if there's information that

23   your expert needs, Mr. Pittman, just make sure he puts it in

24   there, this is what I need.  And if it was in accounting terms

01:01   25   so that folks can go through the books and pick out the

1 numbers real easy, that would be perfect.

2                MR. VOGL:  All right.

3                MR. PITTMAN:  And your Honor, in terms of the next

4 week, is the Court hearing any argument or anything, or is

01:02 5 that -- is that cancelled?

6                THE COURT:  No, I think we'll cancel next week.

7 I'll get the letters on the 9th.  We can have a conference

8 call that week if Mr. Pittman and Mr. Vogl can agree on the

9 time and date, we can probably set that up.

01:02 10               MR. VOGL:  So you're saying after the letters are in

11 we can have a call, your Honor, that week --

12               THE COURT:  Yes, you know, just to go over it.

13               MR. VOGL:  Yeah.  So sometime --

14               THE COURT:  10th, 11th or something like that.

01:02 15               MR. VOGL:  Sure.  It would be the Monday the 12th or

16 the 13th, somewhere in there.

17               THE COURT:  Yeah, whatever it is, I don't know.

18               MR. VOGL:  Yeah, got it.  Okay.

19               THE COURT:  All right.  So do I need to issue an

01:03 20 order, or does everybody understand now?

21               MR. VOGL:  This is Peter Vogl, I think you're clear,

22 your Honor.  I understand what we're doing next.

23               MR. PITTMAN:  Yes, your Honor, same here.

24               THE COURT:  We'll agree that the 9th is the date for

01:03 25 receipt of the letters.

1          MR. VOGL:  Yes.

2          THE COURT:  Okay.  All right.  So thank you for

3    calling in.  Thank you for your time.

4          (Counsel say thank you.)

5          (Matter concluded.)

6

7                    - - -

8

9    "I certify that the foregoing is a correct transcript from the

10   record of proceedings in the above-entitled matter."

11

12   /S/ Francis J. Gable, C.C.R., C.R.R.     7/26/19

13

14   _____          _____

15   Signature of Court Reporter                    Date

16

17

18

19

20

21

22

23

24

25

*United States District Court*
*Trenton, New Jersey*

## $

**$60** [1] - 7:17

## /

**/S** [1] - 42:12

## 0

**08608** [1] - 1:11

## 1

**10** [1] - 30:5
**10th** [1] - 41:14
**11th** [1] - 41:14
**12** [1] - 7:15
**12-year** [1] - 4:10
**123** [1] - 6:21
**12th** [2] - 36:8, 41:15
**135** [1] - 6:22
**13th** [1] - 41:16
**14-7770** [1] - 1:6
**1st** [1] - 40:1

## 2

**20** [1] - 30:9
**2000** [2] - 14:9, 17:24
**2003** [9] - 4:11, 7:4,
  7:7, 14:9, 17:7, 18:6,
  18:7, 18:8, 21:6
**2004** [1] - 18:9
**2007** [2] - 18:1, 20:4
**2008** [14] - 17:19,
  17:20, 18:2, 19:12,
  20:4, 20:20, 31:5,
  31:7, 36:5, 38:6,
  40:1, 40:18
**2009** [1] - 20:4
**2011** [3] - 17:17,
  18:11, 18:16
**2012** [1] - 6:25
**2013** [4] - 7:8, 7:9,
  17:24, 19:23
**2014** [2] - 17:6, 19:8
**2015** [2] - 4:13, 7:7
**2016** [2] - 24:6, 24:18
**2017** [1] - 29:16
**2018** [4] - 4:19, 9:3,
  9:9, 29:16
**2019** [2] - 1:10, 18:25
**24** [1] - 1:10
**28** [1] - 6:3
**2nd** [1] - 36:8

## 3

**3/28/13** [1] - 19:15
**3/28/2013** [1] - 17:16
**30th** [3] - 37:2, 38:4,
  38:9
**328** [1] - 15:17
**374** [1] - 6:24
**379** [1] - 6:24

## 4

**4** [16] - 1:4, 3:3, 3:10,
  4:12, 4:13, 4:21, 6:2,
  7:6, 9:15, 10:10,
  19:14, 29:17, 31:4,
  31:8, 33:1, 37:14
**401** [2] - 4:24, 6:21
**402** [1] - 1:11
**403** [1] - 5:11
**49** [4] - 8:19, 8:21,
  8:22, 21:9

## 5

**50** [4] - 7:17, 9:12,
  28:13, 40:16

## 6

**6/28** [1] - 6:6

## 7

**7/12** [1] - 6:10
**7/26/19** [1] - 42:12
**712** [1] - 6:12

## 8

**856** [1] - 1:25
**872** [1] - 6:24
**889-4761** [1] - 1:25

## 9

**990s** [8] - 11:13,
  11:14, 11:18, 11:19,
  11:21, 11:24, 24:19
**9th** [9] - 38:10, 38:15,
  38:19, 39:9, 39:12,
  39:16, 40:22, 41:7,
  41:24

## A

**ability** [2] - 16:15,
  38:15
**able** [13] - 12:25,
  16:17, 17:13, 20:18,
  24:24, 25:19, 25:20,
  31:15, 31:16, 35:24,
  38:25, 39:23
**above-entitled** [1] -
  42:10
**absolutely** [5] - 9:6,
  11:1, 11:6, 18:3,
  27:22
**Absolutely** [1] - 29:14
**accept** [2] - 31:6,
  34:16
**accepting** [2] - 12:23,
  22:21
**access** [1] - 37:14
**accessing** [1] - 36:11
**accomplish** [1] -
  35:19
**account** [2] - 23:12,
  23:13
**accountant** [11] -
  13:12, 13:18, 14:9,
  14:21, 16:19, 25:19,
  25:23, 37:12, 37:13,
  37:14, 37:18
**accounting** [12] -
  10:22, 10:24, 11:11,
  12:4, 12:8, 12:19,
  23:10, 23:18, 26:2,
  26:9, 31:18, 40:24
**accurate** [1] - 13:19
**acknowledge** [1] -
  17:6
**Act** [2] - 6:15, 7:1
**act** [8] - 17:10, 17:23,
  18:6, 18:7, 18:11,
  18:24, 19:1, 19:24
**action** [4] - 6:20, 7:25,
  18:8
**actions** [1] - 7:21
**acts** [2] - 17:7, 18:4
**actual** [23] - 22:3,
  23:10, 23:22, 24:16,
  24:18, 25:2, 25:5,
  25:6, 25:14, 25:17,
  25:19, 25:20, 26:20,
  29:3, 29:12, 29:17,
  29:18, 29:22, 30:14,
  30:16, 38:23, 39:5
**added** [1] - 11:18
**additional** [1] - 15:22
**address** [1] - 17:4
**adjourn** [1] - 16:22
**adversary** [1] - 15:12

**advertised** [4] - 17:16,
  18:10, 19:14, 19:17
**advertising** [2] - 7:18,
  35:2
**advice** [1] - 27:20
**aggregate** [1] - 9:15
**agree** [4] - 12:24,
  33:17, 41:8, 41:24
**ahead** [4] - 27:23,
  28:6, 28:10, 39:18
**allegedly** [1] - 17:6
**alleging** [1] - 17:24
**Allison** [1] - 3:17
**ALLISON** [1] - 2:10
**allow** [6] - 13:23,
  14:20, 16:10, 21:14,
  21:22
**allowed** [4] - 17:22,
  19:9, 20:5, 26:22
**allowing** [1] - 14:7
**allows** [1] - 20:13
**alone** [3] - 8:7, 8:10,
  22:25
**America** [21] - 3:4,
  3:21, 3:22, 4:7, 4:8,
  4:10, 4:19, 5:5, 6:13,
  7:4, 7:19, 7:21, 8:6,
  8:23, 19:9, 19:25,
  21:7, 25:5, 27:6,
  32:17, 39:20
**AMERICA** [1] - 1:6
**amount** [1] - 24:6
**amounts** [2] - 24:2,
  24:5
**analogized** [1] - 7:1
**analyzed** [1] - 7:1
**answer** [2] - 12:11,
  15:4
**ANTWI** [2] - 2:3, 3:6
**Antwi** [1] - 3:7
**ANY** [1] - 1:19
**apologize** [4] - 12:7,
  19:6, 28:9
**appear** [1] - 9:9
**appearances** [1] - 3:4
**application** [1] - 4:2
**applied** [6] - 6:20,
  17:8, 17:12, 23:25,
  25:2
**applies** [2] - 7:25,
  40:14
**apply** [7] - 8:14, 8:22,
  11:9, 15:21, 18:13,
  32:20, 40:16
**appoint** [4] - 12:8,
  23:17, 31:17, 37:12
**appointed** [1] - 12:13
**appointing** [1] - 12:3
**appreciate** [1] - 35:4
**appropriate** [6] - 12:1,

