# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARS 4 KIDS INC., | Civil Action No. 3:14-cv-7770 (PGS/LHG) |
| Plaintiff, | |
| v. | **REDACTED VERSION** |
| AMERICA CAN!, | |
| Defendant. | |
| AMERICA CAN! CARS FOR KIDS, | Civil Action No. 3:16-cv-4232 (PGS/LHG) |
| Plaintiff, | |
| v. | *Electronically Filed* |
| KARS 4 KIDS, INC., | |
| Defendant. | |

## KARS 4 KIDS INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 60(a) AND 60(b)

Liza M. Walsh
Marc D. Haefner
Eleonore Ofosu-Antwi
WALSH PIZZI O'REILLY FALANGA LLP
100 Mulberry Street,15ᵗʰ Floor
Newark, New Jersey 07102
(973) 757-1100

Peter D. Vogl
David Litterine-Kaufman
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
(212) 506-5000

*Attorneys for*
*KARS 4 KIDS INC.*

# TABLE OF CONTENTS

**Page**

I.    Preliminary Statement ........................................................................1

II.   Background ........................................................................................3

    A.    Determination of Net Revenues and Rejection of
        Apportionment........................................................................3

    B.    Deduction of Common Expenses..........................................5

    C.    Correction of the Memorandum's Inconsistent Treatment of
        Apportionment........................................................................6

III.  Argument ...........................................................................................8

IV.   Conclusion .......................................................................................11

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Daiichi Sankyo v. Mylan Pharm. Inc.*,
  No. 07-3039, 2016 WL 6138241 (D.N.J. Oct. 20, 2016) ...................................9

*In re FleetBoston Fin. Corp. Sec. Litig.*,
  No. CIV A 02-4561 (GEB), 2007 WL 4225832
  (D.N.J. Nov. 28, 2007) ...................................................................................9, 10

*Pfizer Inc. v. Uprichard*,
  422 F.3d 124 (3d Cir. 2005) ................................................................................9

*Piacentile v. Thorpe*,
  No. CIV.A. 12-7156 ES, 2014 WL 7205340
  (D.N.J. Dec. 15, 2014) ......................................................................................10

*Stradley v. Cortez*,
  518 F.2d 488 (3d Cir. 1975) ..............................................................................10

*United States v. Stuart*,
  392 F.2d 60 (3d Cir. 1968) ..................................................................................9

## Other Authorities

Fed. R. Civ. P. 60(a) .........................................................................................9, 10

Fed. R. Civ. P. 60(b) ...........................................................................................10

Fed. R. Civ. P. 60(c) ...........................................................................................10

## I.    <u>Preliminary Statement</u>

Kars 4 Kids, Inc. ("Kars 4 Kids") respectfully submits this memorandum of law in support of its motion for reconsideration pursuant to Federal Rules of Civil Procedure 60(a) and 60(b) to correct a computational error in the calculation of Kars 4 Kids' disgorgeable net profits contained in the Court's April 1, 2020 Memorandum, Dkt. 325 (the "Memorandum" or "Mem."), and reflected in the amount of disgorgement awarded in the April 1, 2020 Judgment, Dkt. 326 (the "Judgment").

In calculating Kars 4 Kids' net profits from the infringement found by the jury, the Court declined to perform an apportionment of Kars 4 Kids' Texas revenue, and held instead that all of Kars 4 Kids' net revenue from Texas donors was infringing.[1]  *See* Mem. at 10-12.  The Court went on to deduct expenses using the full absorption approach presented by Kars 4 Kids' damages expert, David A. Hall, and applying that approach, deducted a portion of common expenses attributable to Kars 4 Kids' Texas revenues.  *Id.* at 12-13, 14.  The Court also adopted Mr. Hall's calculation of the amount of common expenses that should be deducted under this approach.  *Id.* at 14.

---

[1] Kars 4 Kids does not here seek reconsideration of the Court's rejection of apportionment.  Kars 4 Kids reserves all rights, including all appellate rights, with respect to the Memorandum and the Judgment.

However, Mr. Hall's calculation of the amount of deductible common expenses was based on Kars 4 Kids' ***apportioned*** net Texas revenue.  *See* Kars 4 Kids' Post-Trial Br. in Opp'n to America Can's Request for Relief, Dkt. 310 ("Kars 4 Kids' Post-Trial Brief") at 21 n.16.  The Court therefore treated all of Kars 4 Kids' net Texas revenue as infringing in determining net profits, but treated only the apportioned amount of that revenue as infringing in calculating deductible common expenses.

