## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARS 4 KIDS INC., <br><br> *Plaintiff*, <br><br> v. <br><br> AMERICA CAN!, <br><br> *Defendant*. | **MEMORANDUM** <br><br> Civil Action No. <br> 3:14-cv-7770 (PGS) (LHG) |
| AMERICA CAN! CARS FOR KIDS, <br><br> *Plaintiff*, <br><br> v. <br><br> KARS 4 KIDS INC., <br><br> *Defendant*. | Civil Action No. <br> 3:16-cv-4232 (PGS) (LHG) |

This matter comes before the Court on a motion from Kars 4 Kids, Inc.

("K4K") to alter or amend the monetary judgment dated June 10, 2022 in the

amount of $10,637,135.00 against K4K and in favor of America Can! Cars for

Kids ("America Can").[1] (ECF No. 466). Having considered the papers and heard

---

[1] K4K also filed a motion for reconsideration (ECF No. 456) and a motion to vacate judgment on short notice (ECF No. 458) prior to filing its motion to alter or amend, which is the subject of this Memorandum. On July 5, 2022, the Court heard oral argument on the motion to vacate

1

oral arguments, K4K's motion is granted in part and the monetary judgment is amended to the amount of $7,852,392.00 for the reasons set forth below.

I.

Because the Court writes primarily for the parties, the facts are not set forth herein, and are periodically discussed, as necessary, throughout this memorandum. On August 10, 2021, the Third Circuit issued a certified judgment in lieu of formal mandate ordering that the August 6, 2020 Final Amended Judgment for Damages was "VACATED in part with respect to only the application of laches and the award of disgorgement and REMANDED." (ECF Nos. 405, 405-1) (original caps). *See Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209, 215 (3d Cir. 2021).

Both remanded issues were addressed in a memorandum, dated June 10, 2022, that included findings of fact and conclusions of law. (ECF No. 450, "the Remand Memorandum"). Within that Remand Memorandum, I found that the laches defense remained inapplicable, and after weighing the equitable factors from *Banjo Buddies*, I determined that an award of profits was still appropriate. The Court entered a new monetary judgment reinstating the same amount ($10,637,135.00) (ECF No. 451); however, in the Remand Memorandum, the amount of the monetary judgment appeared to be incongruous with the factual

---

judgment (ECF No. 458) and orally denied the motion as moot because the June 10, 2022 judgment was unnecessary to effectuate the relief sought by K4K.

findings on laches. Specifically, some donation transactions of K4K may have

occurred in Texas in a non-infringing manner ("residual donations"); but there was

a lack of quantifiable proof to identify the residual donations from other types of

donations. As such, the parties were invited, upon application, to brief the issue

(Remand Memorandum at fn 11).

More specifically, paragraph 36 and paragraph 142 in the Remand

Memorandum explains when and how residual donations occur. In paragraph 36,

Mr. Moskovitz testified about four different scenarios when residual donations

occur. Paragraph 36 summarized Mr. Moskovitz's testimony as follows:

> 36. Often a donor would reside in one state, and the
> donated car would be elsewhere. Mr. Moskovits provided
> several reasons why this event occurs: (1) the donor saw
> an advertisement in a different state from where he
> resides; (2) the vehicle broke down while the donor was
> away from home; (3) the donated vehicle was owned by
> a relative who had died or lost the capacity to drive; or
> (4) the donor had moved and left the vehicle behind. (T.
> 85:20-86:12). As such, donors may offer a vehicle from a
> state where the K4K mark did not appear, resulting in
> "residual donations."

In addition to the above, some residual donations occur because of the nature

of the internet. Paragraph 142 found that internet usage is different from other

advertising; but the extent of the internet as a communication medium affecting

donations was not addressed by either party. Residual donations are referred to in

the last part of paragraph 142.  It reads:

> As McCarthy has written, the "internet is not a
> 'territory': it is a communication medium." *See* 5
> McCarthy § 26:1.50. McCarthy has concluded that just
> because "a Web site featuring a trademark can
> theoretically be accessed on computers from Florida to
> Alaska and from Beijing to Paris does not mean that the
> trademark is known and established in all those
> locations." *Id.* § 26:30.50. "Market penetration by
> internet use of a mark should be determined, primarily by
> evidence as to the place where buyers actually purchased
> the goods and services advertised on the internet site." *Id.*
> <u>In this case, neither party has undertaken any such
> analysis in their submissions or in their proofs at trial.
> Consequently, there is no way to calculate market
> penetration in this case. There is no way to distinguish
> donations prompted by internet advertising from
> "residual donations," donations by donors familiar with
> K4K but while in a state where the K4K mark did not
> appear. (¶36)</u>. (emphasis added).