  13:7, 23:5, 23:9,
  26:15, 34:3
**area** [1] - 22:8
**argue** [3] - 5:12,
  13:25, 22:2
**argued** [1] - 26:2
**arguing** [3] - 17:15,
  23:5, 24:3
**argument** [10] - 10:5,
  14:4, 17:4, 19:22,
  20:3, 20:7, 20:24,
  24:12, 41:4
**arguments** [2] - 14:2,
  15:12
**assist** [4] - 23:18,
  24:8, 24:13, 29:20
**assuming** [2] - 18:14,
  32:19
**assumptions** [1] -
  13:4
**AUBREY** [1] - 2:13
**Aubrey** [1] - 3:20
**August** [5] - 36:8,
  37:1, 37:7, 38:10,
  40:22
**availability** [1] - 38:14
**available** [1] - 14:24
**avoid** [1] - 36:9
**award** [1] - 32:13
**awarding** [1] - 32:8
**aware** [1] - 18:12

## B

**bad** [1] - 34:6
**barred** [1] - 4:9
**barring** [1] - 14:7
**bars** [1] - 5:20
**base** [1] - 27:6
**based** [15] - 7:20, 8:3,
  10:15, 11:19, 12:20,
  25:11, 27:4, 27:5,
  27:7, 29:17, 29:18,
  32:8, 33:2, 34:8,
  39:5
**basis** [4] - 6:19, 8:21,
  11:3, 15:16
**became** [1] - 18:12
**began** [1] - 9:23
**begin** [2] - 4:4, 39:25
**behalf** [1] - 3:10
**benchmark** [1] - 11:25
**benefit** [1] - 16:13
**best** [2] - 20:6, 38:6
**better** [3] - 10:17,
  38:20, 40:6
**between** [2] - 7:7, 7:17
**beyond** [3] - 18:17,
  19:17, 22:17

**bit** [4] - 5:13, 14:18, 28:5, 33:23
**books** [1] - 40:25
**bore** [1] - 13:1
**brand** [1] - 7:19
**break** [3] - 9:16, 11:20, 28:17
**brief** [7] - 6:4, 6:5, 6:8, 6:11, 6:12, 6:14, 17:15
**briefs** [2] - 6:9, 22:20
**bring** [2] - 7:25, 17:13
**bringing** [2] - 6:20, 7:22
**broad** [1] - 39:13
**broader** [1] - 40:14
**brought** [6] - 4:13, 7:8, 7:11, 7:12, 17:6
**Bryce** [1] - 4:20
**build** [1] - 7:16
**building** [1] - 7:18
**burden** [1] - 25:8
**business** [1] - 22:17
**BY** [6] - 2:1, 2:3, 2:6, 2:9, 2:13, 2:15

---

### C

**C.C.R** [2] - 1:24, 42:12
**C.R.R** [1] - 42:12
**Caiafa** [1] - 6:23
**CAIAFA** [1] - 6:23
**calculate** [1] - 35:18
**calculated** [1] - 18:2
**calculation** [15] - 27:1, 29:3, 29:4, 31:7, 31:12, 31:18, 32:24, 33:1, 34:7, 37:16, 38:11, 38:23, 39:10, 39:25, 40:17
**calculations** [2] - 26:22, 39:5
**calendar** [1] - 37:1
**CAN** [1] - 1:6
**Can!'s** [7] - 4:7, 4:8, 4:10, 4:19, 7:5, 21:7, 27:6
**cancel** [1] - 41:6
**cancelled** [1] - 41:5
**capture** [1] - 18:20
**Cars** [7] - 3:4, 3:21, 3:23, 10:6, 17:16, 18:12, 32:17
**cars** [3] - 24:25, 29:7, 29:11
**carve** [1] - 5:2
**case** [31] - 4:14, 4:15, 4:24, 5:1, 6:1, 6:21, 6:24, 7:11, 7:12, 8:4,

8:9, 8:12, 8:16, 8:17, 8:24, 9:4, 12:14, 15:14, 16:10, 17:11, 17:12, 19:7, 20:22, 22:4, 22:5, 22:10, 22:14, 22:16, 22:18, 27:15, 27:22
**cases** [2] - 22:4, 22:15
**categories** [6] - 24:2, 24:3, 24:4, 24:5, 25:24, 26:6
**category** [2] - 40:8, 40:9
**caused** [3] - 7:22, 8:5, 19:25
**cease** [1] - 17:24
**certain** [3] - 22:8, 24:3, 26:5
**certainly** [13] - 5:17, 12:16, 13:4, 13:6, 15:22, 17:4, 23:3, 23:17, 23:19, 28:6, 30:9, 32:3
**certainty** [1] - 15:7
**certify** [1] - 42:9
**chance** [2] - 13:3, 39:8
**change** [2] - 26:21, 29:16
**charitable** [1] - 11:15
**checked** [1] - 10:4
**Chicago** [2] - 20:4, 20:9
**CHRISTOPHER** [1] - 2:10
**Christopher** [1] - 3:16
**Circuit** [2] - 8:9, 15:15
**cited** [1] - 22:4
**citing** [1] - 22:10
**city** [1] - 18:5
**CIVIL** [1] - 1:5
**claim** [4] - 4:13, 5:20, 17:6, 22:2
**claims** [3] - 4:9, 6:25, 17:12
**CLARKSON** [1] - 1:10
**clear** [2] - 5:15, 41:21
**clearly** [3] - 17:11, 18:13, 28:17
**client** [9] - 4:12, 6:2, 7:5, 7:22, 8:5, 14:23, 15:23, 36:11, 36:16
**client's** [2] - 7:6
**clients** [1] - 7:16
**close** [2] - 31:3, 32:4
**closer** [1] - 32:9
**closing** [1] - 20:3
**co** [2] - 3:8, 3:18
**co-counsel** [2] - 3:8, 3:18
**coexisting** [1] - 8:20

**coming** [1] - 16:16
**commenting** [1] - 28:6
**common** [1] - 21:17
**compare** [1] - 9:3
**completely** [3] - 8:16, 17:5, 23:4
**complicated** [2] - 26:18, 26:19
**conclude** [1] - 7:9
**concluded** [1] - 42:5
**conference** [1] - 41:7
**confirm** [1] - 14:19
**conflict** [1] - 36:10
**CONFOY** [1] - 2:9
**Confoy** [1] - 3:17
**confused** [1] - 17:14
**considered** [1] - 20:8
**consist** [1] - 26:13
**continue** [1] - 8:23
**continued** [2] - 6:13, 7:16
**Cook** [47] - 4:20, 4:23, 5:15, 8:14, 9:13, 9:14, 9:16, 11:21, 12:18, 13:5, 18:2, 19:12, 23:12, 23:21, 23:25, 24:4, 24:7, 24:8, 24:9, 24:10, 24:13, 24:16, 24:23, 25:2, 25:4, 25:5, 25:7, 25:11, 25:12, 25:15, 25:24, 26:6, 26:21, 27:2, 27:17, 27:25, 29:15, 29:16, 29:20, 29:21, 30:5, 30:23, 32:1, 32:11, 32:23, 36:2
**Cook's** [7] - 9:3, 9:7, 10:9, 16:8, 16:13, 16:21, 40:15
**Correct** [5] - 12:21, 28:24, 31:10, 40:3, 40:10, 40:19
**correct** [5] - 10:14, 11:2, 11:6, 17:7, 42:9
**costs** [2] - 7:18, 12:1
**Counsel** [2] - 3:2, 42:4
**counsel** [2] - 3:8, 3:18
**counterclaim** [1] - 19:9
**country** [1] - 33:21, 35:15
**couple** [5] - 9:20, 16:7, 20:22, 25:8, 32:18
**course** [2] - 17:4, 26:1
**Court** [53] - 4:17, 4:19, 5:4, 6:1, 6:4, 6:5, 8:13, 15:15, 16:13,