If deductible common expenses are instead calculated—consistent with the Court's ruling on apportionment—using Kars 4 Kids' ***total*** net Texas revenue, the result is an increase in the amount of common expenses attributable to Texas.  *See id.* ("In the absence of apportionment, the deductions for . . . common expenses . . . would increase. . . .").  Calculating Kars 4 Kids' deductible common expenses based on its total net Texas revenue increases the amount of deductible common expenses by ████████.[2]

Kars 4 Kids therefore respectfully requests that the Court reconsider the Memorandum and Judgment, solely with respect to this aspect of the calculation of

---

[2] Mr. Hall's calculation of deductible expenses using total net Texas revenue and his original calculation using apportioned revenue are set forth in the Declaration of David A. Hall in Support of Kars 4 Kids' Motion for Reconsideration Pursuant to Federal Rules of Civil Procedure 60(a) and 60(b) (the "Hall Declaration" or "Hall Decl."), filed herewith.

Kars 4 Kids' disgorgeable net profits, and reduce the amount of the award entered against Kars 4 Kids by ███████, to █████████.

## II.   **Background**

The methodology for calculating disgorgeable net profits set out in the Memorandum begins with a determination of Kars 4 Kids' net revenues that resulted from the infringement found by the jury. Mem. at 9. After net revenues have been determined, adjustments and expenses associated with those net revenues are deducted to calculate the final amount of net profits to be disgorged. *Id.* at 10, 16. One adjustment considered by the Court, but ultimately rejected, was apportionment of net revenues between infringing versus non-infringing factors. *See infra* § II.A. Another, which the Court adopted, was a deduction, under the "full absorption approach," for a portion of common expenses that were incurred in support of Kars 4 Kids' operations generally. *Id.* at 12-13, 14. However, the amount of common expenses deducted by the Court was based on apportioned revenues and is therefore inconsistent with the Court's rejection of apportionment. *See infra* § II.B. Recalculating the amount of common expenses using total net Texas revenues reduces the amount of disgorgeable net profits to ██████████. *See infra* § II.C.

### A.   **Determination of Net Revenues and Rejection of Apportionment**

During the November 21, 2019 hearing on remedies, the parties' experts agreed that Kars 4 Kids' total net revenue from Texas donors between 2008 and June

30, 2019, was $16,067,943.  *See* Declaration of Briggs M. Wright ("Wright Decl.") Exs. 1 and 2.  The Court adopted that as the amount of revenue to use in the first step of the net profits calculation.  Mem. at 9 ("The Court adopts the . . . net revenue amounts upon which the experts agreed . . . ."); Mem. at 16 (calculating "Net Profit" by subtracting certain expenses from $16,067,943 of "Net Revenues").

One of the adjustments to net revenue calculated by Mr. Hall was an apportionment that reduced the amount of revenue attributable to the infringement found by the jury in his calculations by almost ████████.  Mr. Hall derived a formula that he used to distinguish between Texas revenue that was attributable to the infringement found by the jury, i.e., Kars 4 Kids' use of KARS 4 KIDS and 1-877-KARS-4-KIDS (the "KARS 4 KIDS Marks"), and Texas revenue that was attributable to other unrelated factors such as donors' desire to support Kars 4 Kids' charitable mission or to obtain a tax deduction.  *See* Wright Decl. Ex. 2; Ex. 3 at 160:24-161:1, 166:8-14.  Mr. Hall's purpose in apportioning net revenues was to avoid an award of amounts earned by Kars 4 Kids from factors other than infringement, because such amounts cannot be recovered as part of an infringement remedy.  *See* Wright Decl. Ex. 3 at 163:20-164:1.

Mr. Hall concluded that, for the years 2008 through June 30, 2019, approximately 63% of Kars 4 Kids' net Texas revenue was attributable to use of the KARS 4 KIDS Marks.  Wright Decl. Ex. 2; Ex. 3 at 166:15-167:20. Mr. Hall's

apportionment thus reduced the amount of net revenue used in his calculations of deductible expenses by almost ███████.  *See* Wright Decl. Exs. 2 and 4.

The Court rejected Mr. Hall's apportionment analysis and instead based its net profits calculation on Kars 4 Kids' total net Texas revenues.  Mem. at 10-12, 16.

## B.   Deduction of Common Expenses

In calculating deductible expenses, Mr. Hall used the "full absorption method," under which some portion of overhead costs are allocated to the infringing revenue.  Mem. at 12.  Mr. Hall explained that the full absorption method is the correct one for this action because Kars 4 Kids "operates nationally with a single source revenue and incurs costs to support that effort."  Wright Decl. Ex. 3 at 171:3-5.  As a result, Mr. Hall allocated a portion of Kars 4 Kids' common expenses to the infringing Texas revenue, because "the proper way to reflect an accounting for any subpart of . . . Kars 4 Kids would be to fully allocate the costs, because those costs benefit the national operation on that single source revenue."  *Id.* at 171:8-11.