In footnote 11 of the Remand Memorandum, I indicated that the monetary

judgment may be revisited in light of the fact that residual donations were not

mentioned by either party.

K4K made such a motion. K4K's motion sought to alter or amend the

monetary judgment under Fed. R. Civ. Pro. 52(b), 59(e), and 60(b) and argued for

a reduction in the monetary judgment because, in general terms, residual donations

should be factored into the monetary judgment. (ECF No. 466). America Can

opposed the motion and argued that a reduction was both inappropriate *and* barred

by the mandate rule, the law of the case doctrine, and waiver. (ECF Nos. 454, 455,

457, 459, 470) (July 5, 2022 Hearing T. 26:2-8, ECF No. 471).  Upon my request,

the parties submitted additional reports from their accounting experts who I

anticipated may have a peer reviewed methodology or practice to evaluate the

findings of facts and conclusions of law including residual donations; and to

integrate them into the monetary judgment. (ECF No. 474).

II.

Based on the above, there are several issues to be addressed:

(1)     Whether an adjustment of the monetary judgment is barred by either

(a) the law of the case doctrine; (b) the remand rule; or (c) the failure to raise the

issue on appeal (waiver).

(2)     Whether the Federal Rules of Civil Procedure authorize such an

amendment; and

(3)     If it is legally appropriate, determine the amount of the adjustment, if

any. (America Can Opp. at 1-4). Each issue is addressed in turn.

Issue 1(a).    The law of the case "doctrine posits that when a court decides

upon a rule of law, that decision should continue to govern the same issues in

subsequent stages in the same case." *See In re Pharmacy Benefit Managers*

*Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (quoting *Arizona v. California*,

460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318, 1391 (1983)). The law of the

case doctrine was "developed to maintain consistency and avoid reconsideration of

matters once decided during the course of a single continuing lawsuit." *Id.* (internal

quotation marks and citation omitted). The doctrine "does not restrict a court's power but governs its exercise of discretion." *Id.* (quoting *Public. Interest Research Group of NJ, Inc. v. Magnesium Elektron*, 123 F.3d 111, 116 (3d Cir. 1997); *see Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). In addition, extraordinary circumstances have been found to limit the scope of the law of the case doctrine where "new evidence is available or … a supervening new law has been announced." *Id.* (citing *Public Interest Research Group*, 123 F.3d at 116-17). Further, the doctrine "does not preclude a trial judge from clarifying or correcting an earlier, ambiguous ruling." *Swietlowich v. Cty. of Bucks*, 610 F.2d 1157, 1164 (3d Cir. 1979). In such circumstances, "a trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result." *Id.* (citing *Messenger v. Anderson*, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)). If a trial judge exercises his or her discretion to revisit a past ruling, "he [or she] should state his [or her] reasons on the record" and "must also take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling." *Id.*

Here, the Court made additional findings of fact and conclusions of law as a result of a remand. Those facts and legal conclusions were not considered in the initial judgment. In order to avoid an unjust result, these facts shall be considered now. *See* Fed. R. Civ. P. 1. As such, the law of the case doctrine does not bar the

6

Court from amending the monetary judgment. *See In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d at 439.

Issue 1(b).  The mandate rule requires lower courts to "proceed in accordance with the mandate and the law of the case as established on appeal." *See United States v. Kennedy*, 682 F.3d 244, 252-53 (3d Cir. 2012) (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985)). "A trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id.* at 253 (quoting *Bankers Trust*, 761 F.2d at 949). The mandate rule serves several important purposes, such as "preserv[ing] the proper allocation of authority within the tiered federal court structure … promot[ing] predictability and finality by notifying parties of the matters that remain open on remand and committing the rest to final resolution … [a]nd safeguard[ing] stability in the administration of justice … [as] the judiciary would not doubt crumble if trial judges were free to disregard appellate rulings." *Id.* (internal citations omitted).

Obviously, the judiciary will not "crumble" if the Court varies from the mandate and amends the monetary judgment based on new facts that have been developed as a result of the remand.  *See Bankers Trust*, 761 F.2d at 949; s*ee also CGB Occupational Therapy, Inc. v. RHA Health Servs.*, 499 F.3d 184, 197 (3d Cir.

7

2007). As such, the changed circumstances compel the Court to reevaluate the

monetary judgment despite the scope of the remand.

Issue 1(c).   Since K4K waived the right to appeal the amount of the

monetary judgment, the issue is whether the Court can reopen it at this late

juncture in the litigation.  Factually, the Third Circuit acknowledged the waiver.

Within the mandate, it states:

- "[T]he Final Amended Judgment for Damages … is VACATED in part with respect only to the application of laches and the award of disgorgement and REMANDED." (Third Circuit Judgment at 2, ECF No. 405).