19:19, 19:20, 19:21, 20:13, 20:15, 20:16, 20:25, 21:8, 21:13, 21:21, 22:2, 22:9, 23:5, 23:6, 23:7, 23:11, 23:17, 23:18, 23:19, 24:8, 24:11, 24:13, 24:15, 25:17, 25:18, 25:19, 25:22, 26:3, 26:4, 26:7, 26:10, 26:11, 26:14, 29:21, 32:19, 38:25, 39:2, 39:4, 41:4, 42:15
**COURT** [94] - 1:1, 1:15, 3:1, 3:3, 3:12, 3:15, 3:19, 3:24, 4:5, 9:18, 9:20, 9:22, 10:3, 10:8, 10:13, 10:20, 11:10, 11:16, 12:3, 12:6, 12:8, 12:18, 12:22, 13:10, 13:25, 14:4, 14:22, 15:2, 15:11, 15:25, 16:3, 16:25, 17:2, 17:14, 17:20, 18:15, 19:2, 19:5, 19:7, 19:13, 20:6, 22:19, 22:23, 23:2, 27:9, 28:8, 28:10, 28:20, 28:25, 29:2, 29:6, 29:11, 30:22, 31:2, 31:11, 31:21, 31:24, 32:4, 32:11, 32:15, 32:22, 33:5, 33:13, 33:24, 34:2, 34:18, 34:22, 35:1, 35:6, 35:8, 35:14, 36:1, 36:13, 36:20, 37:3, 37:7, 37:9, 38:2, 38:18, 39:6, 39:13, 39:17, 39:24, 40:4, 40:11, 40:13, 40:20, 41:6, 41:12, 41:14, 41:17, 41:19, 41:24, 42:2
**court** [3] - 22:6, 22:12, 22:16
**Court's** [2] - 16:10, 32:20
**COURTHOUSE** [1] - 1:10
**courts** [4] - 6:17, 6:18, 6:25, 8:17
**Covertech** [1] - 22:5
**craft** [1] - 38:19
**creates** [1] - 9:2
**cross** [2] - 27:18, 27:19
**cross-examination** [2]

- 27:18, 27:19

---

### D

**Dallas** [1] - 18:10
**damages** [31] - 4:7, 4:21, 5:8, 5:9, 5:16, 6:14, 8:8, 8:11, 8:15, 8:21, 9:23, 9:25, 13:7, 15:20, 15:21, 17:15, 17:18, 17:23, 18:2, 18:16, 18:17, 19:10, 20:6, 20:10, 20:14, 20:20, 22:7, 22:23, 31:3, 32:8, 32:12
**DAMAGES** [1] - 1:20
**Date** [1] - 42:15
**date** [6] - 16:23, 31:6, 33:16, 36:25, 41:9, 41:24
**DAVID** [1] - 2:6
**David** [1] - 3:10
**dealing** [3] - 16:21, 19:16, 34:22
**deals** [1] - 6:22
**decide** [1] - 24:8
**decided** [5] - 9:24, 11:4, 20:24, 24:12, 29:21
**decides** [1] - 23:5
**decipherable** [1] - 29:24
**decision** [7] - 14:12, 16:1, 26:8, 34:15, 34:19, 35:3, 39:25
**deduct** [2] - 26:8, 26:15
**deducted** [10] - 12:1, 24:4, 25:25, 26:6, 26:7, 26:12, 33:7, 40:7, 40:8
**deductions** [1] - 39:11
**DEFENDANT** [4] - 1:7, 2:11, 2:13, 2:16
**defendants** [1] - 3:15
**delay** [5] - 4:10, 5:21, 5:22, 8:4, 8:5
**delayed** [1] - 7:21
**delivered** [1] - 6:3
**demonstrate** [1] - 20:15
**deposition** [2] - 16:8, 16:11
**depositions** [1] - 37:25
**describes** [1] - 27:22
**describing** [1] - 27:11
**desist** [1] - 17:25

**detail** [6] - 5:13, 14:20, 15:9, 27:13, 28:1, 28:6
**details** [1] - 13:2
**determination** [1] - 26:14
**determine** [4] - 6:19, 13:12, 24:24, 31:16
**determined** [2] - 29:17, 29:18
**determining** [2] - 14:12, 26:16
**differ** [1] - 37:25
**different** [4] - 27:3, 33:6, 37:15, 38:22
**digest** [1] - 38:16
**disagree** [2] - 24:5, 40:9
**disagreement** [5] - 23:22, 23:23, 23:24, 24:1, 33:8
**disclosing** [1] - 5:7
**discovery** [1] - 27:8
**discretion** [1] - 24:9
**discuss** [1] - 11:25
**discussing** [1] - 15:19
**discussion** [3] - 8:11, 9:6, 13:6
**disgorgement** [7] - 10:6, 11:2, 11:4, 11:6, 11:9, 32:24, 34:3
**dispute** [1] - 40:7
**distinct** [1] - 18:4
**distributed** [1] - 14:17
**District** [1] - 6:24
**DISTRICT** [4] - 1:1, 1:1, 1:15, 1:15
**divide** [5] - 29:19, 30:2, 30:10, 30:15, 30:17
**divided** [2] - 24:25, 29:7
**dividing** [2] - 9:11, 26:25
**doctrine** [1] - 5:19
**document** [1] - 39:14
**documents** [1] - 9:14
**dollar** [1] - 11:19
**domain** [1] - 17:17
**donated** [1] - 14:17
**donation** [1] - 28:22
**donations** [7] - 26:25, 28:11, 28:13, 28:18, 28:20, 29:18, 29:22
**done** [6] - 6:17, 6:18, 11:13, 11:17, 12:12, 13:9, 16:17, 26:2, 27:1, 27:11, 29:20, 32:2

**down** [5] - 9:16, 11:20, 13:3, 15:19, 33:25
**due** [1] - 6:6
**during** [4] - 26:1, 27:8, 36:21, 37:7

**E**

**easily** [2] - 25:10, 38:3
**EAST** [1] - 1:11
**easy** [2] - 37:16, 41:1
**effectively** [1] - 24:21
**effort** [1] - 22:17
**either** [2] - 17:12, 26:8
**Eleonore** [1] - 3:7
**ELEONORE** [1] - 2:3
**elicited** [1] - 8:4
**end** [5] - 18:1, 38:23, 38:25, 39:4, 39:23
**enter** [1] - 3:4
**entirety** [1] - 4:8
**entitled** [7] - 13:22, 20:6, 20:17, 21:23, 22:7, 22:24, 42:10
**equals** [1] - 34:5
**equitable** [6] - 10:8, 10:23, 11:3, 11:7, 19:20, 22:2
**equity** [3] - 13:23, 23:4, 23:7
**ESQUIRE** [8] - 2:3, 2:6, 2:6, 2:9, 2:10, 2:10, 2:13, 2:15
**estimate** [1] - 29:2
**estimated** [1] - 29:6
**estimates** [5] - 9:4, 12:20, 12:23, 13:16, 34:8
**evaluating** [1] - 31:19
**evidence** [3] - 14:19, 18:9, 26:12
**exact** [2] - 32:24, 33:8
**exactly** [5] - 13:18, 14:7, 29:15, 32:22
**examination** [2] - 27:18, 27:19
**exceeded** [1] - 7:24
**except** [1] - 20:8
**excessive** [1] - 10:17
**EXCLUDE** [1] - 1:19
**exclude** [1] - 4:19
**excluded** [1] - 4:7
**excuse** [1] - 14:17
**exercise** [1] - 26:9
**exists** [1] - 15:7
**expecting** [1] - 36:15
**expenditures** [3] - 13:13, 13:14, 40:7
**expense** [1] - 26:16