Mr. Hall's calculations of common expenses allocated to Texas incorporated the amount of net revenue attributable to the infringement found by the jury from his apportionment analysis.  To calculate the portion of deductible common expenses to allocate to the Texas revenue, Mr. Hall calculated Kars 4 Kids' common expenses as a percentage of its total nationwide revenues.  Hall Decl. ¶ 10.  Mr. Hall then applied that percentage to the infringing revenues to derive the amount of common

expenses attributable to those revenues. *Id.* ¶¶ 11; *see also* Wright Decl. Ex. 3 at 179:3-11 (testifying that allocation of expenses was "based on the Texas revenue"). Critically, when Mr. Hall performed that calculation, he applied the percentage to the amount of Kars 4 Kids' ***apportioned*** Texas revenue ($10,115,299), not the total amount of unapportioned net revenue from Texas ($16,067,943). Hall Decl. ¶ 12; *see also* Kars 4 Kids' Damages Methodology Letter Br., Dkt. 287, at 15 ("Mr. Hall will apply the expense percentages to Kars 4 Kids' Texas vehicle donations revenue ***from its use of the KARS 4 KIDS Marks***." (emphasis added)).

The Court's Memorandum adopted Mr. Hall's use of the full absorption approach and the associated deduction of common expenses. Mem. at 14. The Court explained:

> Hall's full absorption method better reflects Kars 4 Kids' revenues and expenses in Texas because the revenues and expenses derive from one source—the car donation program; and the expense should be absorbed against revenue generated from Texas. The common expenses were likely a major factor in generating Kars 4 Kids' revenue, which contributed to the infringing revenue here.

*Id.*

## C.   Correction of the Memorandum's Inconsistent Treatment of Apportionment

The result is a mismatch in the Court's computation of net profits between the method used to calculate disgorgeable revenue and the method used to calculate deductible common expenses. *See* Hall Decl. ¶ 12. On the one hand, the

unapportioned revenue figure adopted by the Court treats all of Kars 4 Kids' net Texas revenue as infringing.  On the other hand, the deduction for common expenses adopted by the Court incorporates an apportionment analysis and so treats only 63% of Kars 4 Kids' net Texas revenue as infringing.[3]

To correct this computational error, the common expense percentages calculated by Mr. Hall must be applied to Kars 4 Kids' ***total net revenue*** from Texas rather than its apportioned net revenue. *Id.* ¶ 13.  That calculation is set forth in the following table:



| Calculation of Common Expenses Using Unapportioned Net Revenue | | |
|---|---|---|
| *A* | *B* | *C = A × B* |
| Texas Vehicle Donation Revenues | Common Expenses as a % of Revenues | Deductible Common Expenses Based on Unapportioned Net Revenues |
| Period | | |
| 2008 $ | | |
| 2009 | | |
| 2010 | | |
| 2011 | | |
| 2012 | | |
| 2013 | | |
| 2014 | | |
| 2015 | | |
| 2016 | | |
| 2017 | | |
| 2018 | | |
| 2019 | | |
| $    16,067,943 | | $ |

---

[3] Kars 4 Kids noted the potential for this inconsistency in its Post-Trial Brief, explaining that "Mr. Hall allocated a portion of . . . common expenses to Texas using a percent of revenue approach.  Without apportionment the amount of Kars 4 Kids' Texas revenue as a percent of its total revenue would increase . . . ."  Kars 4 Kids' Post-Trial Br. at 21 n.16.

*Id.* ¶ 14.

With that correction, the amount of deductible common expenses becomes ███████, which is an increase of █████ over the amount used in the Court's computation ($1,011,000). *Id.* ¶ 15. As shown in the following table, the result is a corresponding decrease in the amount of Kars 4 Kids' net profits using the Court's methodology, resulting in a total net profits award of ███████:

| Recalculation of Judgment Net Profits Using Unapportioned Net Revenue | | |
|---|---|---|
| | **Judgment** | **Corrected** |
| Net Revenues | $ 16,067,943 | $ 16,067,943 |
| Expenses: | | |
| Texas specific ad | 3,447,191 | ███████ |
| National Campaign | 362,210 | ███████ |
| Office Expenses | 1,011,000 | ███████ |
| | 4,820,402 | ███████ |
| | $ 11,247,542 | ███████ |

*Id.*

## III. <u>Argument</u>

The Court may correct this error in the computation of deductible common expenses under either Federal Rule of Civil Procedure 60(a) or 60(b)(1).