- "We will, however, vacate in part and remand for the District Court to reexamine its laches and disgorgement conclusions under the governing law." *Kars 4 Kids*, 8 F.4th at 215.

- "With respect to laches and disgorgement, we will remand for the District Court to reexamine these issues under the governing law." *Id.* at 220.

During oral argument before the Third Circuit, K4K admitted same:

> Panel:You didn't preserve the calculation of [disgorgement] amount?
>
> K4K: Correct. We're not quibbling with the experts. That's correct. *Kars 4 Kids*, 8 F. 4th at 218 n.5.

Generally, it is recognized that a party may not "litigate on remand issues

that were not raised in a party's prior appeal and that were not explicitly or

implicitly remanded for further proceedings." *Skretvedt v. E.I. Dupont de Nemours*,

372 F.3d 193, 203 (3d Cir. 2004); *see Cowgill v. Raymark Industries, Inc.*, 832

F.2d 798, 802 n.2 (3d Cir. 1987) (internal citations and quotation marks omitted).

Applying that principle to this case prevents consideration of the findings of fact

and conclusions of law to be integrated into the monetary judgment.  This seems

unjust.  In a very broad sense, the Third Circuit's mandate to review both laches

and the *Banjo Buddies* factors engendered a review of the facts and how they

affects the monetary judgment.  "A trial court is . . . free to make any order or

direction in further progress of the case, not inconsistent with the decision of the

appellate court." *See Bankers Trust*, 761 F.2d at 950. Here, an adjustment of the

monetary judgment is consistent with this principle.

In conclusion, the Third Circuit vacated disgorgement as a whole and

remanded the matter at the threshold *Banjo Buddies* step. Neither the law of the

case doctrine, the mandate rule, nor failure to appeal the amount of the monetary

judgment bars the Court from revisiting the calculation.

Issue 2.   Ordinarily when reopening a monetary judgment, the issue that

arises is whether any Court rule authorizes same.  K4K argues that its motion may

proceed under Fed. R. Civ. P. 52(b)(1), 59(e) and 60(b). Although the Rules do not

squarely line-up with this motion, the spirit of the Rules yields sufficient discretion

to proceed. *See* Fed. R. Civ. P. 1. Without selecting the most appropriate rule to

follow, the purpose of each rule allows relief.  For instance, the purpose behind

Rule 52(b) "is to allow the court to correct plain errors of law or fact, or, in limited

situations, to allow the parties to present newly discovered evidence." *Roadmaster (USA) Corp. v. Calmodal Freight Sys., Inc.*, 153 F. App'x 827, 829 (3d Cir. 2005) (citing *Gutierrez v. Ashcroft*, 289 F.Supp.2d 555, 561 (D.N.J. 2003)). Rules 52(b) and 59(e) allow a district court to "to alter or add to its conclusions of law where appropriate." *U. S. Gypsum Co. v. Schiavo Bros.*, 668 F.2d 172, 180 n.9 (3d Cir. 1981) (citation omitted). And, finally, Fed. R. Civ. P. 60(b) provides "exceptions to finality that permit a party to seek relief from a final judgment under a specific set of circumstances." *Walsh v. Krantz*, 423 F. App'x 177, 179 (3d Cir. 2011) (citing *Gonzalez v. Crosby,* 545 U.S. 524, 529 (2005). Rule 60(b)'s purpose is to "strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v. Sec'y of Health, Ed. & Welfare, U. S.*, 572 F.2d 976, 977 (3d Cir. 1978) (citation omitted). At the end of the day, the purpose of an adjustment in the monetary Judgment is to secure a just result, and the cited rules permit this. *See* Fed. R. Civ. P. 1.

Issue 3.    Based on the Court's findings of fact and conclusions of law, the monetary judgment requires a revision as there is a lack of empirical evidence to support a finding of infringement from 2008 through 2012. More specifically, the monetary judgment relied on the net revenues from all Texas donations between 2008 through June 2019; however, that may be excessive due to a lack of evidence of infringement, including, but not limited to, residual donations from 2008

through 2012. *Kars 4 Kids Inc. v. Am. Can!*, No. 3:14-CV-7770-PGS-LHG, 2022
WL 2106495, at *24 (D.N.J. June 10, 2022). As noted above, the Court requested
that the parties engage their experts in order to review the Remand Memorandum
and opine on (1) how to integrate the Findings of Facts, including residual
donations into the monetary judgment; and (2) what monetary adjustment to the
judgment is reasonable, if any.  Unsurprisingly, the experts reported back
differently.