**expenses** [30] - 10:14, 10:18, 12:9, 14:10, 23:11, 23:13, 23:24, 23:25, 24:1, 24:2, 24:3, 25:10, 25:20, 25:24, 26:6, 26:11, 26:13, 28:21, 29:12, 30:1, 30:2, 30:3, 31:7, 33:7, 34:5, 35:1, 40:8
**experience** [1] - 35:19
**expert** [26] - 4:19, 4:20, 12:15, 13:2, 14:24, 23:18, 27:20, 28:16, 30:8, 30:13, 30:14, 33:2, 35:15, 35:22, 36:2, 36:15, 37:19, 37:20, 38:14, 39:3, 39:8, 40:23
**expert's** [2] - 35:25, 38:25
**experts** [7] - 26:3, 26:5, 26:23, 31:17, 34:6, 37:17, 37:25
**extent** [4] - 4:20, 20:18, 39:20, 39:21
**extraordinarily** [1] - 10:16

**F**

**F.3d** [1] - 6:21
**F.Supp.2d** [1] - 6:24
**fact** [8] - 6:13, 7:13, 8:8, 8:20, 9:7, 12:24, 22:15, 26:12
**facts** [6] - 8:3, 8:17, 19:20, 22:3, 22:9, 22:14
**fails** [1] - 24:15
**FALANGA** [1] - 2:3
**far** [3] - 17:18, 20:10, 28:2
**federal** [2] - 21:1, 21:10
**figure** [3] - 35:16, 37:15, 38:6
**file** [3] - 18:22, 18:25
**filed** [5] - 6:9, 6:11, 19:9, 25:13
**final** [1] - 39:9
**firm** [2] - 12:4, 12:9
**FIRM** [1] - 2:12
**First** [1] - 9:22
**first** [8] - 4:12, 5:6, 7:10, 14:1, 18:6, 31:25, 33:20, 36:1
**FISHER** [1] - 1:10
**fit** [1] - 8:16

**folks** [5] - 6:13, 7:5, 31:19, 36:9, 40:25
**follow** [1] - 39:17
**Footwear** [3] - 22:4, 22:10, 22:16
**FOR** [5] - 2:4, 2:7, 2:11, 2:13, 2:16
**foregoing** [1] - 42:9
**forget** [1] - 30:23
**form** [1] - 11:24
**formula** [6] - 37:13, 37:18, 37:22, 38:4, 40:5, 40:6
**forth** [2] - 27:18, 28:22
**forward** [8] - 13:1, 15:18, 15:24, 19:12, 33:25, 34:17, 38:7, 40:18
**founded** [1] - 5:17
**Fox** [1] - 3:17
**FOX** [1] - 3:17
**Francis** [1] - 42:12
**FRANCIS** [1] - 1:24
**frankly** [5] - 5:16, 9:13, 16:15, 27:19, 27:24
**fraud** [2] - 6:19, 7:2
**fruit** [2] - 21:5, 21:14
**full** [1] - 15:6

**G**

**Gable** [1] - 42:12
**GABLE** [1] - 1:24
**general** [1] - 39:13
**generally** [1] - 40:13
**generated** [1] - 10:10
**geographical** [1] - 22:8
**given** [1] - 37:14
**glad** [1] - 33:15
**gleaned** [1] - 12:2
**granular** [1] - 14:15
**granularity** [1] - 14:16
**greater** [1] - 28:6
**guess** [10] - 13:20, 14:18, 15:13, 16:5, 16:18, 31:4, 34:11, 35:20, 36:24, 37:24
**guilty** [1] - 17:8

**H**

**Hall** [17] - 12:14, 23:21, 23:25, 24:3, 24:16, 24:24, 25:25, 26:5, 28:15, 30:5, 30:6, 30:25, 31:1, 31:2, 33:6, 35:14, 36:25
**Hall's** [1] - 33:20
**hands** [3] - 7:14, 28:5
**happy** [1] - 17:4
**harm** [1] - 8:5
**hear** [3] - 15:12, 26:3, 26:4
**heard** [1] - 19:13
**HEARING** [1] - 1:19
**hearing** [1] - 41:4
**help** [2] - 20:9, 35:16
**helpful** [2] - 14:12, 34:5
**HERRINGTON** [1] - 2:5
**high** [1] - 34:5
**historical** [1] - 27:5
**hold** [1] - 6:13
**holiday** [1] - 37:4
**holidays** [2] - 36:8, 36:21
**HOLLOWS** [1] - 2:10
**Hollows** [1] - 3:17
**Honor** [136] - 3:6, 3:9, 3:14, 3:16, 3:20, 4:3, 4:6, 4:11, 4:14, 4:17, 4:22, 5:4, 5:5, 5:8, 5:12, 5:13, 5:14, 5:19, 5:20, 5:22, 5:24, 6:3, 6:15, 6:18, 7:3, 7:20, 7:23, 8:3, 8:7, 8:10, 11:1, 11:2, 11:5, 11:12, 11:13, 12:5, 12:11, 12:16, 12:24, 13:20, 13:21, 14:15, 14:19, 15:5, 15:6, 15:9, 15:13, 15:21, 15:22, 16:5, 16:7, 16:15, 16:18, 16:22, 16:24, 17:3, 17:19, 18:3, 18:14, 18:18, 19:4, 19:18, 20:11, 20:21, 21:5, 21:16, 22:1, 22:5, 22:22, 23:4, 23:13, 23:16, 23:21, 24:11, 24:20, 25:4, 25:14, 26:1, 27:10, 27:19, 27:24, 28:7, 28:9, 28:11, 28:24, 29:1, 29:10, 29:14, 30:1, 30:4, 30:21, 31:1, 31:20, 31:22, 31:23, 32:1, 32:16, 33:4, 33:11, 33:18, 34:11, 34:12, 34:13, 34:14, 34:16, 34:25, 35:5, 35:20, 36:6, 36:10, 36:17, 36:18, 36:23,

36:24, 37:2, 37:8,
38:8, 38:9, 38:10,
38:17, 38:21, 39:5,
39:7, 39:10, 39:11,
39:15, 39:21, 41:3,
41:11, 41:22, 41:23
**Honor's** [3] - 11:5,
15:8, 38:11
**HONORABLE** [1] -
1:14
**hour** [1] - 35:23
**Houston** [3] - 17:16,
19:15, 19:24
**hundred** [1] - 15:6
**hypothetical** [4] -
14:6, 25:15, 25:16,
34:23
**hypotheticals** [1] -
19:3

### I

**idea** [2] - 13:22, 37:11
**identify** [2] - 5:2, 6:16
**imagine** [1] - 15:8
**immediately** [2] -
15:10, 33:22
**impact** [2] - 14:11,
16:14
**impacts** [1] - 14:4
**impossible** [1] - 33:16
**IN** [1] - 1:19
**inapplicable** [1] - 17:5
**inappropriate** [1] -
8:24
**INC** [1] - 1:4
**include** [1] - 19:10
**income** [6] - 10:9,
10:15, 12:9, 13:13,
14:10, 34:5
**incorrect** [1] - 23:11
**incur** [1] - 7:17
**incurred** [1] - 25:21
**Indeed** [2] - 6:13, 9:13
**indeed** [10] - 4:25,
5:22, 6:11, 7:7, 7:22,
9:1, 9:2, 11:6, 11:7,
15:15
**independent** [3] -
12:17, 16:19, 25:18
**indicated** [1] - 10:20
**indication** [1] - 6:12
**individual** [1] - 9:7
**inexcusable** [2] -
5:21, 5:22
**inexcusably** [1] - 7:21
**information** [24] -
14:24, 15:23, 16:20,
27:5, 27:7, 30:6,