Rule 60(a) allows a court to "correct . . . a mistake arising from an oversight or omission whenever one is found in a judgment, order, or other part of the record."

8

Fed. R. Civ. P. 60(a).  An error is correctable under Rule 60(a) if it is "a copying or computational mistake." *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 130 (3d Cir. 2005) (*quoting In re W. Tex. Mktg.*, 12 F.3d 497, 504-05 (5th Cir. 1994)).  "The types of oversights or omissions subject to correction by Rule 60(a) are such inadvertent mistakes made by the Court, which clearly contradict the intentions of the Court, as easily identified by other indications in the record." *Daiichi Sankyo v. Mylan Pharm. Inc.*, No. 07-3039, 2016 WL 6138241, at *4 (D.N.J. Oct. 20, 2016).  A modification under Rule 60(a) "will be allowed" when "all the court need do is employ the judicial eraser to obliterate a mechanical or mathematical mistake." *Id.* (*quoting In re W. Tex. Mktg.*, 12 F.3d at 504-05).  "The Rule was adopted to clarify that the 'courts have power and duty to correct judgments which contain clerical errors, or judgments which have been issued due to inadvertence or mistake." *In re FleetBoston Fin. Corp. Sec. Litig.*, No. CIV A 02-4561 (GEB), 2007 WL 4225832, at *4 (D.N.J. Nov. 28, 2007) (*quoting Am. Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145 (1958)).  "Notably, the word 'clerical' does not imply that Rule 60(a) aims to remedy only ministerial errors, i.e., the errors correctable without judicial involvement. . . . [T]he Rule is 'used to make an order reflect the actual intentions of the court, plus necessary implications.'" *Id.* (*quoting Jones & Guerrero Co. v. Sealift Pacific*, 650 F.2d 1072, 1074 (9th Cir.1981)).  Rule 60(a) permits "reasonable additions to the record." *United States v. Stuart*, 392 F.2d 60, 62 (3d

Cir. 1968).  There is no time limit on a motion under Rule 60(a).  Fed. R. Civ. P.

60(a) (permitting correction of an error "whenever one is found"); *In re FleetBoston*,

2007 WL 4225832, at *4 ("[A] correction under Rule 60(a) (or an application for

such correction) may be made anytime . . . .").

Rule 60(b) allows a court to "relieve a party . . . from a final judgment, order,

or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or

excusable neglect."  Fed. R. Civ. P. 60(b).  "As contrasted with Rule 60(a)'s

applicability to mistakes of a clerical nature, Rule 60(b)(1) is concerned with

mistakes of a substantive nature." *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir.

1975).  Rule 60(b)(1) applies to mistakes and inadvertence by a party or by a court.

*Piacentile v. Thorpe*, No. CIV.A. 12-7156 ES, 2014 WL 7205340, at *2 (D.N.J. Dec.

15, 2014).  A motion under Rule 60(b)(1) is timely if brought within one year after

the entry of the judgment or order.  Fed. R. Civ. P. 60(c)(1).

Correction of the error in computing deductible common expenses clearly

falls within the Court's power under Rule 60(a) to correct computational errors and

clerical mistakes.  The actual intention of the Court is plain from the Memorandum:

to treat all of Kars 4 Kids' net Texas revenues as infringing and deduct the common

expenses attributable to those revenues. *See* Mem. at 14 ("Hall's full absorption

method better reflects Kars 4 Kids' revenues and expenses in Texas because the

revenues and expenses derive from one source—the car donation program; and the

10

expense should be absorbed against revenue generated from Texas."). The common expenses calculation does not involve a mistake of a "substantive nature," and correcting it will make the Judgment reflect the Court's actual intention.

Even if the Court were to conclude that correcting this computational error does not fall within the ambit of Rule 60(a), the error can be corrected under the broader scope of Rule 60(b)(1). Kars 4 Kids brought the instant motion within one month of the entry of judgment. Indeed, briefing on the scope of an injunction remains ongoing, and the time for Kars 4 Kids to notice an appeal has not yet expired. The Court therefore can correct the error under either Rule 60(a) or Rule 60(b)(1).

## IV.    <u>Conclusion</u>

For the foregoing reasons, Kars 4 Kids respectfully requests that the Court correct the Memorandum and Judgment to reflect that the methodology adopted by the Court for calculating net profits results in an award of ███████ .

Dated: April 29, 2020

By: *s/ Marc D. Haefner*

Liza M. Walsh
Marc D. Haefner
Eleonore Ofosu-Antwi
WALSH PIZZI O'REILLY FALANGA LLP
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
(973) 757-1100

Peter D. Vogl
David Litterine-Kaufman
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
(212) 506-5000

*Attorneys for*
*KARS 4 KIDS INC.*