K4K's expert, David Hall, contends that since none of K4K's advertising
activities between 2008 through 2012 ("Timeframe 1") were found to be open and
notorious, all of the damages from Timeframe 1 should be stricken. (ECF No.
487). That is a reasonable conclusion. Next, Hall theorizes that the residual
donations that occurred between 2013 and 2019 ("Timeframe 2"), is most likely
equal to the average amount of residual donations per year during Timeframe 1;
and that the average amount should be deducted per year during Timeframe 2. To
the Court, Hall's Timeframe 2 adjustment is flawed because it does not consider
the Findings of Fact. There was an onslaught of Texas-related advertising by K4K
in Timeframe 2 that did not occur during Timeframe 1. This huge influx of
advertising would circumstantially show that there was a heightened public
awareness of K4K's presence in Texas resulting from infringement. Accordingly,
to deduct the average amount of residual donations from Timeframe 1 during

Timeframe 2 does not conform to the facts.

On the other hand, America Can's expert, Bryce Cook, opined that no adjustments to the monetary judgment should occur. He opined on three bases. First, Cook contends that there should be no reduction in the monetary judgment during Timeframe 1 because there is "no evidence in which K4K's gradual advertising in Texas did not use the mark" (meaning it was all infringing). (Cook Remand Rpt. at ¶ 18, ECF No. 488-1). Moreover, there was "no factual or empirical basis" from which residual donations, or any portion thereof, could be identified, so there should be no reduction. (*Id.*). To the Court, this conclusion is not plausible because it flies in the face of the findings of fact. That is, during Timeframe 1, little, if any, of K4K's advertising reached Texas. As such, there was no infringement, and it follows that there were no damages.

Next, Cook concluded that there is a lack of evidence concerning residual donations. That is, there were neither professional surveys of donor motivation, nor review of donation records to identify residual donations. In addition, Cook discounted the viability of residual donations because they were unlikely to occur in a "material amount", so "the vast majority, if not all, of the donations" were the result of infringement (*Id.* at ¶¶ 16, 19). Although Cook is correct in part, his conclusion is faulty. Cook correctly points out that there is no empirical evidence supporting the frequency of residual donations in any year, which leads Cook to

conclude that all revenues were generated by infringement during Timeframes 1 and 2. This conclusion is faulty for the same reason as set forth earlier. That is, K4K's advertising did not reach Texas during Timeframe 1, so there is little or no evidence of infringement during Timeframe 1.

Lastly, Cook argues in the alternative. He contends that if the Court were to reduce the monetary judgment associated with Timeframe 1, then Timeframe 1 should be revised to the years 2008 through 2010. His rationale for eliminating 2011 and 2012 is that K4K's URL misuse in 2011 constituted infringement. That is, in 2011, K4K commenced operating "www.carsforkids.com" as a division of "Kars4Kids.org" on its website without any disclaimer. (Remand Memorandum at ¶¶ 116, 158). This assertion is true; but there are no facts to quantify the damages associated with the misuse. For example, when America Can learned of this misuse by K4K, it delayed any legal action in order to monitor the impact on its car donation activities in Texas. (*Id.* at ¶¶ 116-117).  Moreover, America Can has not submitted any evidence demonstrating that K4K's misuse of www.carsforkids.com adversely impacted its revenues in Texas during 2011 and 2012.   As such, this URL misuse objection has not been related to any identifiable damages, and is rejected.

In sum, after analyzing the experts' reports, one conclusion is obvious -- there is a lack of empirical evidence to support a finding of infringement in Texas

during Timeframe 1. As such, monetary damages should not have been awarded.

However, during Timeframe 2, there is evidence showing increased advertising by

K4K and infringement in Texas. Although there may be some unidentified residual

donations during Timeframe 2, it is more likely that public awareness of K4K grew

through infringing advertising during Timeframe 2. As such, to a reasonable

degree of probability, the net revenues represent a reasonable disgorgement

amount.

III.

In the monetary judgment, the disgorged net profits during Timeframe 1

were $2,784,743. Deducting that amount from the total amount awarded

($10,637,135.00) equals $7,852,392. Thus, the monetary judgment is reduced to

that amount. This is a "just" sum fitting the "circumstances of the case." *Kars 4*

*Kids*, 8 F.4th at 224.

ORDER

**THIS MATTER** having come before the Court on Kars 4 Kids, Inc.'s

("K4K") motion to alter or amend the monetary judgment dated June 10, 2022 in

the amount of $10,637,135.00 against K4K and in favor of America Can! Cars for

Kids (ECF No. 466); and the Court having considered the submissions of the

parties and heard oral argument on July 25, 2022; and for the reasons set forth

above; and for good cause having been shown;

14

IT IS on this 9th day of January, 2023;

**ORDERED** that counsel for the parties shall confer and submit within one week from the date of this Order a proposed form of Order(s) and Judgment necessary to implement the above Memorandum.

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.