32:20, 33:11, 35:11,
35:22, 35:25, 36:3,
37:20, 37:23, 38:5,
38:11, 38:16, 38:17,
38:24, 39:9, 39:20,
39:22, 40:22
**infringe** [1] - 8:19
**infringed** [2] - 6:3,
22:7
**infringement** [15] -
4:14, 4:25, 8:18,
18:4, 18:5, 18:21,
19:10, 19:23, 20:1,
20:17, 20:18, 21:4,
21:6, 22:13
**infringing** [1] - 21:7
**injunction** [3] - 5:16,
8:12, 8:22
**injunctive** [1] - 4:9
**injury** [1] - 8:5
**inquire** [1] - 15:10
**instance** [3] - 18:10,
18:25, 26:16
**instances** [1] - 5:22
**insufficient** [1] - 32:15
**interested** [1] - 33:24
**Interestingly** [1] - 5:24
**introduce** [2] - 3:8,
3:18
**investigation** [1] -
19:25
**irrelevant** [2] - 4:24,
8:16
**issue** [10] - 7:11, 8:7,
11:4, 23:16, 33:8,
34:15, 34:23, 35:15,
37:21, 41:19
**issues** [1] - 35:6

### J

**January** [2] - 36:5,
40:1
**JERSEY** [3] - 1:1,
1:11, 1:15
**Jersey** [6] - 6:17, 6:18,
6:24, 7:12, 20:5,
22:18
**Jersey's** [1] - 7:1
**Jewish** [2] - 36:7, 36:8
**JUDGE** [1] - 1:15
**Judge** [1] - 3:1
**JULY** [1] - 1:10
**jury** [14] - 4:25, 6:2,
8:17, 11:5, 11:8,
20:24, 21:3, 21:9,
21:11, 21:16, 21:19,
21:23, 21:25, 22:24
**jury's** [2] - 8:25

### K

**K's** [1] - 29:17
**K4K** [12] - 24:19, 25:3,
25:8, 25:10, 25:20,
26:20, 27:6, 30:10,
30:12, 32:19, 39:3,
39:19
**K4K's** [3] - 25:3, 27:7,
29:18
**K4L** [1] - 25:21
**KAREN** [1] - 2:9
**Karen** [1] - 3:17
**KARS** [1] - 1:4
**Kars** [25] - 3:3, 3:10,
4:12, 4:13, 4:21, 6:2,
7:6, 9:15, 10:10,
10:17, 19:14, 20:3,
20:23, 20:25, 21:8,
21:12, 21:13, 21:18,
21:20, 22:10, 29:17,
31:4, 31:8, 33:1,
37:14
**Kaufhold** [1] - 6:23
**KAUFHOLD** [1] - 6:23
**KAUFMAN** [1] - 2:6
**Kaufman** [2] - 3:10,
3:12
**keep** [3] - 21:14,
21:15, 21:22
**keeps** [1] - 23:14
**KIDS** [1] - 1:4
**Kids** [15] - 3:3, 3:10,
3:21, 3:23, 4:12,
4:13, 6:2, 7:6, 9:15,
10:10, 19:14, 31:4,
31:8, 32:17, 33:1
**Kids'** [2] - 4:21, 37:14
**Kinkade** [1] - 3:17
**KINKADE** [2] - 2:10,
3:16
**knows** [5] - 5:20,
19:19, 20:25, 22:1,
36:17

### L

**Laches** [1] - 17:11
**laches** [20] - 4:10,
4:14, 5:18, 5:20, 8:1,
8:6, 8:7, 8:10, 8:13,
14:5, 14:11, 15:16,
17:4, 17:7, 18:13,
34:13, 34:15, 34:18,
34:19, 35:3
**lack** [1] - 10:16
**Lanham** [2] - 6:15,
6:25

**last** [13] - 5:5, 5:25,
19:15, 25:7, 25:12,
27:4, 28:3, 32:2,
32:7, 32:18, 34:11,
34:12, 35:12
**lateness** [1] - 5:8
**latest** [1] - 27:3
**law** [4] - 15:14, 21:10,
21:17, 23:7
**LAW** [2] - 2:12, 2:15
**lawsuit** [7] - 17:8,
17:13, 18:22, 18:25,
19:1, 19:8
**least** [1] - 11:24, 24:17
**legal** [4] - 14:2, 14:4,
19:22
**less** [1] - 34:5
**letter** [8] - 4:11, 7:4,
7:8, 7:9, 17:25,
19:23, 33:17, 40:21
**letters** [4] - 38:19,
41:7, 41:10, 41:25
**letting** [1] - 23:6
**level** [3] - 14:16,
14:20, 15:9
**light** [1] - 5:8
**likely** [1] - 15:5
**LIMINE** [1] - 1:19
**limine** [1] - 4:18
**limit** [4] - 23:2, 24:9,
24:12, 29:21
**limitation** [1] - 36:11
**limitations** [6] - 6:16,
6:20, 7:16, 7:24,
18:20, 18:23
**limited** [1] - 24:13
**limits** [1] - 20:13
**line** [1] - 3:11
**listen** [1] - 33:15
**listening** [1] - 31:19
**litigation** [1] - 7:9
**LITTERINE** [1] - 2:6
**Litterine** [1] - 3:10
**LITTERINE-
    KAUFMAN** [1] - 2:6
**Litterine-Kaufman** [1]
    - 3:10
**LLP** [3] - 2:3, 2:5, 2:9
**look** [16] - 11:18, 12:9,
13:10, 13:12, 13:13,
14:25, 16:19, 19:20,
20:22, 22:6, 22:9,
23:20, 30:13, 30:18,
35:18
**looked** [3] - 28:15,
28:16
**looking** [6] - 4:1,
26:20, 35:21, 37:1,
37:17, 38:11
**looks** [1] - 26:15

### M

**mark** [2] - 4:13, 7:16
**marketing** [1] - 7:18
**mathematical** [1] -
27:1
**matter** [7] - 7:13, 8:8,
9:11, 25:22, 26:10,
26:24, 42:10
**Matter** [1] - 42:5
**mean** [3] - 12:16, 15:2,
38:13
**meantime** [1] - 7:14
**meet** [1] - 31:15
**memory** [1] - 11:5
**mention** [2] - 6:6, 6:10
**mentioned** [1] - 7:4
**methodologies** [3] -
13:5, 16:4, 27:25
**methodology** [5] -
9:17, 26:22, 27:12,
29:15, 33:6
**million** [2] - 7:17,
15:17
**mind** [2] - 10:14,
37:11
**minutes** [1] - 30:5
**missing** [1] - 35:24
**Monday** [2] - 5:5,
41:15
**monetary** [1] - 4:9
**monkey** [1] - 16:6
**morning** [7] - 3:2, 3:6,
3:9, 3:12, 3:16, 3:19,
3:24
**motion** [1] - 4:18
**MOTION** [1] - 1:19
**move** [4] - 15:23,
16:23, 33:25, 36:17
**MS** [2] - 3:6, 3:22
**multiple** [1] - 23:13
**multiplied** [1] - 29:23
**multiply** [1] - 30:20

### N

**name** [1] - 17:18
**narrow** [1] - 18:5
**national** [12] - 6:14,
7:17, 12:2, 15:17,
20:25, 21:18, 21:19,
21:20, 21:22, 21:24,
30:17
**nationally** [4] - 10:10,
21:9, 21:11, 21:13
**nationwide** [14] - 4:21,
4:23, 8:15, 8:23, 9:5,
9:11, 9:15, 11:21,

11:24, 21:2, 21:4, 22:12, 27:11
**Natural** [3] - 22:4, 22:10, 22:16
**nature** [2] - 32:7, 35:3
**need** [31] - 4:15, 8:11, 10:21, 13:16, 16:8, 16:22, 31:2, 31:17, 32:6, 32:23, 32:25, 33:9, 33:20, 34:2, 34:6, 35:11, 35:25, 36:21, 37:9, 37:15, 37:18, 37:19, 37:20, 38:5, 38:25, 39:3, 39:19, 39:23, 40:16, 40:24, 41:19
**needed** [4] - 9:16, 10:17, 27:20, 37:23
**needs** [7] - 14:22, 28:2, 32:5, 36:2, 36:3, 40:23
**net** [9] - 26:16, 31:9, 32:25, 33:6, 34:4, 34:5, 36:4, 38:6, 40:18
**never** [4] - 7:10, 10:13, 17:11, 17:12
**New** [7] - 6:17, 6:18, 6:24, 7:1, 7:12, 20:5, 22:17
**NEW** [3] - 1:1, 1:11, 1:15
**new** [5] - 9:2, 9:8, 9:17, 9:25, 33:16
**newest** [1] - 5:25
**next** [16] - 4:15, 5:10, 10:1, 16:16, 18:15, 19:13, 19:16, 30:23, 31:15, 32:23, 33:3, 33:14, 35:9, 41:3, 41:6, 41:22
**NICK** [1] - 2:13
**Nick** [1] - 3:20
**NO** [1] - 1:5
**none** [2] - 13:9, 27:17
**noon** [1] - 39:2
**nothing** [3] - 7:6, 7:7, 7:19
**notice** [2] - 20:11, 20:13
**nowhere** [1] - 27:13
**number** [18] - 11:19, 13:15, 24:22, 24:25, 25:1, 26:24, 26:25, 29:7, 29:18, 30:3, 30:10, 30:15, 30:18, 32:8, 35:18, 36:4, 38:4, 40:16
**numbers** [13] - 12:19, 25:4, 25:5, 25:6,

32:6, 32:25, 33:2, 34:8, 34:9, 34:19, 37:25, 40:1, 41:1

---

## O

**O'Reilly** [1] - 3:7
**O'REILLY** [1] - 2:3
**object** [1] - 23:19
**objected** [1] - 7:5
**obtained** [3] - 21:24, 25:3, 30:19
**obviates** [2] - 4:15, 8:11
**obviously** [11] - 12:13, 15:10, 15:20, 33:20, 34:13, 34:15, 34:16, 36:9, 36:14, 36:17, 38:13
**Obviously** [1] - 8:19
**occurred** [1] - 19:11
**OF** [2] - 1:1, 1:15
**OFFICIAL** [1] - 1:24
**OFOSU** [2] - 2:3, 3:6
**Ofosu** [1] - 3:7
**OFOSU-ANTWI** [2] - 2:3, 3:6
**Ofosu-Antwi** [1] - 3:7
**omitting** [1] - 20:23
**ON** [2] - 1:19, 1:20
**once** [1] - 18:8
**one** [7] - 8:18, 16:7, 18:5, 18:6, 20:12, 22:14, 36:6
**One** [2] - 10:3, 31:24
**opening** [3] - 6:4, 6:5, 20:2
**opinion** [5] - 4:7, 4:22, 4:23, 5:15, 5:16
**OPINIONS** [1] - 1:20
**opinions** [3] - 4:19, 4:20, 9:8
**opportunity** [2] - 28:4, 38:13
**opposed** [1] - 36:20
**opposition** [2] - 6:8, 6:11
**order** [10] - 31:13, 32:17, 32:19, 32:21, 33:1, 34:15, 37:21, 37:24, 38:20, 41:20
**organizations** [1] - 11:15
**original** [6] - 5:1, 11:23, 26:22, 27:14, 29:24, 40:15
**originally** [3] - 15:18, 27:12, 29:16
**ORRICK** [1] - 2:5

**Orrick** [1] - 3:8
**outset** [3] - 4:24, 7:4, 9:4
**outside** [1] - 22:7
**overall** [1] - 12:1
**overbroad** [1] - 10:16
**overcome** [3] - 8:2, 8:6
**own** [8] - 7:21, 12:17, 16:12, 16:14, 21:3, 21:4, 21:11, 21:12
**owned** [1] - 21:2

---

## P

**page** [1] - 6:22
**paper** [3] - 25:17, 31:12, 35:17
**part** [1] - 23:6
**particularly** [1] - 6:17
**parties** [2] - 37:23, 40:21
**party** [4] - 30:12, 31:18, 37:21, 38:5
**party's** [3] - 17:12, 22:6, 31:11
**PC** [2] - 2:12, 2:15
**penalty** [1] - 13:24
**pending** [1] - 4:17
**per** [12] - 24:22, 25:1, 26:23, 29:2, 29:5, 29:8, 29:13, 29:23, 30:3, 30:17, 30:18, 30:20
**percent** [1] - 15:7
**perfect** [2] - 33:4, 41:1
**perform** [1] - 24:11
**Perhaps** [1] - 7:10
**period** [9] - 7:15, 17:22, 17:23, 18:3, 19:11, 32:9, 36:12, 38:16, 40:18
**person** [1] - 31:24
**PETER** [2] - 1:14, 2:6
**Peter** [7] - 3:9, 11:2, 33:10, 33:18, 34:12, 38:8, 41:21
**PGS** [1] - 1:6
**phrase** [1] - 11:14
**pick** [4] - 12:16, 19:21, 36:24, 40:25
**piece** [2] - 31:12, 35:17
**Pitman** [1] - 12:5
**PITTMAN** [43] - 2:12, 2:13, 3:20, 12:5, 12:7, 17:3, 17:19, 17:21, 18:18, 19:4, 19:6, 19:8, 19:18,

20:11, 22:22, 23:1, 23:3, 28:9, 28:11, 28:24, 29:1, 29:4, 29:10, 29:14, 31:1, 31:10, 31:20, 31:23, 32:1, 32:10, 32:14, 32:16, 33:4, 35:10, 35:20, 36:23, 38:21, 39:19, 40:3, 40:10, 40:19, 41:3, 41:23
**Pittman** [19] - 3:21, 10:6, 17:2, 17:14, 19:2, 22:19, 27:10, 27:21, 28:10, 28:23, 31:5, 31:24, 32:5, 32:22, 35:8, 37:3, 39:18, 40:23, 41:8
**Pittman's** [1] - 36:19
**Pizzi** [1] - 3:7
**PIZZI** [1] - 2:3
**place** [1] - 16:10
**plaintiff** [3] - 3:5, 3:10, 35:7
**PLAINTIFF** [3] - 1:4, 2:4, 2:7
**plaintiff's** [1] - 4:18
**PLAINTIFF'S** [1] - 1:19
**point** [14] - 4:24, 5:19, 8:15, 8:24, 13:4, 15:9, 19:21, 26:4, 27:21, 27:23, 32:22, 34:16, 36:6, 38:19
**pointed** [1] - 20:2
**poisonous** [2] - 21:5, 21:14
**portion** [1] - 11:4
**position** [2] - 10:25, 20:21
**possible** [1] - 36:18
**practicable** [2] - 31:3, 38:6
**practical** [2] - 36:4, 40:17
**practically** [1] - 40:17
**precedent** [1] - 8:9
**precise** [2] - 34:9, 40:5
**preclude** [1] - 34:13
**precluded** [1] - 5:18
**precludes** [1] - 8:7
**prejudice** [4] - 5:21, 5:23, 7:22, 7:23
**prejudicial** [1] - 5:11
**prepare** [1] - 35:11
**prepared** [7] - 16:15, 20:14, 22:2, 35:9, 35:10, 35:13, 39:22
**Prepared** [1] - 35:10
**preparing** [1] - 40:2

**present** [2] - 14:23, 36:10
**presumption** [8] - 7:25, 8:1, 21:2, 21:10, 21:11, 21:18, 21:19
**pretty** [1] - 40:6
**previous** [2] - 20:1, 25:11
**previously** [1] - 36:7
**proceed** [1] - 16:21
**proceeding** [1] - 9:25
**proceedings** [1] - 42:10
**process** [2] - 26:18, 33:25
**produce** [6] - 24:21, 25:9, 32:19, 33:2, 37:24
**produced** [3] - 10:9, 10:13, 27:3
**producing** [1] - 25:21
**product** [4] - 38:24, 39:1, 39:4, 39:23
**profits** [14] - 4:21, 4:23, 5:3, 9:5, 9:6, 9:8, 9:12, 31:9, 32:25, 33:7, 34:4, 34:5, 36:4, 38:6
**program** [1] - 26:11
**projected** [3] - 24:17, 32:7, 34:8
**projection** [1] - 25:12
**projections** [6] - 27:4, 27:5, 28:1, 32:9, 32:12, 35:12
**promise** [1] - 36:18
**proof** [2] - 18:17, 18:18
**proper** [1] - 23:4
**properly** [1] - 7:1
**proposal** [1] - 16:24
**propose** [1] - 13:21
**proposed** [3] - 5:16, 6:9, 16:9
**proposing** [1] - 13:5
**propound** [1] - 8:23
**propounded** [1] - 4:23
**prove** [1] - 21:24
**provide** [5] - 6:5, 15:15, 32:21, 33:11, 38:17
**provided** [7] - 5:6, 24:14, 27:7, 30:12, 30:13, 32:2, 35:22
**provides** [1] - 9:2
**purposes** [1] - 19:21
**pursuant** [1] - 8:9
**pursuing** [1] - 17:8
**put** [6] - 9:4, 9:25,

12:25, 15:18, 16:12, 26:12
**puts** [2] - 34:16, 40:23
**putting** [1] - 27:18

**Q**

**questions** [1] - 9:20
**quickly** [2] - 16:16, 36:18

**R**

**raise** [1] - 36:7
**rather** [1] - 37:18
**reach** [2] - 17:20, 36:9
**read** [1] - 22:20
**reading** [1] - 14:5
**real** [1] - 41:1
**really** [6] - 8:1, 10:16, 10:21, 26:9, 37:18, 38:14
**reason** [3] - 11:7, 19:18, 24:10
**reasonable** [2] - 36:4, 38:16
**reasonably** [1] - 31:3
**reasoned** [1] - 13:24
**reasons** [4] - 4:8, 5:13, 5:14, 10:3
**rebuttal** [2] - 12:13, 27:9
**receipt** [1] - 41:25
**receive** [1] - 19:10
**received** [2] - 25:20, 29:8
**recite** [1] - 4:20
**recommendations** [1] - 37:12
**record** [7] - 14:19, 14:23, 22:3, 24:18, 28:12, 28:17, 42:10
**records** [15] - 13:11, 13:12, 13:18, 25:4, 25:9, 25:10, 25:11, 28:12, 28:22, 29:17, 29:19, 30:19, 37:14, 39:3, 39:5
**recover** [1] - 17:22
**reduced** [1] - 31:7
**referring** [1] - 18:6
**regard** [4] - 10:14, 28:22, 34:9, 35:17
**registration** [4] - 21:1, 21:10, 21:24
**reiterate** [1] - 15:14
**rejected** [2] - 21:12, 21:19

**related** [1] - 13:14
**relates** [1] - 26:21
**relegated** [1] - 5:1
**relied** [2] - 24:16, 32:12
**relief** [2] - 4:9
**religious** [2] - 36:21, 37:4
**relying** [1] - 39:21
**remedies** [6] - 4:15, 6:4, 6:5, 6:9, 8:9, 11:9
**remedy** [9] - 6:12, 10:9, 10:21, 10:23, 11:3, 11:7, 14:1, 19:20, 34:3
**remind** [1] - 6:1
**render** [1] - 34:19
**rendered** [1] - 11:8
**report** [40] - 5:1, 5:7, 5:9, 5:10, 5:25, 8:14, 9:1, 9:3, 9:4, 9:7, 9:9, 9:10, 9:17, 10:9, 10:15, 11:23, 12:14, 13:1, 15:17, 16:9, 16:11, 16:12, 16:13, 16:14, 16:21, 23:20, 25:13, 27:3, 27:14, 27:25, 28:1, 28:3, 29:24, 32:2, 32:15, 35:11, 36:15, 36:25, 39:9, 40:15
**reported** [2] - 30:10, 30:11
**Reporter** [1] - 42:15
**REPORTER** [1] - 1:24
**reports** [2] - 12:15, 23:20
**represent** [1] - 15:6
**representing** [1] - 38:14
**reputation** [1] - 7:17
**request** [1] - 11:3
**requesting** [1] - 4:18
**require** [1] - 37:23
**resolves** [1] - 8:10
**respect** [4] - 8:8, 9:1, 13:7, 19:1
**respective** [1] - 6:9
**response** [1] - 33:5
**returns** [1] - 11:14
**revenue** [21] - 9:5, 9:6, 9:15, 21:22, 23:22, 24:22, 24:25, 25:1, 25:21, 26:17, 26:23, 26:24, 27:12, 29:5, 29:8, 29:12, 29:23, 30:10, 30:18, 30:20
**revenue-per-vehicle** [2] - 24:22, 25:1

**revenue-per-week** [1] - 26:23
**revenues** [30] - 5:3, 9:8, 9:12, 11:18, 11:20, 11:21, 11:22, 12:2, 12:19, 24:16, 24:17, 24:18, 24:20, 24:21, 24:22, 24:23, 25:15, 25:16, 25:17, 25:19, 26:20, 29:2, 29:17, 30:14, 30:16, 30:17, 31:4, 40:18
**rights** [11] - 20:9, 21:2, 21:4, 21:7, 21:11, 21:13, 21:17, 21:18, 21:19, 21:22, 22:7
**rocket** [2] - 29:25, 30:8
**rolling** [1] - 33:22
**ROTHSCHILD** [1] - 2:9
**Rothschild** [1] - 3:17
**roughly** [1] - 18:1
**Rule** [1] - 5:11
**run** [1] - 35:2

**S**

**Santana** [1] - 6:21
**sat** [1] - 7:13
**saw** [1] - 19:14
**science** [2] - 29:25, 30:8
**scope** [1] - 8:12
**seconds** [1] - 28:18
**see** [11] - 13:14, 14:11, 20:10, 23:21, 28:21, 31:11, 34:19, 35:1, 35:2, 37:14, 40:15
**seek** [1] - 15:22
**seeking** [1] - 10:6
**seeks** [1] - 4:21
**send** [1] - 40:21
**sense** [3] - 31:15, 31:21, 35:10
**sent** [2] - 7:8, 17:24
**serious** [1] - 22:17
**service** [1] - 24:11
**set** [4] - 5:10, 28:22, 33:16, 41:9
**Sheridan** [1] - 3:1
**SHERIDAN** [1] - 1:14
**show** [5] - 20:18, 25:17, 25:19, 25:20, 29:4
**showing** [1] - 18:9
**side** [4] - 8:20, 11:12, 11:17, 37:20
**sides** [5] - 6:5, 6:9,

12:12, 12:15
**Signature** [1] - 42:15
**simple** [5] - 9:12, 9:13, 27:1, 27:15, 30:21
**simplicity** [1] - 27:21
**sit** [1] - 13:3
**sitting** [2] - 7:14, 15:5
**six** [10] - 6:18, 7:2, 17:22, 17:23, 17:25, 18:20, 18:21, 18:23, 19:11, 20:19
**six-year** [5] - 6:18, 7:2, 17:22, 17:23, 18:20
**sometime** [2] - 36:25, 41:13
**somewhat** [1] - 13:24
**somewhere** [1] - 41:16
**sort** [1] - 36:10
**sought** [1] - 15:17
**sounds** [1] - 38:21
**source** [1] - 30:12
**speaking** [1] - 20:12
**speaks** [1] - 8:15
**specific** [3] - 22:9, 22:15, 24:7
**specifically** [4] - 4:18, 6:16, 6:22, 14:18
**standing** [1] - 36:16
**stands** [1] - 16:9
**start** [3] - 3:5, 17:9, 31:5
**started** [4] - 20:25, 21:5, 21:6, 21:17
**STATE** [1] - 1:11
**state** [8] - 8:18, 9:7, 9:16, 11:20, 11:22, 22:14, 28:13
**state-by-state** [1] - 11:22
**states** [6] - 8:19, 8:21, 8:22, 21:9, 28:14, 40:16
**STATES** [1] - 1:1
**statute** [8] - 6:16, 6:19, 6:20, 7:2, 7:15, 7:24, 18:20, 18:23
**still** [4] - 10:25, 20:16, 20:19, 34:25
**stopped** [2] - 18:7, 18:8, 18:11
**straightforward** [1] - 13:17
**STREET** [1] - 1:11
**stricken** [1] - 15:18
**study** [1] - 27:11
**stuff** [1] - 13:19
**subject** [2] - 10:17, 27:18
**submit** [2] - 16:7,

36:25
**submitted** [4] - 8:14, 12:14, 12:15, 12:18
**subtract** [1] - 13:15
**sued** [1] - 7:10
**sufficient** [1] - 15:15
**suggest** [2] - 14:14, 27:15
**suggesting** [1] - 30:7
**suit** [2] - 7:8, 7:22
**supplemental** [9] - 5:6, 5:10, 5:25, 9:1, 9:9, 13:1, 16:9, 16:21, 36:15
**suppose** [3] - 10:10, 10:16, 37:10
**SUTCLIFFE** [1] - 2:5

**T**

**tax** [1] - 11:14
**TELEPHONE** [1] - 2:1
**terms** [9] - 5:2, 11:9, 13:24, 14:16, 23:22, 23:24, 28:5, 40:24, 41:3
**test** [2] - 12:25, 16:3
**testimony** [1] - 8:8
**Texas** [56] - 5:1, 5:2, 5:7, 6:3, 6:6, 6:10, 6:12, 7:6, 8:18, 9:8, 12:10, 12:19, 13:7, 13:8, 13:13, 13:14, 14:17, 15:20, 16:14, 18:16, 19:16, 20:8, 20:14, 20:17, 20:19, 20:20, 21:6, 22:24, 23:2, 24:7, 24:9, 25:3, 26:21, 27:13, 27:16, 27:17, 27:25, 28:11, 28:18, 29:11, 29:13, 29:21, 29:22, 30:4, 30:15, 30:19, 31:5, 31:13, 34:10, 35:2, 36:5, 40:14
**themselves** [2] - 3:8, 3:18
**theory** [15] - 4:21, 5:7, 6:7, 6:10, 6:14, 8:15, 8:23, 9:2, 9:3, 11:23, 11:24, 12:25, 15:18, 27:17, 31:14
**they've** [4] - 11:18, 22:4, 25:9
**thinks** [3] - 23:8, 26:11, 33:7
**Third** [2] - 8:9, 15:15
**third** [2] - 30:12, 31:18
**third-party** [2] - 30:12,

31:18
**three** [6] - 4:8, 5:12, 5:14, 28:18, 32:7, 35:12
**throw** [3] - 16:6, 16:18, 16:23
**tied** [1] - 28:5
**tight** [1] - 33:23
**timeframe** [1] - 18:12
**timely** [1] - 5:17
**timing** [1] - 33:22
**TO** [1] - 1:19
**today** [4] - 18:19, 18:25, 19:2, 36:9
**together** [2] - 13:11, 35:16
**tomorrow** [2] - 33:21, 39:2
**took** [5] - 24:22, 24:24, 29:7, 29:22, 30:4
**topic** [1] - 6:22
**total** [9] - 24:22, 24:25, 26:24, 26:25, 29:7, 30:2, 30:9
**transcript** [2] - 10:4, 42:9
**tree** [2] - 21:5, 21:14
**TRENTON** [1] - 1:11
**trial** [7] - 4:15, 5:9, 8:4, 9:23, 20:20, 26:2
**tried** [1] - 24:11
**trouble** [1] - 12:23
**true** [1] - 20:15
**truth** [2] - 32:5
**trying** [2] - 16:3, 35:23
**Tuesday** [3] - 5:10, 16:16, 16:23
**turning** [2] - 5:24, 23:10
**twice** [1] - 7:15
**two** [10] - 9:24, 22:4, 25:12, 25:23, 26:5, 27:4, 31:17, 35:12, 37:17, 38:18
**type** [3] - 10:22, 24:1, 24:2

## U

**U.S** [2] - 1:15, 1:24
**unavailable** [1] - 13:2
**under** [5] - 4:24, 5:11, 6:25, 21:10, 22:24
**Understood** [3] - 15:1, 34:11, 40:12
**undertake** [1] - 26:10
**UNITED** [1] - 1:1

**unless** [2] - 13:17, 20:7
**untimely** [2] - 5:11, 17:9
**up** [19] - 7:11, 9:16, 11:18, 13:15, 16:16, 24:6, 24:17, 25:5, 25:16, 26:23, 29:8, 30:16, 33:6, 33:13, 33:16, 36:3, 38:6, 39:23, 41:9
**upcoming** [1] - 5:9
**uses** [2] - 9:14
**USPTO** [1] - 21:25
**utilize** [1] - 40:5

## V

**VALERIE** [1] - 2:15
**Valerie** [1] - 3:22
**vehicle** [13] - 24:22, 25:1, 26:23, 27:12, 29:3, 29:5, 29:8, 29:13, 29:23, 30:3, 30:17, 30:18, 30:20
**vehicles** [5] - 25:2, 30:3, 30:10, 30:15, 30:18
**verdict** [4] - 6:1, 8:25, 11:8, 22:24
**versus** [1] - 3:3
**vetted** [1] - 28:2
**view** [2] - 5:9, 8:24
**VOGL** [54] - 2:6, 3:9, 3:14, 4:3, 4:6, 9:19, 9:21, 10:2, 10:7, 10:12, 10:19, 11:1, 11:12, 11:17, 12:11, 12:21, 12:24, 13:20, 14:3, 14:14, 15:1, 15:4, 15:13, 16:2, 16:5, 17:1, 27:10, 30:25, 31:22, 33:10, 33:18, 34:1, 34:11, 34:21, 34:24, 35:4, 35:7, 36:6, 36:14, 36:24, 37:6, 37:8, 38:1, 38:8, 39:7, 39:15, 40:12, 41:2, 41:10, 41:13, 41:15, 41:18, 41:21, 42:1
**Vogl** [33] - 3:9, 3:12, 4:1, 9:18, 11:2, 12:6, 12:8, 14:22, 17:5, 18:6, 18:14, 20:2, 23:11, 23:14, 24:15, 26:2, 26:19, 27:9, 28:14, 30:7, 32:2, 33:10, 33:19, 34:12,

35:9, 35:20, 35:21, 35:24, 37:4, 38:8, 38:22, 41:8, 41:21
**Vogl's** [1] - 30:24
**Vs** [1] - 1:5

## W

**waiting** [1] - 36:16
**Walsh** [1] - 3:7
**WALSH** [1] - 2:3
**wants** [2] - 15:9, 23:8
**warehouse** [1] - 26:16
**wash** [1] - 21:16
**Wednesday** [2] - 5:25, 28:3
**week** [16] - 4:16, 9:24, 10:1, 26:23, 30:23, 31:16, 32:3, 32:23, 33:3, 33:15, 35:9, 35:19, 41:4, 41:6, 41:8, 41:11
**whatsoever** [2] - 6:10, 21:4
**WILDE** [2] - 2:15, 3:22
**Wilde** [1] - 3:22
**winner** [1] - 22:17
**witness** [2] - 12:13, 26:13
**word** [1] - 10:17
**works** [1] - 18:19
**worth** [1] - 7:18
**wrench** [1] - 16:6
**write** [2] - 35:17, 38:2
**written** [1] - 7:5

## Y

**Yanaros** [1] - 3:22
**YANAROS** [2] - 2:15, 2:15
**year** [14] - 6:18, 7:2, 14:10, 14:11, 17:22, 17:23, 18:20, 28:18, 31:5, 34:20, 35:1, 35:2, 40:2
**years** [15] - 7:15, 17:25, 18:21, 18:23, 19:11, 20:19, 25:8, 25:11, 25:12, 27:4, 30:9, 32:7, 32:18, 35:12, 40:18